```
 1              IN THE UNITED STATES DISTRICT COURT
                FOR THE DISTRICT OF COLUMBIA
 2     _____

 3     United States of America,    ) Criminal Action No.
                                     ) 1:21-cr-00447-CJN-3
 4                     Plaintiff,    )
                                     ) Initial
 5     vs.                           ) Appearance/Detention
                                     ) Hearing/Arraignment -
 6     Joshua Christopher Doolin, et ) Partially Sealed
       al,                           )
 7                                   ) Washington, D.C.
                                     ) July 8, 2021
 8                     Defendants.   ) Time:  1:34 p.m.
                                     )
 9     _____

10            Transcript of Initial Appearance/Detention
                Hearing/Arraignment - Partially Sealed
11                         Held Before
           The Honorable Magistrate Judge G. Michael Harvey
12                  United States Magistrate Judge
       _____

13                      A P P E A R A N C E S

14     For the Government:         Jacob Steiner
                                   U.S. ATTORNEY'S OFFICE FOR THE
15                                 DISTRICT OF COLUMBIA
                                   555 Fourth Street, Northwest
16                                 Washington, D.C. 20530

17                                 Benet Kearney
                                   DEPARTMENT OF JUSTICE
18                                 One Saint Andrew's Plaza
                                   New York, New York 10007
19
       For the Defendant Joseph Daniel Hutchinson III:
20                                 Michelle M. Peterson
                                   FEDERAL PUBLIC DEFENDER FOR THE
21                                 DISTRICT OF COLUMBIA
                                   625 Indiana Avenue, Northwest
22                                 Suite 550
                                   Washington, D.C. 20004
23

24

25
```

```
1      For the Defendant Joshua Christopher Doolin:
                                  Maria Jacob
2                                 FEDERAL PUBLIC DEFENDER FOR THE
                                  DISTRICT OF COLUMBIA
3                                 625 Indiana Avenue, Northwest
                                  Washington, D.C. 20004
4
       For the Defendant Olivia Michele Pollock:
5                                 Elita C. Amato
                                  2111 Wilson Boulevard
6                                 Suite Eighth Floor
                                  Arlington, Virginia 22201
7
       Also Present:             Masharia Holman, Pretrial Services
8                                 Officer

9      Proceedings reported by FTR Gold Electronic Recording Software.
       _____
10
       Transcribing Stenographic Court Reporter:
11                                Nancy J. Meyer
                                  Registered Diplomate Reporter
12                                Certified Realtime Reporter
                                  United States Courthouse, Room 6509
13                                333 Constitution Avenue, Northwest
                                  Washington, D.C. 20001
14                                202-354-3118

15

16

17

18

19

20

21

22

23

24

25
```

1                    P R O C E E D I N G S

2              THE COURT:  -- to the extent that any attorney or

3      defendant has any questions about some of the things I'm going

4      to say now, just hold off, and we will address those questions

5      when your individual case is called.  It's important that

6      everyone listens because I'm going to be giving instructions

7      here that will hopefully make these individual sessions go more

8      smoothly.

9              Also, particularly with respect to the defendants, I am

10     going to be -- you're going to be hearing conditions of

11     release, as well as warnings that I'm going to be giving you

12     regarding your compliance with those conditions.  So it's

13     important that you hear and understand everything that's being

14     said during this joint session.

15             I'm going to ask you in the individual session if you

16     have heard and understood everything that is said.  So please

17     listen carefully to what I'm about to tell you.

18             When your individual cases are called, I'm going to ask

19     the defense attorneys when they first put in their appearance

20     to state their name, who they represent, and then if the

21     defendant is, in fact, present at this virtual hearing.  You'll

22     also need to make a record as to whether or not your client is

23     willing to waive the right to an in-person hearing and proceed

24     by video or remotely pursuant to the CARES Act and because of

25     the pandemic.

1      I also want you to make an immediate record of --

2   without any prompting from me -- again, after you've said your

3   name, indicate whether or not you are retained or are seeking

4   appointment in this jurisdiction.  And if you're seeking

5   appointment, whether or not you have submitted a financial

6   affidavit and, if not, whether or not your client is prepared

7   to respond to questions on the record here today to demonstrate

8   their eligibility for appointed counsel.

9      I'm going to also ask all those attorneys who have not

10  previously appeared before the Court to provide their contact

11  information to the following email address at the conclusion of

12  these hearings here today.  It's how we'll stay in contact.

13  It's where I will send the condition -- written conditions of

14  release following the proceedings here today.  Docketing is

15  somewhat behind in these cases given the volume.  So that's why

16  we're doing it in this way.  It will give us a way in the --

17  days following this hearing that you can communicate most

18  efficiently with the Court.

19     Again, the email where you should send your contact

20  information -- and this is for defense counsel.  I don't need

21  to hear from the defendants.  But from defense counsel, here's

22  the email address.  It's Harvey -- my last name -- underscore

23  criminal@dcd -- dog, cat, dog -- .uscourts.gov.

24  Harvey_criminal@dcd.uscourts.gov.  So please do that at the

25  conclusion of the hearings here today.

1    Some of you may be not facing felonies but only

2   misdemeanors.  Your most serious offense may be what's called a

3   Class A misdemeanor.  You can ask your attorney if you don't

4   know right now if that is the situation you find yourself in,

5   and I don't know.  I think some of you may be in that

6   situation.  If the most serious offense you face is a Class A

7   misdemeanor, then you do have the right -- I'm informing you

8   now -- to a jury trial, bench trial, judgment, or sentencing

9   either before a district judge or before a magistrate judge.

10    I am a magistrate judge.  Your attorney can help you

11   understand what the differences are and help you make that

12   election.  You do not need to make that decision here today,

13   but whatever decision you make, your attorney -- your judge

14   will be randomly assigned.  The mere fact that I'm handling

15   this preliminary hearing here today does not mean that I would

16   be your judge going forward were you to elect to appear in

17   front of a magistrate judge for this case.

