UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | No. 21-CR-447-3 (CJN) |
| | : | |
| JOSHUA CHRISTOPHER DOOLIN, | : | |
| | : | |
| Defendant. | : | |

### GOVERNMENT'S OPPOSITION TO DEFENDANT'S
### MOTION FOR SEVERANCE

The United States respectfully submits this opposition to Defendant Joshua Doolin's "Motion for Severance of Defendants and/or Counts with Incorporated Memorandum of Points and Authorities." (ECF No. 82.) For the reasons set forth below, the Court should deny the defendant's severance motion.

### BACKGROUND

Joshua Doolin and his co-defendants are family members or close friends, who traveled together to Washington D.C. On January 6, 2021, the defendants traveled to the restricted grounds of the United States Capitol where they jointly, with their fellow rioters, toppled a police barricade, engaged in a coordinated effort to attack law enforcement officers, and engaged in disruptive and disorderly conduct for several hours. Throughout the course of the day, Doolin and his co-defendants were armed with flagpoles, a chemical irritant cannister, riot shields, and other weapons.

In fewer than 20 minutes, between approximately 1:56 p.m. and 2:12 p.m., the defendants and others participated in assaultive conduct against the U.S. Capitol Police (USCP) and the Metropolitan Police Department (MPD) officers who were protecting the west side of the Capitol

1

building. Doolin and his co-defendants charged the line of officers and some of his co-defendants struck officers and used weapons against the officers. During this time, co-defendant Jonathan Pollock grabbed a riot shield from an officer and used it to slam into the line of officers. Doolin, following behind Pollock, brandished a flagpole that had been dropped by another rioter. Doolin advanced towards the line of officers while he pointed the flagpole at the officers, before being turned back by chemical spray that was deployed by another rioter. Doolin dropped the flagpole as a result, but co-defendant Michael Perkins then picked it up and used it to assault officers.

Doolin and his co-defendants eventually made it to the Upper West Terrace (at approximately 2:58 p.m.) and the Lower West Terrace (at approximately 4:29 to 4:58 p.m.) in their efforts to enter the Capitol building. While in these locations, Doolin was in possession of zip ties, a chemical irritant canister, and a riot shield. At all times, Doolin was present with some of his co-defendants.

The evidence in this case primarily consists of video footage captured from officers' body worn cameras (BWC), surveillance cameras, and lay individuals who filmed the events and then shared their videos on publicly accessible mediums. These videos depict the defendants and their conduct. The government anticipates the same evidence will be used at trial for all the defendants. The defendants traveled together and jointly engaged in the same series of illegal acts. Because the same evidence established the defendants' individual crimes, the grand jury jointly indicted them for:

- Assaulting, Resisting, or Impeding Certain Officers or Employees, in violation of 18 U.S.C. §§ 111(a)(1) and (b):
- Theft of Government property, in violation of 18 U.S.C. § 641
- Knowingly Entering or Remaining in any Restricted Building or Grounds Without Lawful Authority, in violation of 18 U.S.C. § 1752(a)(1);

- Disorderly and Disruptive Conduct in a Restricted Building or Grounds, in violation of 18 U.S.C. § 1752(a)(2);

- Engaging in Physical Violence in a Restricted Building or Grounds, in violation of 18 U.S.C. 1752(a)(4);

- Acts of Physical Violence in the Capitol Grounds, in violation of 40 U.S.C. § 5104(e)(2)(F).

## ARGUMENT

Joinder of the charges against these defendants is proper and does not unfairly prejudice Doolin under Rule 8 or 14 of the Federal Rules of Criminal Procedure. First, the defendants participated in the same series of acts and thus joinder under Rule 8 is proper. Second, a joint trial would neither compromise a specific trial right of Doolin's or prevent a jury from making a reliable judgment about Doolin's guilt or innocence. Nor has Doolin demonstrated substantial trial prejudice to warrant severance under Rule 14. To the extent there is any prejudice to Doolin because of his joinder, a limiting instruction would sufficiently reduce any potential prejudice. In addition, the government will submit to the Court individual verdict forms for each defendant so that when a jury makes its decision on individual counts for individual defendants, they will be evaluating the evidence presented with respect to each defendant and each count separately. Lastly, Doolin's Sixth Amendment right to a speedy trial has not been compromised by his joinder with his co-defendants.