18    I also need to provide warnings.  It's required under

19   Federal Rule of Criminal Procedure 5(f) that the United States

20   is hereby ordered to produce all exculpatory evidence in these

21   cases.  Pursuant to *Brady v. Maryland* and its progeny, not

22   doing so in a timely manner may result in sanctions, including

23   exclusion of evidence, adverse jury instructions, dismissal of

24   charges, and contempt proceedings against government counsel.

25    Mr. Steiner, on behalf of the United States, do you

1    understand that?

2              MR. STEINER:  Yes, Your Honor.

3              THE COURT:  I also anticipate that the government is

4    going to be seeking your release in each of these cases and

5    that we're going to be resetting your release conditions here

6    today at the conclusion of your individual -- when your case is

7    individually called.

8         I will hear first from the government as to what their

9    recommended conditions of release should be.  I'll hear from

10   your counsel to the extent there's any objection.  We'll

11   resolve those objections, and I will issue your conditions of

12   release.  Now, you should know that your conditions of release

13   may be greater or less than the conditions set by the

14   magistrate judge in the jurisdiction of your arrest.  I don't

15   have power to vacate or dismiss any other conditions if they

16   are different from the ones that I set.  It will be incumbent

17   upon you and your attorney to get those other conditions

18   dismissed or vacated, if they're not done so automatically.  I

19   don't know what your practice is in your home state.  Your

20   attorney will have to tell you how that works.

21        But to the extent that those conditions are not vacated

22   or dismissed, then you may be in a situation where you've got

23   to comply with all conditions that are set here and by the

24   magistrate judge in the jurisdiction of arrest.  So you'll need

25   to work through those issues with your attorney so that you're

1    clear on what precisely it is that you are to do following

2    today.

3           With respect to the conditions that I'm going to set,

4    you will receive written release conditions, though not at the

5    conclusion of the hearings today because we're doing this

6    virtually.  We will try to get those conditions to you either

7    later today or sometime tomorrow -- get them to your defense

8    attorney, who then I will instruct now to provide to your

9    client so that they can have the written conditions of release

10   set by this Court.

11          At this time I'm going to ask the government to list

12   what we've been calling the baseline or standard conditions of

13   release in these cases.  You will have at least these

14   conditions that Mr. Steiner is about to list for you.  You may

15   have some individual ones, some additional ones, which we'll

16   discuss when your individual case is called.

17          So please listen carefully to these conditions of

18   release.  Mr. Steiner, go right ahead.

19          MR. STEINER:  Your Honor, the standard or baseline

20   conditions of release for the defendants appearing today are

21   that the defendant stays away from the District of Columbia

22   unless for court appearances, pretrial service appointments, or

23   attorney consultations; the defendant reports to pretrial

24   services from their home jurisdiction as directed; that they

25   verify their address, if they have not already done so; that

1    the defendant notifies pretrial services in advance of any

2    travel that's within the United States but outside of the

3    defendant's home federal court jurisdiction; that the defendant

4    not travel outside of the continental United States without

5    first obtaining Court approval; that the defendant participate

6    in all future proceedings as directed; that the defendant not

7    possess any firearms, destructive devices, or other dangerous

8    weapons; and that the defendant not commit any local, state, or

9    federal crimes.

10            THE COURT:  Okay.  I'm now going to provide warnings

11   to each of the defendants.  I give these warnings in every

12   case.  It's important that you hear and understand these

13   warnings.

14            First of all, you will hear that -- during your

15   individual session what your conditions of release will be.

16   It's important that you comply with each of those conditions

17   set by the Court.  If you fail to provide -- or to comply with

18   any of the conditions of release, a warrant will be issued for

19   your arrest.  Your conditions of release could be revoked, and

20   you could be held pending trial.  You could also face an

21   additional criminal charge for contempt of court.

22            The most important condition of release is that you not

23   commit a state, federal, local crime while on release.  If you

24   were to commit such a crime while on release in this case, a

25   warrant could be issued for your arrest, your conditions of

1     release could be revoked, and you could be held pending trial.

2     You could also face a longer sentence for having committed a

3     crime while on release in another case.

4          At the end of your individual session, we'll set the

5     next date before the Court.  At your next court appearance

6     date, if you fail to appear for that date or any other date

7     ordered by the Court, a warrant can be issued for your arrest,

8     your conditions of release could be revoked, you could be held

9     pending trial.  Additionally, you could also face an additional

10    crime for failing to appear for court.

11         After your conditions of release are set, when your

12    individual cases are called, we'll have to set a next date, as

13    I just said.  I will look to defense counsel to tell me what

14    that date should be.  At this point, you should have reached

15    out to the assigned AUSA and come up with a mutually agreeable

16    date for the next status in this case.

17         You should also make a record of whether or not -- what

18    that date will be for; if it's a status hearing, a preliminary

19    hearing.  If it's a status hearing, you need to make a record

20    about whether or not the case has been -- I'm sorry -- the

21    preliminary hearing has been waived, or to the extent that

22    you're seeking a preliminary hearing longer than 21 days after

23    your client's arrest, that you are waiving your right to a more

24    timely preliminary hearing.

25         We also do need to make a record as to whether or not

1    you're going to consent to the government's request that the

2    Speedy Trial Act be tolled between now and that next date.

3         The next date -- you'll just have to give me the date.

4    All hearings in these cases we've got scheduled -- at least

5    before this Court -- at 1:00 p.m.  We call all these cases at

6    1:00 p.m.  To the extent you want to continue your next date --

7    and most of these hearings have been continued.  We get a lot

8    of continuances.  I request that you do so in writing, that you

9    not show up here and just ask for another continuance; and that

10   those continuances are motions to continue, written motions to

11   continue, be filed within 48 hours -- 48 hours prior to the

12   hearing so they can be adjudicated prior to the date that the

13   hearing is set.