### I. Doolin was not improperly joined with his codefendants under Rule 8.

In cases with multiple defendants, the "weight of authority in this circuit and elsewhere regards Rule 8(b) as providing the sole standard for determining the permissibility of joinder of offenses." *United States v. Wilson*, 26 F.3d 142, 153 n.4 (D.C. Cir. 1994) (citations omitted); *see also United States v. Perry*, 731 F.2d 985, 989 (D.C. Cir. 1984); *United States v. Jackson*, 562

F.2d 789, 793-94 (D.C. Cir. 1977). Rule 8(b) permits joinder of defendants "alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses." Fed. R. Crim. P. 8(b). This circuit construes Rule 8(b) broadly in favor of joinder. *See United States v. Nicely*, 922 F.2d 850, 853 (D.C. Cir. 1991) ("[T]his circuit's law makes it difficult to prevail on a claim that there has been a misjoinder under Rule 8(b).").

Motions for severance of properly joined defendants should be granted only where the dominant public interest in joint trials is outweighed by substantial prejudice arising from case-specific problems. *See United States v. Tucker*, --- F.4th ---, No. 19-3042, 2021 WL 3950864, at *12 (D.C. Cir. Sept. 3, 2021) (per curiam) ("Joint trials are preferred in federal criminal cases because they 'promote efficiency and serve the interests of justice by avoiding the scandal and inequity of inconsistent verdicts.'" (quoting *Zafiro v. United States*, 506 U.S. 534, 537 (1993))). "The preference for joint trials is especially strong when the respective charges require presentation of much the same evidence, testimony of the same witnesses, and involve . . . defendants who are charged, inter alia, with participating in the same illegal acts." *Id*. at *12 (internal quotation marks and citation omitted).

In this case, Doolin and his co-defendants were involved in the same series of illegal acts at the same time and in the same locations. The BWC and open-source video footage will primarily be the same for all the defendants. Any percipient witness that the government would call to prove one of the defendants' actions would also have witnessed and/or been present for acts committed by the other defendants. When there is a "a logical relationship between the acts or transactions within the series" joinder is proper. *United States v. Perry*, 731 F.2d 985, 990 (D.C. Cir. 1984.) In this case, the substantial overlap of charged crimes and evidence demonstrates that joinder is proper under Rule 8.

## II. Rule 14(a) relief is not appropriate as Doolin is not unfairly prejudiced by joinder

Pursuant to Rule 14(a) of the Federal Rules of Criminal Procedure, "[i]f the joinder of offenses or defendants in an indictment . . . appears to prejudice a defendant . . . the court may . . . sever the defendants' trials, or provide any other relief that justice requires." Fed. R. Crim. P. 14(a). The Supreme Court defines prejudice as "a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro*, 506 U.S. at 539. The D.C. Circuit has identified certain reasons why a defendant may be prejudiced by joinder, including: (1) the defendant's embarrassment or confoundment in presenting separate defenses, (2) the jury's possible use of the evidence of one of the crimes charged to infer a criminal disposition on the part of the defendant, from which is found his guilt of the other crime or crimes charged, or (3) the jury's possible accumulation of the evidence of various crimes charged to find guilt when, if considered separately, the jury would not so find. *Drew v. United States*, 331 F.2d 85, 88 (D.C. Cir. 1964).

Even if prejudice is shown, the "permissive language of [Rule 14] makes clear that severance is not required." *Tucker*, 2021 WL 3950864, at *12. Instead, Rule 14 grants a district court "'significant flexibility to determine how to remedy any potential risk of prejudice posed by joinder of multiple defendants in a single trial.'" *Id.* (quoting *United States v. Moore*, 651 F.3d 30, 95 (D.C. Cir. 2011) (per curiam)). Thus, "even in cases where the risk of prejudice is high, 'less drastic measures, such as limiting instructions, often will suffice to cure any risk of prejudice.'" *Id.* (quoting *Zafiro*, 506 U.S. at 539). "The defendant carries the burden of demonstrating prejudice resulting from a failure to sever." *United States v. Gooch*, 665 F.3d 1318, 1326 (D.C. Cir. 2012)

In light of these principles, "severance is the exception rather than the rule," and "motions to sever should be granted 'sparingly.'" *Tucker*, 2021 WL 3950864, at *12 (quoting *United States v. Celis*, 608 F.3d 818, 844 (D.C. Cir. 2010) (per curiam)).