14        I'm going to ask the government now to please provide

15   the basis for -- and request with respect to tolling of time

16   under the Speedy Trial Act in each of these cases.

17        Mr. Steiner.

18        MR. STEINER:  So, Your Honor, the government will be

19   requesting in each of the cases that time from today until the

20   next date be tolled pursuant to the Speedy Trial Act.

21        First of all, Chief Judge Howell's Standing Order 21-10

22   tolls time through August 31st, 2021, recognizing both the

23   slowdown and stoppage in jury trials that occurred for much of

24   the past year, as well as the ongoing health and safety

25   limitations that are necessary due to the COVID-19 pandemic.

1        Second, the defendants appearing today are charged in

2    what is likely the largest and most complex criminal

3    investigation and prosecution in American history.  It's one

4    involving over 500 defendants charged to date, and it's one

5    involving an enormous amount of evidence.  That evidence

6    includes over 14,000 hours of Capitol surveillance video.  It

7    includes more than 200,000 tips that were submitted by members

8    of the public, and it includes over 2,000 digital devices

9    that -- that were seized.

10        The government is working every day to -- continuing to

11    investigate that evidence, to review it, and produce it in

12    discovery to defendants consistent with the government's

13    statutory and constitutional obligations.  Those steps,

14    however, will take time and they will take continued efforts;

15    and, therefore, the ends of justice served by tolling time will

16    outweigh the best interests of both the public and the

17    defendant in a speedy trial.

18        THE COURT:  I'm going to go ahead and ask pretrial --

19    a pretrial representative is here today -- to enter their

20    appearance for purposes of all these cases.

21        THE PRETRIAL SERVICES OFFICER:  Shay Holman, pretrial

22    services, Your Honor.

23        And for the record, we will be asking courtesy

24    supervision for all these cases.

25        THE COURT:  Okay.  Mr. Tran, what's the first case

1    you're going to call?

2              (REPORTER'S NOTE:  Unrelated matters were heard which

3    were not requested to be transcribed, after which time the

4    following proceedings transpired and were transcribed.)

5              THE COURTROOM DEPUTY:  This is Case 21-cr-447,

6    United States of America v. Joseph Daniel Hutchinson III,

7    Joshua Christopher Doolin, and Olivia Michele Pollock.

8         These are all scheduled to be an initial appearance and

9    arraignment held by video.

10        Will the parties please introduce themselves to the

11   Court, beginning with the government.

12             MS. KEARNEY:  Good afternoon, Your Honor.  Benet

13   Kearney for the United States.

14             MS. PETERSON:  Good afternoon, Your Honor.  Michelle

15   Peterson on behalf of Mr. Hutchinson.

16             MS. JACOB:  Good afternoon, Your Honor.  Maria Jacob

17   appearing for Mr. Doolin.

18             MS. AMATO:  Good afternoon, Your Honor.  Elita Amato

19   on behalf of Olivia Pollock, who is present.

20             THE COURT:  Okay.  Mr. Tran, could you please put

21   Ms. Amato and her client, Ms. Pollock, and the AUSA and myself

22   in a sealed breakout room for a moment?

23             THE COURTROOM DEPUTY:  Yes, Judge.

24        Due to the way this -- this courtroom is designed,

25   anyone that's not going to be part of this hearing, I'm going

1    to briefly place you in the waiting room.  Do not panic when

2    you see your screen change.  Just wait in the waiting room, and

3    I will readmit you as soon as we're finished.

4              THE COURT:  I'm not going to say anything.

5              (Sealed bench conference held on the record.)



14





1    ████████████████████████████████████

2              (Proceedings held in open court.)

3              THE COURT:  All right.  Well, let's -- let's start

4    first with Ms. Peterson on behalf of Mr. Hutchinson.  If you

5    can -- let's nail down issues with respect to the CARES Act and

6    appointment of counsel.

7              MS. PETERSON:  Yes, Your Honor.  Mr. Hutchinson does

8    agree to proceed pursuant to the CARES Act by Zoom and waives

9    his right to appear in presence.  He is seeking court-appointed

10   counsel, and we have submitted a financial affidavit on his

11   behalf.

12             THE COURT:  All right.  Ms. Peterson, I -- I do have

13   some questions about that financial affidavit.  I hate to do

14   this again, but I'm going to ask Mr. Tran to put just

15   Ms. Peterson, Mr. Hutchinson, and the Court in a sealed

16   breakout room, or however you do it, Mr. Tran.  Not the

17   government.

18             THE COURTROOM DEPUTY:  Parties on the line, same

19   instructions.  If you're not affiliated with this sealed

20   hearing, I'm going to place you in the breakout room.  Please

21   do not leave.  You'll be readmitted as soon as we are

22   completed.

23             (Sealed bench conference on the record.)

24                      ████████████████████████████████

25   ████████████████████████████████████████████████████



```
 1
 2
 3
 4
 5
 6
 7
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24          (Proceedings held in open court.)
25          THE COURT:  Okay.  Well, then based on my review of
```

1    the financial affidavit and the sealed conversation I just had

2    with counsel for Mr. Hutchinson, I do find that he's eligible

3    for the appointment of counsel, and I will appoint the federal

4    public defender to be his attorney in this case, specifically

5    Assistant Federal Public Defender Peterson.

6         Ms. -- Mr. Hutchinson, do you agree to Ms. Peterson

7    being your attorney in this case?  Did I get that wrong?  Is it

8    going to be you, Ms. Peterson?

9         MS. PETERSON:  It -- well, Your Honor, just -- I am

10   the one representing Mr. Hutchinson for today's proceeding.  I

11   believe that his prior PD from Florida will -- oh, no.  I'm

12   sorry -- Georgia will take the case now that his affidavit has

13   been appointed, Mr. Saviello, but I will confirm that.  Someone

14   will be entering their appearance shortly, either me or

15   Mr. Saviello.

16        THE COURT:  Okay.  Well then, I do direct that you do

17   that as soon as possible --

18        MS. PETERSON:  Yes.

19        THE COURT:  -- the Court having found him to be

20   eligible for appointment of counsel in this jurisdiction.