> **a. There is minimal danger of spillover prejudice in this case, and any potential prejudice can be cured with jury instructions.**

Doolin argues that there is a serious risk of spillover prejudice because of an alleged disparity in evidence between himself and his co-defendants. (E.C.F. No. 82, at 10-14.) Doolin's argument fails for at least four reasons.

First, there is no "dramatic disparity" of evidence between Doolin and his co-defendants. *See United States v. Slade*, 627 F.2d 293, 309 (D.C. Cir. 1980). Put simply, this is not a case where the government's evidence against Doolin's co-defendants is "far more damaging" than the evidence against Doolin. *United States v. Bruner*, 657 F.2d 1278, 1290 (D.C. Cir. 1981) (internal quotation marks and citation omitted). As explained above, there is substantial overlap in the evidence against all defendants. The government's case would involve the same evidence and same witnesses because the defendants are charged with participating in the same series of illegal acts. The BWC and open-source videos depict the defendants' actions against the police line on the west side of the Capitol and the defendants' actions on the Lower West Terrace and the Upper West Terrace as Doolin and his codefendants attempted to get closer to the building and make entry. Moreover, evidence of a co-defendant's conduct, would only be admissible against that specific co-defendant. And to the extent that a co-defendant's action is damaging to Doolin, a limiting instruction would alleviate any potential spillover prejudice.

Second, because the defendants' words and actions are recorded on videos, the jury has "'no need to look beyond each defendant's own words [and conduct] in order to convict.'" *United States v. Gaviria*, 116 F.3d 1498, 1533 (D.C. Cir. 1997) (per curiam) (quoting *United States v.*

6

*Anderson*, 39 F.3d 331, 348 (D.C. Cir. 1994)).  These videos thereby minimize the risk that the jury will not be able to compartmentalize the evidence against each defendant in this case. *See Celis*, 608 F.3d at 846 ("'[T]he danger of spillover prejudice is minimal when the Government presents tape recordings of individual defendants.'") (quoting *Gaviria*, 116 F.3d at 1533).

Third, there is minimal risk of jury confusion where five defendants are charged in the indictment. *See Gaviria*, 116 F.3d at 1533 (no risk of prejudice with four charged defendants); *Anderson*, 39 F.3d at 348 (no risk of prejudice with ten charged defendants).  Relatedly, there is minimal risk that the jury will use evidence of a co-defendant's actions against Doolin.

Finally, even assuming, *arguendo*, that there are some disparities in evidence between Doolin and his co-defendants, "any prejudice caused by joinder is best dealt with by instructions to the jury to give individual consideration to each defendant." *United States v. Moore*, 651 F.3d 30, 95 (D.C. Cir. 2011) (per curiam) (citation omitted).  "*[S]ome* disparity in evidence does not compel severance," especially where the government presents "substantial and independent evidence of each defendant's significant involvement" in the charged conduct. *Id.* at 95-96 (emphasis added) (quoting *United States v. Tarantino*, 846 F.2d 1384, 1399 (D.C. Cir. 1988)). Given the evidence of guilt against each defendant, a jury instruction which explains that each defendant's guilt must be considered individually based upon the evidence that pertained to him will cure any potential spillover prejudice. *United States v. Ford*, 155 F. Supp. 3d 60, 70 (D.C. Cir. 2016.)

  b. **Alleged antagonistic defenses do not warrant severance.**

Without providing specifics, Doolin concludes that his codefendants will present antagonistic defenses that will prejudice him. (E.C.F. No. 82, at 14-17.)  Mutually antagonistic defenses exist when one defendant's defense is irreconcilable with a co-defendant's defense.

*United States v. Gilliam*, 167 F.3d 628, 635 (D.C. Cir. 1999.)  But, even if presented "[m]utually antagonistic defenses are not prejudicial per se." *Zafiro*, 506 U.S. at 538. And the law is "well settled" that severance is not justified simply because defendants "may have a better chance of acquittal in separate trials." *Zafiro*, 506 U.S. at 540; *see also United States v. Wilson*, 605 F.3d 985, 1016 (D.C. Cir. 2010) (requiring "more than 'the presence of some hostility' among codefendants, and 'more than the fact that co-defendants whose strategies were generally antagonistic were tried together'") (quoting *Gilliam*, at 635 (D.C. Cir. 1999)). "Even where codefendants implicate each other, their defenses are not necessarily mutually antagonistic, and even when they are mutually antagonistic, they are not necessarily improperly prejudicial." *Gilliam*, at 635.