21        Okay.  Let's move now to Ms. Jacob on behalf of

22   Mr. Doolin.

23        MS. JACOB:  Yes.  Thank you.

24        THE PRETRIAL SERVICES OFFICER:  I'm sorry,

25   Your Honor.  Did we do release conditions for Mr. Hutchinson?

1          THE COURT:  Not yet.  We're just going to go --

2          THE PRETRIAL SERVICES OFFICER:  Oh.

3          THE COURT:  We're just --

4          THE PRETRIAL SERVICES OFFICER:  Okay.

5          THE COURT:  I'm sorry.

6      We're going to just do it this way.  I just want to make

7  sure that we're all on the same page with respect to the

8  CARES Act and appointment of counsel.

9          THE PRETRIAL SERVICES OFFICER:  My apologies,

10  Your Honor.

11          MS. JACOB:  Your Honor, Mr. Doolin does consent to

12  appear here today by -- by Zoom pursuant to the CARES Act, and

13  he is seeking appointment of counsel.  I don't believe that the

14  Court has a financial affidavit, and so that -- so we would be

15  requesting that the Court conduct a financial inquiry on the

16  record.

17          THE COURT:  Okay.  Mr. Tran, please swear in

18  Mr. Doolin.

19          THE COURTROOM DEPUTY:  Mr. Doolin.

20          (Oath administered to Defendant Doolin.)

21          DEFENDANT DOOLIN:  I do.

22          THE COURT:  Mr. Doolin, I need to ask you a few

23  questions.  The purpose of these questions determine whether or

24  not you're eligible for the appointment of counsel; that is, do

25  you have sufficient money to hire your own attorney.

1    Mr. Doolin, do you have lawful employment that pays you more

2    than $75,000 a year?

3           Looks like he's been frozen.

4           THE COURTROOM DEPUTY:  Ms. Jacob, do you have the

5    contact information for Mr. Doolin?

6           MS. JACOB:  You know what?  I don't, but -- but I

7    believe that Ms. Peterson does.  So I can try to -- I can try

8    to get that and give him a call and let him know that --

9           DEFENDANT DOOLIN:  Here I am.

10          THE COURT:  There he is.  You're back.

11          DEFENDANT DOOLIN:  Sorry, Your Honor.

12          THE COURT:  No worries.  It happens.

13       I don't know if you heard my question.  My question for

14   is whether or not you --

15          (Indiscernible simultaneous cross-talk.)

16          THE COURT:  -- have -- let me -- let me just ask it

17   again so the record is clean.

18          Mr. Doolin, do you have lawful employment that pays you

19   more than $75,000 a year?

20          DEFENDANT DOOLIN:  No, sir.

21          THE COURT:  How much money do you have in the bank?

22   Approximately.

23          DEFENDANT DOOLIN:  Roughly $2,000.

24          THE COURT:  And do you have any other major assets?

25   Stocks?  Bonds?  A home?  Vehicles?

1      DEFENDANT DOOLIN:  No, sir.

2      THE COURT:  All right.  I do find that you're

3   eligible for the appointment of counsel, and I'll appoint the

4   federal public defender, Ms. Jacob, to be your attorney.  Do

5   you agree to her being your attorney in this case?

6      DEFENDANT DOOLIN:  Yes, Your Honor.

7      THE COURT:  She will be your attorney.

8      MS. JACOB:  Your Honor, my -- Your Honor, my

9   apologies.  I should have mentioned this.  It -- it -- it looks

10  like Mr. Allen Orenberg will likely take on this case, and I --

11  I was just standing in for him today.  However, if that is not

12  the case for whatever reason, I will enter my appearance as

13  soon as possible.

14      THE COURT:  I'm sorry.  What's the name?

15      MS. JACOB:  Allen Orenberg.

16      THE COURT:  Again, I'm having a hard time

17  understanding you.  Is it a member of the bar of this Court?

18      MS. JACOB:  Yeah, I believe --

19      MS. PETERSON:  Yes, he's a CJA lawyer, Your Honor.

20      THE COURT:  Okay.  I just have a real hard time

21  hearing -- did you say -- can you just spell the name?

22      MS. JACOB:  Sure.  Allen, A-l-l-e-n.  Last name

23  O-r-e-n-b-e-r-g.

24      THE COURT:  Okay.  Orenberg.  Got it.  All right.

25      Ms. Amato, on behalf of Ms. Pollock.

1      MS. AMATO:  Yes, good afternoon, Your Honor.

2          On behalf of Ms. Pollock, we agree to handling this

3   hearing virtually.  She is -- she resides out of town -- out of

4   state, actually.  I --

5          THE COURT:  Do we have her?  What happened to her?

6          MS. AMATO:  She is here.

7          THE COURT:  Oh, maybe she's on the next screen.

8          MS. AMATO:  It's just showing her name right now, but

9   she's been --

10         THE COURT:  Ms. Pollock, can you hear?

11         MS. AMATO:  She's on mute.  There you go.

12         DEFENDANT POLLOCK:  Yes, sir, I can hear you.

13         THE COURT:  Okay.  I'm sorry, Ms. Amato.  Go right

14  ahead.

15         MS. AMATO:  Okay.  Certainly, Your Honor.

16         So I am court appointed in this case, and there is a

17  financial -- I don't know if Your Honor has received a copy of

18  this -- a financial that was signed.  I believe Your Honor has

19  received a copy, but I received an email from chambers saying

20  that chambers had a question regarding --

21         THE COURT:  Yes.  It's the first line under income.

22         MS. AMATO:  I --

23         THE COURT:  I -- I didn't understand it.  It's

24  fourish -- maybe it's fourish, a thousand.  I don't know what

25  that means.