Unlike a typical antagonistic defense when one defendant attempts to shift blame to another defendant, Doolin fails to name any of his co-defendants, identify any specific counts, or describe any particular conduct that would present an antagonistic defense that would prejudice him. *See Wilson*, at 1017.  But even assuming, *arguendo*, that mutually antagonistic defenses were presented, a limiting instruction would be sufficient to cure any possible prejudice. *Id*.

### III. Denial of Doolin's severance motion will not result in a violation of his Sixth Amendment right to a speedy trial.

Doolin contends that severance is necessary to preserve his Sixth Amendment right to a speedy trial. (D.E., at 7-10).  This argument is without merit because there has been no violation of Doolin's speedy trial right under the Speedy Trial Act, much less his speedy trial right under the Sixth Amendment.  Thus, Doolin cannot claim that a joint trial will compromise his right to a speedy trial.

While the absence of a Speedy Trial Act violation "does not *ipso facto* defeat a Sixth Amendment speedy trial claim," it is an "unusual case in which the [Speedy Trial] Act is followed

8

but the Constitution violated." *United States v. Rice*, 746 F.3d 1074, 1081 (D.C. Cir. 2014) (internal quotation marks omitted). In assessing whether a defendant's Sixth Amendment right to a speedy trial has been violated, the Court must consider four factors: "'[l]ength of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant.'" *Id.* (alteration in original) (quoting *Barker v. Wingo*, 407 U.S. 514, 530 (1972)).

Under the first factor, which "is to some extent a triggering mechanism," *Barker*, 407 U.S. at 530, a defendant must make a threshold showing that the delay between the accusation and the trial was presumptively prejudicial, as "by definition, [a defendant] cannot complain that the government has denied him a 'speedy' trial if it has, in fact, prosecuted his case with customary promptness," *Doggett v. United States*, 505 U.S. 647, 652 (1992). Without such a showing of presumptive prejudice, there is "no necessity for inquiry into the other factors." *Barker*, 407 U.S. at 530.

Given that approximately eight months have elapsed between the defendant's arrest and the present, the defendant cannot yet establish that the length of delay triggers a review of the other *Barker* factors. *See Doggett*, 505 U.S. at 652 n.1 ("[P]ost accusation delay [is] presumptively prejudicial at least as it approaches one year.") (internal quotation marks omitted); *see also United States v. Ford*, 155 F. Supp. 3d 60, 69 ("Sanders's seven-month delay and Hager's nine-month delay do not violate the Sixth Amendment right to a speedy trial.").

Moreover, whether a delay is presumptively prejudicial depends upon the "peculiar circumstances of the case," and therefore requires judicial findings. *Barker*, 407 U.S. at 530-31; *see also United States v. Marshall*, 669 F.3d 288, 295-96 (D.C. Cir. 2011) (requiring the district court to make factual findings regarding defendant's allegation that the government did not overcome the presumption of prejudice for delays over one year).

The defendant cannot show, and this Court should not find, that the government is not "prosecut[ing] his case with customary promptness," *see Doggett*, 505 U.S. at 652, given the government's diligent efforts to address unprecedentedly complex discovery issues.[1] *See* E.C.F. No. 83. Even in cases involving detained defendants with substantially longer periods of pre-trial delay, the D.C. Circuit has found no violation of the Sixth Amendment speedy trial guarantee. *See, e.g.*, *Rice*, 746 F.3d at 1082 ("[A]lthough Rice suffered lengthy [twenty-six month] 'pretrial incarceration' and 'anxiety and concern,' he does not even attempt to argue that he suffered 'the most serious' form of prejudice: the impairment of his defense." (quoting *Barker*, 407 U.S. at 532)); *United States v. Lopesierra-Gutierrez*, 708 F.3d 193, 203 (D.C. Cir. 2013) (three-and-one half years of pretrial delay did not violate the Sixth Amendment). In *United States v. Taylor*, No. 18-198 (JEB), 2020 WL 7264070 (D.D.C. Dec. 10, 2020), Judge Boasberg denied a defendant's motion to dismiss for a speedy trial violation, finding that his Sixth Amendment right had not been infringed notwithstanding the fact that the defendant had at that point been detained pending trial for 28 months.