1     MS. AMATO:  I -- oh, she meant to write 4,000ish, but

2     basically, as she's told pretrial services, she makes about

3     3500 -- 3,500 per month.  So that is really --

4     THE COURT:  Okay.  Understood.  Well then, with that

5     clarification, I do find that she's eligible for the

6     appointment of counsel, and I will appoint you, Ms. Amato, to

7     be her attorney in this case.

8     Ms. Pollock, do you agree to Ms. Amato being your

9     attorney?

10    DEFENDANT POLLOCK:  Yes, Your Honor.

11    THE COURT:  Okay.  I see here that we're also doing

12    an arraignment here today in each of these cases.  So I'm going

13    to briefly review the indictment before we do the arraignment.

14    I'm going to review with each of the defendants what you've

15    been charged with.

16    The grand jury returned an indictment on July 1st.

17    Mr. Doolin, you were charged in two counts; Mr. Hutchinson, you

18    were charged in seven counts; and, Ms. Pollock, you were

19    charged in five counts.

20    Mr. Doolin, Mr. Hutchinson, and Ms. Pollock, you're each

21    charged with one count of knowingly entering or remaining in a

22    restricted building or grounds, or the U.S. Capitol Building in

23    particular, without lawful authority in violation of

24    18 U.S.C. § 1752(a)(1).  If you're found guilty of that charge,

25    you could face up to a year in jail, a fine of a hundred

1    thousand dollars, or both, and the Court could impose up to one

2    year of supervised release following any period of

3    incarceration.

4         Each of you, Mr. Doolin, Mr. Hutchinson, and

5    Ms. Pollock, are also each facing one count of disorderly and

6    disruptive conduct in a restricted building or ground in

7    violation of 18 U.S.C. § 1752(a)(2).  That charge carries with

8    it up to a year in jail, a fine of a hundred thousand dollars,

9    or both, and the Court could impose up to one year of

10   supervised release.

11        Mr. Hutchinson and Ms. Pollock, you are also both

12   charged with assaulting, resisting, or impeding certain

13   officers in violation of 18 U.S.C. § 111(a)(1).

14   Ms. [sic] Hutchinson, you are charged with three counts of that

15   offense, and Mr. Pollock -- or, Ms. Pollock, you're charged

16   with one count.  If you're found guilty of any one of those

17   counts, you can face up to eight years in jail, a fine of

18   $250,000, or both.  In addition, the Court could impose up to

19   three years of supervised release.

20        Also, Mr. Hutchinson and Ms. Pollock, you each face one

21   count of engaging in physical violence in a restricted building

22   or ground in violation of 18 U.S.C. § 1752(a)(1).  That charge

23   carries with it up to a year in jail, a fine of $100,000, or

24   both.  The Court could impose three years of supervised

25   release.

1            Finally, each of you -- that is, Mr. Hutchinson and

2    Ms. Pollock -- face also one count of engaging in an act of

3    physical violence in the grounds or on the Capitol -- in the

4    Capitol Building and the Capitol grounds in violation of

5    40 U.S.C. § 5104(e)(2)(F).  That charge carries with it up to

6    six months in jail, a fine of $5,000, or both.

7            It is now the time for your arraignment.  This is a very

8    short -- but it's an important -- proceeding where you'll be

9    formally notified of these charges brought against you by the

10    United States.  You'll have an opportunity to enter a plea.

11    But you don't need to say anything.  Your attorneys will do all

12    the talking for you.

13            Ms. Peterson, on behalf of Mr. Hutchinson, did you have

14    an opportunity to review the indictment in this case, do you

15    waive formal reading, and how do you plead?

16            MS. PETERSON:  Your Honor, we have not had a thorough

17    opportunity to review the indictment; but, nevertheless, I am

18    prepared to enter a plea of not guilty on behalf of

19    Mr. Hutchinson and to waive formal reading of the indictment.

20            THE COURT:  All right.

21            MS. PETERSON:  He would also invoke his right to a

22    speedy jury trial.

23            THE COURT:  Okay.  And, Ms. Jacob, on behalf of

24    Mr. Doolin, same questions.

25            MS. JACOB:  Your Honor, we have not also had an

1    opportunity to review the indictment with Mr. Doolin.  However,

2    we have discussed with him his rights, and he is -- is prepared

3    to enter a not guilty plea to all counts and also requests a

4    speedy jury trial.

5            THE COURT:  And, Ms. Pollock, on behalf of

6    Mr. Pollock -- Ms. Amato on behalf of Ms. Pollock.

7            MS. AMATO:  Thank you, Your Honor.

8        On behalf of Ms. Pollock, the same representations.  I

9    have not had a chance to review in detail the indictment,

10   although Ms. Pollock does have a copy of the indictment.  She

11   has reviewed it, but at this time, I would enter a plea of not

12   guilty, waive further formal reading, assert all of her

13   constitutional rights, including her right to remain silent,

14   and also request a speedy jury trial.

15           THE COURT:  Okay.  Well then, on behalf of each of

16   the defendants in this case, Mr. Hutchinson, Mr. Doolin, and

17   Ms. Pollock, I will enter pleas of not guilty to all counts in

18   the indictment in the record of this case.

19       Let me hear from the prosecution.  We'll start first

20   with Mr. Hutchinson.  What conditions of release are you

21   seeking for him in this case?

22           MS. KEARNEY:  Thank you, Your Honor.

23       In addition to the standard baseline conditions that

24   Mr. Steiner explained at the outset of this proceeding, we are

25   seeking home detention enforced by location monitoring with

1    permission to leave for work, medical appointments, and court,

2    and the permission of (indiscernible due to poor audio quality)

3    supervision officer.

4         THE COURT:  Ms. Kearney, you're breaking up.  I don't

5    know if it's our system or yours, but you need to speak up.

6         MS. KEARNEY:  I'm sure it's my system.

7         THE COURT:  You said --

8         MS. KEARNEY:  I'll start over.

9         THE COURT:  -- home detention with the exceptions for

10   what?