The second and third *Barker* factors—the reason for the delay and the defendant's assertion of his right to a speedy trial—also cut against Doolin. 278 days will have elapsed between the filing of the indictment (July 1, 2021) and the last date of excludable time for Doolin under the Speedy Trial Act (April 5, 2022). The Court has tolled time five times under the Speedy Trial Act (Min. Order, July 14, 2021; July 28, 2021; Sept. 28, 2021; Nov. 23, 2021; Feb. 2, 2022.). Doolin

---

[1] Even assuming, *arguendo*, that the length of the delay gives rise to a "presumption of prejudice," the presumption is rebuttable, and the threshold requirement—the length of the delay—is only "one factor among several." *Doggett*, 505 U.S. at 652. As explained below, defendant has not attempted to show the kind of actual prejudice that would establish a Sixth Amendment violation.

did not invoke his right to a speedy trial until the status conference on February 2, 2022. Up until February 2, Doolin had affirmatively waived time under the Speedy Trial Act. Doolin also has filed three motions that automatically tolled the Speedy Trial clock under 18 U.S.C. § 3161(h)(1)(D) and (h)(6).[2] On February 2, the Court excluded time over Doolin's objection in the interest of justice pursuant to 18 U.S.C. § 3161(h)(6) between February 2 and April 5.

Finally, with respect to the fourth *Barker* factor, prejudice, defendant complains about "anxiety" caused by damage to his reputation because of the pending charges and "finances." (ECF No. 82, at 8-10.) He does not contend, much less demonstrate, that any delay has impeded his ability to prepare his defense, which is the primary "prejudice" that the speedy trial right seeks to avoid. *See Barker*, 407 U.S. at 532 (the "most serious" form of prejudice arising from delay is "the possibility that the defense will be impaired"). Doolin has raised a complaint about discovery production but recognizes the government has been disclosing discovery materials through different mediums. (D.E. 82, at 9.) Doolin's discovery complaint is not a result of delay, but due to "ongoing logistical issues in accessing case materials." (ECF No. 82, at 9.)

Because Doolin "offers no explanation of how the delay impaired [his] defense," he "fails to show that [his] Sixth Amendment right to a speedy trial was violated." *United States v. Bikundi*, 926 F.3d 761, 780 (D.C. Cir. 2019); *see also Mitchell v. United States*, 841 F. Supp. 2d 322, 330 (D.D.C. 2012) (no *Barker* prejudice where defendant did not allege "witness disappearance or death and the inability of a witness to recall events accurately due to the passage of time"). That's

---

[2] On July 30, 2021, Doolin filed a "Motion to Modify Conditions of Release" (ECF No. 35), which was resolved on August 9, 2021. On October 5, 2021, Doolin filed a "Second Motion to Modify Conditions of Release" (ECF No. 52), which was resolved on October 15, 2021. And on February 10, 2022, Doolin filed "Motion for Severance of Defendants and/or Counts with Incorporated Memorandum of Points and Authorities" (ECF No. 82), which remains unresolved.

because "the defendant cannot merely allege possible prejudice, he must show that his defense was impaired such that he suffered actual and substantial prejudice as a result of the delay." *United States v. Koller*, 956 F.2d 1408, 1414 (7th Cir. 1992); *see also United States v. Omran*, 641 F. App'x 427, 429 (5th Cir. 2016) (per curiam) (unpublished) (defendant's "vague and conclusory assertions are insufficient to show the extreme prejudice or willfulness by the prosecution to delay his trial which would require an examination of the *Barker* factors").

"[A] defendant generally cannot establish a Sixth Amendment speedy trial claim, however long the delay, if the government pursued the prosecution with 'reasonable diligence,' and the defendant fails to show that the delay resulted in 'specific prejudice to his defense." *United States v. Parga-Rivas*, 689 F. Supp. 2d 25, 29 (D.D.C. 2009) (quoting *Doggett*, 505 U.S. at 656); *see also Barker*, 407 U.S. at 522 (rejecting a rigid rule because of the "unsatisfactorily severe remedy of dismissal of the indictment"). This Court should hold that no Sixth Amendment violation has occurred.

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

/s/ *Matthew Moeder*
Matthew Moeder
Assistant United States Attorney
MO Bar No. 64036
400 East 9th Street, Room 5510
Kansas City, Missouri 64106
(816) 426-4103
Matthew.Moeder@usdoj.gov

## CERTIFICATE OF SERVICE

I certify that a copy of the Government's Opposition to Defendant's Motion for Severance was served on all counsel of record via the Court's electronic filing service.

/s/ *Matthew Moeder*
Matthew Moeder
Assistant United States Attorney

Date:  February 24, 2021