11        MS. KEARNEY:  For work and -- employment, that is --

12   medical appointments, court appearances, and meetings with

13   attorneys, and as otherwise provided permission for by pretrial

14   services.

15        In addition, the baseline conditions include a provision

16   that the defendant not possess any firearms.  My understanding

17   from the proceeding in Georgia is that the defendant is

18   currently residing with his father who also possesses firearms,

19   and so we'd ask that any residents of the household locate

20   those firearms elsewhere while the defendant is (indiscernible

21   due to poor audio quality).

22        THE COURT:  Okay.  Ms. Peterson.

23        MS. PETERSON:  Your Honor, I would note that there's

24   nothing in the record that I have seen that indicates a need

25   for home detention with location monitoring.  It appears to me

1    that neither the home jurisdiction where he was arrested nor

2    our pretrial services recommended home detention with

3    electronic monitoring.  So we believe that it seems unnecessary

4    to ensure the safety of the community, and we would ask the

5    Court to impose the standard conditions.

6         I would have to ask Mr. Hutchinson if his father is

7    present and whether his father would agree to locate any

8    firearms from the house outside of the home.

9              DEFENDANT HUTCHINSON:  He is not here, but they --

10   they -- due to my release prior, they had already gotten rid of

11   them, so...

12             MS. PETERSON:  Okay.  So we have no objection to that

13   condition, Your Honor.

14             THE COURT:  You know, I have some note here -- and I

15   may be confusing Mr. Hutchinson with someone else, another

16   co-defendant.  My apologies if so, but does he work in a gun

17   shop?  Is that an issue with respect to Mr. Hutchinson?

18             MS. PETERSON:  I -- I do not believe so.

19             THE COURT:  Okay.

20             MS. KEARNEY:  Your Honor --

21             MS. PETERSON:  But I will let Mr. Hutchinson correct

22   me if I'm wrong.

23             DEFENDANT HUTCHINSON:  I used to, but I stopped

24   working there back in October of last year.

25             THE COURT:  Okay.  All right.  Because, again, you're

1   not allowed to be in possession of any firearm.  So that can

2   become an issue if you were to work in -- in a gun shop.

3        I'll hear from the government with respect to request

4   for home detention with GPS monitoring.  Why is that necessary

5   in this case?

6        MS. KEARNEY:  Yes, Your Honor.  At the outset, I'd

7   just like to note that that was a condition imposed by the

8   Court in Georgia, despite the pretrial services report, and the

9   judge there determined it was a necessary condition.

10       But, further, to that, Your Honor, this is necessary

11  both to protect (indiscernible due to poor audio quality) and

12  to ensure the defendant's appearance.  As laid out in the

13  complaint, Mr. Hutchinson engaged in multiple bouts of assaults

14  on law enforcement officers in the course of an afternoon.  He

15  did so while armed in a military-style tactical vest, and he

16  did so as part of a coordinated group of individuals who moved

17  together throughout the day and took part in rounds after

18  rounds of violence.

19       This is someone who observed violence and did not turn

20  the other way.  He joined in willingly over and over again.  By

21  my count, Your Honor, it's at least four assaults, depending on

22  how you group them, on law enforcement officers as part of that

23  group.

24       Furthermore, in the months following the events of

25  January 6th, the FBI posted a be on the lookout alert on the

1    internet regarding Mr. Hutchinson.  That posted some time in

2    April.  And within weeks of that being posted, Mr. Hutchinson

3    had relocated.  He -- he posted his residence for sale and

4    began relocating to Tennessee and Georgia from Florida.

5         This indicates the -- both the ability and the

6    willingness to relocate, perhaps to avoid law enforcement

7    apprehension, and so they think that the GPS monitoring is

8    necessary both so law enforcement can be aware of his location

9    and ensure that he does not further attempt to flee.  And the

10   home incarceration is necessary due to the violent acts that he

11   engaged in -- the coordinated violence that he engaged in to

12   (indiscernible due to poor audio quality).

13            THE COURT:  Okay.  Ms. Peterson, anything further?

14            MS. PETERSON:  Your Honor, I would simply note that,

15   again, pretrial services was -- the government may be saying

16   more than pretrial services, and (indiscernible due to poor

17   audio quality) to recommend home detention.  There's no

18   suggestion -- well, there's a suggestion, but there's no

19   evidence that Mr. Hutchinson sold his home because of the BOLO

20   that was on the internet somewhere that he would have no reason

21   to know existed.  There's no connection between those two

22   events.

23        He has abided by his conditions of release since he was

24   released in the arresting jurisdiction; and, yes, there's no

25   reason for these additional requirements.

1          MS. KEARNEY:  If I may, Your Honor.  The conditions

2     of release in the arresting jurisdiction include home

3     incarceration.

4          THE COURT:  Yes, you're both right.  Enough.  You're

5     both right.  Ms. -- Ms. Peterson is right, in that it wasn't

6     recommended, and Ms. Kearney is right that that's what the

7     Court imposed.

8          So -- in any event, I am going to impose that condition

9     here, just as the magistrate judge did in the jurisdiction of

10    arrest.  The defendant will be placed, in addition to the

11    standard conditions of release, into home detention and GPS

12    monitored.  He will be restricted -- restricted to his

13    residence at all time except for employment, for court

14    appearances, meeting with counsel, and for medical

15    appointments, and as otherwise approved by pretrial services in

16    the jurisdiction of his arrest.

17         I will also remind the defendant -- it sounds like it's

18    not an issue, but when he's been ordered to not possess any

19    firearms, that includes he cannot have any firearms in his

20    residence, wherever his residence is, and I don't care who owns

21    them, whose guns they are.  You can't have any guns wherever

22    you are residing.  It sounds like you've taken care of that,

23    sir.  That's very good.

24         Sir, you understood all these conditions of release, and

25    are you prepared to comply with them?

1    DEFENDANT HUTCHINSON:  Yes.

2         THE COURT:  And did you understand the warnings that

3    I gave you during the joint session, and are you prepared to

4    comply with those warnings?

5         DEFENDANT HUTCHINSON:  Yes.

6         THE COURT:  Mr. Tran, please swear him to these

7    conditions of release.

8         THE PRETRIAL SERVICES OFFICER:  Your Honor, this is

9    Ms. Holman.

10        I just want to clarify.  Government also mentioned

11   Tennessee, but we have that the defendant lives in the Middle

12   District of Georgia, Macon.  So I just want to make sure that

13   it's still Macon, Georgia, that we'll be requesting courtesy

14   supervision.

15        THE COURT:  Okay.

16        MS. PETERSON:  That is correct.

17        THE COURT:  All right.  There's your answer.

18        THE PRETRIAL SERVICES OFFICER:  All right.  Thank

19   you.

20        THE COURT:  Mr. Tran, please swear the defendant.

21        THE COURTROOM DEPUTY:  Mr. Joseph Daniel -- Daniel

22   Hutchinson III.

23        (Oath administered to Defendant Hutchinson.)

24        DEFENDANT HUTCHINSON:  Yes.

25        THE COURT:  All right.  Thank you.

1          Ms. Jacob, on behalf of Mr. -- well, let's do Mr. Doolin

2     next.

3          So, I guess, Ms. Kearney, what conditions of release are

4     you requesting for Mr. Doolin?

5          MS. KEARNEY:  Thank you, Your Honor.

6          In addition to the baseline conditions that Mr. Steiner

7     set out at the outset of the proceeding, we are requesting GPS

8     monitoring, although not coupled with home incarceration.

9          THE COURT:  Okay.  Ms. Jacob.

10          MS. JACOB:  Your Honor, I have had an opportunity to

11     review the -- the presentence [sic] report prepared by this

12     probation office, and it appears as though they are not

13     recommending GPS monitoring and -- and just general

14     supervision.  Based on -- based on that reason, we would be

15     requesting the Court consider not placing GPS monitoring today.

16          THE COURT:  Okay.  Government, what's the basis for

17     the request for GPS with respect to Mr. Doolin?

18          MS. KEARNEY:  It's based on the dangerousness

19     (inaudible) with respect to the defendant, Your Honor.  And at

20     the outset, I do want to be clear.  Mr. Doolin is charged with

21     only the misdemeanor counts right now.  However, as laid out in

22     the complaint, he moved with this core group that engaged in

23     extensive violent activity throughout the course of the

24     afternoon, and by the end of the afternoon, from the

25     approximately 3:00-p.m.-to-4:00-p.m. period, he had acquired

1    plastic zip ties and cuffs, as well as a canister of riot

2    control spray.

3         Now, I don't have any video evidence right now to say

4    that he deployed that spray, but the fact that he acquired it

5    during the course of the day, was carrying it around with him,

6    combined with these handcuffs, and by around 4:00 p.m., was

7    holding a riot shield likely seized from a police officer

8    indicates other violent activity (inaudible) with the intent to

9    engage in other violent activity that day.

10        And so, therefore, we're requesting GPS.  We think that

11   would be a deterrent to engaging in further violent activity

12   and protecting the community.

13             THE COURT:  Okay.  Ms. Jacob, any response?

14             MS. JACOB:  Yes, Your Honor.  I -- I understand that

15   the government is not seeking detention.  However, I still

16   think that *United States v. Munchel* applies because the

17   government is claiming that he -- this condition should be put

18   in place as he's a danger to the community.

19        And so I do think that the government has not identified

20   an articulable threat now that January 6th has passed and now

21   that he is home with no incident in the last several months

22   now.  And so for that reason and for -- you know, the -- the

23   facts that -- the allegations that the government has set forth

24   that were in the affidavit are actually very similar to the

25   facts in *Munchel*; and there does not seem to be anything

1   additional that would create an articulable threat to the

2   community.

3               THE COURT:  Do you know what Munchel's release

4   conditions are right now?

5               MS. JACOB:  Your Honor, I -- I don't know the

6   specific conditions, but if it includes -- I'm assuming the

7   Court is -- is suggesting that it --

8               THE COURT:  I don't know.  I mean, it's just a

9   question.  I don't know what the status of his release

10  conditions are.

11          In any event, I am going to grant the government's

12  request and -- as the magistrate judge did in the jurisdiction

13  of arrest -- and continue Mr. Doolin on GPS monitoring and will

14  not have a home detention component to it.  So it's just a

15  monitor so that people can -- in pretrial who will be

16  supervising him can know where he's at.

17          He will also have to comply with the other standard

18  conditions of release that were outlined by the government in

19  the joint session.

20          Mr. Doolin, did you hear your conditions of release, and

21  are you prepared to comply with them?

22              DEFENDANT DOOLIN:  Yes, sir.  They're -- am I allowed

23  to make a statement or --

24              THE COURT:  Well, I would advise against it.  I'm

25  sure your attorney will too.

1          MS. JACOB:  Yes, Mr. Doolin, I would advise against

2     that.  We can talk later.

3          THE COURT:  Mr. Doolin, did you hear the warnings

4     that I gave, and did you understand those warnings?

5          DEFENDANT DOOLIN:  Yes, sir.

6          THE COURT:  Mr. Tran, go ahead and swear in the

7     defendant to his conditions of release.

8          THE COURTROOM DEPUTY:  Mr. Joshua -- Joshua

9     Christopher Doolin.

10          (Oath administered to Defendant Doolin.)

11          DEFENDANT DOOLIN:  Yes, sir.

12          THE COURT:  Okay.  Ms. Amato, then, on behalf of

13     Ms. Pollock, we're going to deal with Ms. Pollock now.

14          Government, what's your request with respect to release

15     conditions for Ms. Pollock?

16          MS. KEARNEY:  Thank you, Your Honor.

17          In addition to the baseline conditions that Mr. Steiner

18     laid out in the outset of the proceeding, the government is

19     seeking GPS monitoring not in connection with home

20     incarceration on the grounds that she poses a danger to the

21     community.

22          THE COURT:  Okay.  Ms. Amato.

23          MS. AMATO:  Thank you, Your Honor.

24          THE COURT:  Again, this might -- I want to -- maybe

25     this is where the issue is too about -- someone owns a gun

1   shop.  I thought the Pollocks owned a gun shop.  So I want to

2   make sure that we resolve that issue.  I might be wrong about

3   that, but somewhere I've read someone owns a gun shop.

4          MS. KEARNEY:  It's my understanding, Your Honor, that

5   the Pollock family -- specifically, Ms. Pollock's older

6   brother -- operates a gun shop.  Mr. Hutchinson was or is

7   employed there, but I do not know whether Ms. Pollock works

8   there.

9          MS. AMATO:  Yes, Your Honor.  Ms. Pollock has not

10  worked for her brother's gun shop.  She works -- and as she

11  explained to the pretrial service officer in Florida -- and I

12  only have a copy of the pretrial services report (inaudible) --

13  but she is self-employed as a -- as a house painter, and so she

14  is not connected to her brother's gun shop.

15         THE COURT:  Okay.  What -- any other objections?

16         MS. AMATO:  Well, Your Honor, I -- I also have a copy

17  of the order setting conditions of release in Florida, and I

18  know that she has already been ordered there to be placed on

19  GPS monitoring, but I would still lodge an objection to that,

20  because -- or get released from electronic monitoring.  I don't

21  believe that for her that is necessary, but I'm not quite sure

22  why or what was brought to that Court's attention for that

23  condition to be imposed.

24         But as to the other conditions, there's -- there's no

25  objection.

1        THE COURT:  All right.

2        UNIDENTIFIED MALE SPEAKER:  Are you -- well --

3        THE COURT:  I am -- I'm going to grant the

4  government's request as to the magistrate judge in the

5  jurisdiction of arrest then.  I mean, I do it based on the

6  allegations in the complaint.  I'm going to require

7  Ms. Pollock, like Mr. Doolin, to be GPS monitored.  It will

8  not -- monitoring will not be associated with any form of home

9  detention or home incarceration, just a GPS monitor, as well as

10  the standard conditions.

11       Ms. Pollock, have you heard and do you understand these

12  conditions of release, and are you prepared to comply with

13  them?

14       DEFENDANT POLLOCK:  Yes, sir.

15       THE COURT:  And did you hear the warnings that I

16  gave, and did you understand those warnings?

17       DEFENDANT POLLOCK:  Yes, Your Honor.

18       THE COURT:  Mr. Tran, please go ahead and swear

19  Ms. Pollock to her conditions of release.

20       THE COURTROOM DEPUTY:  Ms. Olivia Michele Pollock.

21       (Oath administered to Defendant Pollock.)

22       DEFENDANT POLLOCK:  Yes, sir, I do.

23       THE COURT:  I have a note here from Judge Nichols'

24  courtroom deputy.  We do not have a next date.  He instructs

25  the parties to reach out to his courtroom deputy for purposes

1    of scheduling your initial appearance in front of him.  So

2    that's all the information that I have.

3              Ms. Kearney, anything further we need to do here today?

4              MS. KEARNEY:  Thank you.

5         We'll -- we'll reach out to Judge Nichols' deputy

6    regarding scheduling that new date.  Since we don't have one,

7    we will also address the Speedy Trial Act for that purpose.

8              THE COURT:  Yeah, he can address that.

9              Anything further, Ms. Peterson?

10             MS. PETERSON:  No, Your Honor.  Thank you.

11             THE COURT:  Ms. Jacob?

12             MS. JACOB:  No.  Thank you, Your Honor.

13             THE COURT:  Or Ms. Amato?

14             MS. AMATO:  No.  Thank you, Your Honor.

15             THE COURT:  All right.  Parties are excused in this

16   case.

17             MS. KEARNEY:  Actually, if I may, Your Honor.

18   Given -- given that we don't have a -- a date with

19   Judge Nichols yet, could we set a control date perhaps two

20   weeks out and then address the Speedy Trial Act from now until

21   then?

22             THE COURT:  Ms. Peterson, you -- you shook your head.

23             MS. PETERSON:  Well, Your Honor, I was simply

24   (inaudible).  We can reach out to Judge Nichols.  I hate to see

25   us clutter the magistrate court calendar any more than it is

1   every day by having this status conference for no reason.  If

2   we can -- if the government needs -- wants to file a motion to

3   exclude time under the speedy trial clock and Judge Nichols

4   doesn't promptly schedule a status, they can do that in -- in

5   (inaudible).

6           THE COURT:  And I'm sure he will.  He will certainly

7   schedule it promptly, so --

8           Okay.  We're finished here today.  I'm sure speedy

9   trial, at least this initial request, is not going to be an

10   issue.

11           In any event, parties are excused.

12           (Proceedings were concluded at 2:55 p.m.)

1                           CERTIFICATE

2              I do hereby certify that the foregoing is a true,

3      correct, and complete transcript of the audio-recorded

4      proceedings in this matter, audio recorded on July 8, 2021, and

5      transcribed from the audio recording to the best of my ability,

6      and that said transcript has been compared with the audio

7      recording.

8              Dated this 18th day of October, 2021.

9

10                            /s/ Nancy J. Meyer
                              Nancy J. Meyer, Official Court Reporter
11                            Registered Diplomate Reporter
                              Certified Realtime Reporter
12                            United States Courthouse, Room 6509
                              333 Constitution Avenue Northwest
13                            Washington, DC 20001
                              202-354-3118
14                            nancy_meyer@dcd.uscourts.gov

15

16

17

18

19

20

21

22

23

24

25