UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | Case No. 21-cr-00447-CJN |
| v. : | |
| : | |
| JOSHUA CHRISTOPHER DOOLIN : | |
| : | |
| Defendant. : | |
| : | |

GOVERNMENT'S OPPOSITION TO DEFENDANT'S
MOTION TO DISMISS INDICTMENT

The United States respectfully submits this opposition to defendant Joshua Christopher Doolin's motion to dismiss counts within the indictment that allege violations of 18 U.S.C. § 1752.[1] Doolin moves this Court to dismiss counts that charge him with a violation of 18 U.S.C. § 1752(a)(1), Entering and Remaining in a Restricted Building or Grounds (Count 21 in the superseding indictment) and 18 U.S.C. § 1752(a)(2), Disorderly and Disruptive Conduct in a Restricted Building or Grounds (Count 24 in the superseding indictment). (ECF No. 109).

Doolin contends, first, that because the U.S. Capitol Police, not the U.S. Secret Service, barricaded the area around the U.S. Capitol, he should not be charged with violating the statute. This contention lacks merit. Several judges in this District have rejected this argument. *See, e.g.*, *United States v. Mostofsky*, 21-cr-138 (JEB), 2021 WL 6049891 at *12-13 (D.D.C. Dec. 21, 2021); *United States v. Nordean,* 21-cr-175 (TJK), 2021 WL 6134595 at *18 (D.D.C. Dec. 28, 2021); *United States v. McHugh,* 21-cr-453 (JDB), ECF No. 51 (D.D.C. Feb. 1, 2022); *United States v. Griffin*, No. 21-cr-92 (TNM), 2021 WL 2778557 at *2 (D.D.C. July 2, 2021); *United States v.*

---

[1] The original indictment charged Doolin with Entering and Remaining in a Restricted Building or Grounds, in violation of 18 U.S.C. § 1752(a)(1) in Count 16 and with Disorderly and Disruptive Conduct in a Restricted Building or Grounds, in violation of 18 U.S.C. § 1752(a)(2) in Count 18. (ECF No. 8.) A superseding indictment was returned by the grand jury on July 13, 2022, that now charges Doolin with violating 18 U.S.C. § 1752(a)(1) in Count 22 and violating 18 U.S.C. § 1752(a)(2) in Count 24. (ECF No. 116).

*Caldwell*, No. 21-cr-28 (APM), ECF No. 415 (D.D.C. Sept. 14, 2021); *United States v. Seefried*, 21-cr-287 (TNM), Minute Order (D.D.C. May 20, 2022).

Doolin also contends that the staute is not applicable because the former Vice President was not temporarily visiting the U.S. Capitol building on January 6, 2021. This contention also lacks merit. Other judges in this District have uniformly rejected this argument as well. *See, e.g.*, *Griffin,* 21-cr-92, Minute Order, Mar. 22, 2022; *United States v. Puma*, 21-cr-454 (PLF), 2022 WL 823079, at *16-*19 (D.D.C. Mar. 19, 2022); *United States v. Andries*, 21-cr-93 (RC), 2022 WL 768684, at *16-*17 (D.D.C. Mar. 14, 2022); *McHugh*, 2022 WL 296304, at *20-*22; *Seefried*, 21-cr-287, Minute Order May 20, 2022.

This Court should deny Doolin's motion to dismiss.

## **FACTUAL BACKGROUND**

On January 6, 2021, a Joint Session of the United States Congress convened in the United States Capitol building to certify the vote of the Electoral College of the 2020 Presidential Election. With the Joint Session underway and with Vice President Mike Pence presiding, a large crowd gathered outside the U.S. Capitol, entered the restricted grounds, and forced entry into the Capitol building. As a result, the Joint Session and the entire official proceeding of the Congress was halted until law enforcement was able to clear the U.S. Capitol of hundreds of unlawful occupants and ensure the safety of elected officials.

Doolin and his co-defendants traveled to Washington D.C. to participate in the events of January 6. After attending the rally where former President Trump spoke, the defendants walked to the restricted grounds of the U.S. Capitol grounds where they jointly, with their fellow rioters, toppled a police barricade, engaged in a coordinated effort to attack law enforcement officers, attempted to make entry into the building, and engaged in disruptive and disorderly conduct for

several hours. Doolin and his co-defendants charged the line of officers and some of his co-defendants struck officers and used weapons against the officers. Doolin stole and armed himself with a law enforcement chemical irritant cannister and riot shield. Doolin also attempted to make entry into the building by pushing, along with other rioters, against the police line in the tunnel that connected the U.S. Capitol's Lower West Terrace to the building.

## PROCEDURAL HISTORY

On July 1, 2021, the Grand Jury returned the original indictment charging Doolin and his co-defendants with multiple offenses arising from their conduct on January 6, 2021. (ECF No. 8). Doolin was originally charged with 18 U.S.C. § 1752(a)(1), Entering and Remaining in a Restricted Building or Grounds (Count 16 ) and 18 U.S.C. § 1752(a)(2), Disorderly and Disruptive Conduct in a Restricted Building or Grounds (Count 18). (ECF No. 8). A superseding indictment was returned by the grand jury on July 13, 2022 that now charges Doolin with Theft in a Federal Enclave, in violation of 18 U.S.C. § 661 (Count 16); Theft of Government Property, in violation of 18 U.S.C. § 641 (Count 17); Civil Disorder, in violation of 18 U.S.C. § 231(a)(3) (Count 18); Entering and Remaining in a Restricted Building or Grounds, in violation of 18 U.S.C. § 1752(a)(1) (Count 21); Disorderly and Disruptive Conduct in a Restricted Building or Grounds, in violation of 18 U.S.C. § 1752(a)(2) (Count 24). (ECF No. 116).

Prior to the return of the superseding indictment, Doolin filed motions to dismiss certain counts of the indictment that charged violations of 18 U.S.C. § 1752. (ECF No. 109).

## LEGAL STANDARD

A defendant may move to dismiss an indictment or count thereof for failure to state a claim prior to trial. *See* Fed. R. Crim. P. 12(b)(3)(B)(v). "[A]n indictment must be viewed as a whole, and the allegations must be accepted as true in determining if an offense has been properly

alleged." *United States v. Bowdoin*, 770 F. Supp. 2d 142, 146 (D.D.C. 2011). The question is whether the allegations, if proven, would be sufficient to permit a jury to find that the crimes charged were committed. *Id.* "An indictment must contain every element of the offense charged, if any part or element is missing, the indictment is defective and must be dismissed." *See United States v. Hillie*, 227 F. Supp. 3d 57, 70 (D.D.C. 2017).

## ARGUMENT

The Court should deny Doolin's motion to dismiss. Section 1752 of Title 18, prohibits the unlawful entry into and disruptive or disorderly conduct in a "restricted buildings or grounds." A "restricted building or grounds" is a "posted, cordoned off, or otherwise restricted area…where the President or other person protected by the Secret Service is or will be temporarily visiting." 18 U.S.C. § 1752(c)(1)(B). At the time Doolin entered the U.S. Capitol grounds on January 6, the grounds were restricted because the Vice President, who was protected by the Secret Service, was present. Doolin's conduct accordingly falls within the Section 1752's plain sweep because he unlawfully entered restricted grounds while the Vice President was "temporarily visiting," as alleged in the superseding indictment.

**A.      18 U.S.C. § 1752 does not require the government to prove that the restricted area was restricted at the Secret Service's direction.**

Doolin argues that because the Capitol Police, not the Secret Service, barricaded and restricted the area around the Capitol, he should not be charged with violating 18 U.S.C. § 1752(a)(1) and (2). Courts in this district have rightly rejected this contention. *See, e.g.*, *Mostofsky*, 2021 WL 6049891 at *12-13; *Nordean,* 2021 WL 6134595 at *18; *McHugh,* 21-cr-453, ECF No. 51; *Griffin*, 2021 WL 2778557 at *2; *Caldwell*, 21-cr-28, ECF No. 415; *United States v. Seefried*, 21-cr-287, Minute Order, May 20, 2022.

4

Subsection 1752(c) defines the phrase "restricted buildings or grounds" as

> any posted, cordoned off, or otherwise restricted area—
>
> > of the White House or its grounds, or the Vice President's official residence or its grounds;
> >
> > of a building or grounds where the President or other person protected by the Secret Service is or will be temporarily visiting; or
> >
> > of a building or grounds so restricted in conjunction with an event designated as a special event of national significance.

18 U.S.C. § 1752(c)(1). It then defines the term "other person protected by the Secret Service" as "any person whom the United States Secret Service is authorized to protect under section 3056 of this title or by Presidential memorandum, when such person has not declined such protection." 18 U.S.C. § 1752(c)(2). The Vice President is a protectee of the Secret Service.

By its plain terms, then, Section 1752 prohibits the unlawful entry into a restricted or otherwise cordoned off area where "a person protected by the Secret Service is or will be temporarily visiting." *Wilson v. DNC Servs. Corp.*, 417 F. Supp. 3d 86, 98 (D.D.C. 2019), *aff'd* 831 F. App'x 513 (D.C. Cir. 2021). Section 1752, in other words, "focuses on perpetrators who knowingly enter a restricted area around a protectee, not on how it is restricted or who does the restricting." *Griffin*, 2021 WL 2778557, at *6. That straightforward analysis has a straightforward application here: a protected person (the Vice President) was present inside the U.S. Capitol building or on the U.S. Capitol grounds, and that some portion of the U.S. Capitol building and grounds was posted, cordoned off, or otherwise restricted, making it a "restricted building or grounds" under § 1752(c)(1). By engaging in prohibited conduct on those premises, Doolin violated 18 U.S.C. § 1752.

5

Doolin nonetheless urges the Court to import an extra-textual requirement that the Secret Service be required to designate the restricted area. That is so, Doolin claims, because it is the Secret Service who protects the President and others, so it is the Secret Service who must make the designation of a restricted area. That theory, in addition to finding no support in the text, fails for another obvious reason: Section 1752 is directed not at the Secret Service, but at ensuring the protection of the President and the office of the Presidency. *See* S. Rep. 91-1252 (1970); *see also* Elizabeth Craig, *Protecting the President from Protest: Using the Secret Service's Zone of Protection to Prosecute Protesters*, 9 J. Gender Race & Just. 665, 668–69 (2006). "Indeed, the only reference in the statute to the Secret Service is to its protectees. Section 1752 says nothing about who must do the restricting." *Griffin*, 2021 WL 2778557, at *7; *see also Mostofsky*, 2021 WL 6049891 at *13 ("The text plainly does not require that the Secret Service be the entity to restrict or cordon off a particular area."). "If Congress intended a statute designed to safeguard the President and other Secret Service protectees to hinge on who outlined the safety perimeter around the principal, surely it would have said so." *Griffin,* 2021 WL 2778557, at *6. Doolin's reading would have the Court create a "potentially massive procedural loophole" from the statute's "silence." *McHugh,* 21-cr-453, ECF No. 51, at 40. The Court should not do so.

The statute's history also undercuts Doolin's argument. *See Griffin,* 2021 WL 2778557, at *4–*5 (explaining how Congress has consistently "*broadened* the scope of the statute and the potential for liability"). While the earlier version of Section 1752 also did not say who must restrict a building or grounds, it did incorporate regulations promulgated by the Department of the Treasury (which at the time housed the Secret Service) governing restricted areas. *Id*. Even so, Congress subsequently struck subsection (d) and did not replace it with language limiting the law enforcement agencies allowed to designate a restricted area. Pub. L. 109-177, Title VI, Sec. 602,

120 Stat. 192 (Mar. 9, 2006). By eliminating reference to the Treasury Department (without replacing it with the Department of Homeland Security, which currently houses the Secret Service) indicates that the statute no longer depends (if it ever did) on whether the Secret Service has defined an area as "restricted." Moreover, Doolin's reading of the statute, which would require the Secret Service to "cordon off" a private residence, "no matter how secure the location or how imposing the preexisting walls," leads to "pressing absurdities." *Griffin*, 2021 WL 2778557 at *6.

### B. The Vice President can "temporarily visit" the U.S. Capitol

Contrary to Section 1752's plain terms, purpose, and structure, Doolin argues that Vice President Pence could not have "temporarily visited" the U.S. Capitol on January 6, 2021, because he had an office there on that day. He is wrong. Other judges in this District have rightly rejected this contention as well. *See, e.g.*, *McHugh*, 2022 WL 296304, at *20-*22; *United States v. Puma*, 21-cr-454 (PLF), 2022 WL 823079, at *16-*19 (D.D.C. Mar. 19, 2022); *United States v. Andries*, 21-cr-93 (RC), 2022 WL 768684, at *16-*17 (D.D.C. Mar. 14, 2022); *Griffin,* 21-cr-92, Minute Order, Mar. 22, 2022; *Seefried*, 21-cr-287, Minute Order, May 20, 2022.

The "ordinary meaning" of "temporarily visit" unambiguously includes a trip to one's office. *Andries*, 2022 WL 768684, at *16 (it is "quite natural to say that a person 'temporarily visits' a place where she has an office."). The term "temporary" means "[l]asting for a time only; existing or continuing for a limited time; transitory." *Temporary*, Black's Law Dictionary (11th ed. 2019). The verb "visit" means, *inter alia,* "to go to see or stay at (a place) for a particular purpose (such as business or sightseeing)" or "to go or come officially to inspect or oversee." *See* https://www.merriam-webster.com/dictionary/visit. Putting these definitions together, "someone is 'temporarily visiting' a location if they have gone there for a particular purpose, be it 'business, pleasure, or sight-seeing,' and for a limited time, which could be 'brief' or 'extended' while

7

nonetheless remaining 'temporary.'" *McHugh*, 2022 WL 296304, at *20.  People commonly go to their offices for one particular purpose (business), and for a limited time, often returning home at the end of the day.  They may return the following day, but there is no reason why one cannot repeatedly "temporarily visit" the same location.  One can "temporarily visit" a place where one has an office.

Vice President Pence was physically present at the U.S. Capitol for a particular purpose: he presided over Congress's certification of the 2020 Presidential Election, first in the joint session, and then in the Senate chamber. While not specifically alleged in the superseding indictment, two other Secret Service protectees (members of the Vice President's immediate family), also came to the U.S. Capitol that day for a particular purpose: to observe these proceedings. Furthermore, as President of the Senate, Vice President Pence oversaw the vote certification. Given the presence of the Vice President (and his family members), the U.S. Capitol plainly qualified as a building where "[a] person protected by the Secret Service [was] … temporarily visiting." 18 U.S.C. § 1752(c)(1)(B).

Doolin emphasizes Section 1752's use of the term "temporarily" and cites cases where either the President or Vice President were "traveling *outside* of the District of Columbia 'visiting' that area for a 'temporary' purpose." Section 1752, however, does not impose a requirement that the location being temporarily visited be outside of the District of Columbia. Second, the visit to the U.S. Capitol *was* temporary: Vice President Pence (and his family) had traveled to the U.S. Capitol to oversee and attend the Joint Session of Congress, a proceeding of limited duration. At the close of the proceeding, they left, confirming the "temporary" nature of their visit. *See McHugh*, 2022 WL 296304, at *20-21 (citing various dictionary definitions of "temporary" as "for a limited time" and finding that the Vice President can "temporarily visit" the U.S. Capitol).

8

Doolin offers two further observations, both irrelevant. First, he notes that Vice President Pence "lived and worked" in the District of Columbia. (ECF No. 59, at 24). But Section 1752(c)(1)(B) defines the restricted area by reference to "buildings or grounds," not municipal borders. That Vice President Pence lived and worked in Washington, D.C. does not detract from the fact that he "temporarily visit[ed]" the U.S. Capitol on January 6. "Simply being in the visitor's hometown does not mean a place cannot be 'visited.'" *McHugh*, 2022 WL 296304, at *22. Second, Doolin stresses that Vice President Pence had a permanent U.S. Capitol office. Section 1752(c)(1)(B), however, defines the restricted area by reference to the location of the protectee, not his office. When Vice President Pence traveled to the U.S. Capitol on January 6 to oversee the Joint Session of Congress, he was "visiting" the building. And because Vice President Pence intended to leave at the close of the session, this visit was "temporar[y]." Moreover, the U.S. Capitol is not the Vice President's regular workplace; even if "there is some carveout in § 1752 for where a protectee normally lives or works, it does not apply to Vice President Pence's trip to the Capitol on January 6, 2021." *McHugh*, 2022 WL 296304, at *22.

Such a "carveout," taken to its logical end, would undermine the government's ability to protect the President and Vice President by deterring and punishing individuals who seek unauthorized access to the President's or Vice President's location. It would restrict Section 1752(c)(1)(B)'s application to only locations outside the District of Columbia—on the view that any visit by the President or Vice President to a location within municipal limits cannot be "temporary" because they reside in the District of Columbia. Second, under Doolin's construction, Section 1752(c)(1)(B) would not apply where the President or Vice President temporarily stayed at their permanent residences in Delaware or California—on the view that such a trip would not qualify as "visiting." Nor would it apply to Camp David, where there is a presidential cabin and

9

office. In another strange scenario, a restricted area could exist when, as here, the Vice President's family visits the U.S. Capitol (because they are Secret Service protectees without an office there), but not when the Vice President does, affording a higher level of protection for the family of the elected official than to the elected official himself (or herself). No support exists for Doolin's effort to insert such large and irrational exceptions into the statute's sweep. *See Lovitky v. Trump*, 949 F.3d 753, 760 (D.C. Cir. 2020) (courts will avoid a "statutory outcome … if it defies rationality by rendering a statute nonsensical").

Doolin's position also defies Section 1752's clear purpose. In drafting Section 1752, Congress sought to protect "not merely the safety of one man, but also the ability of the executive branch to function in an orderly fashion and the capacity of the United States to respond to threats and crises affecting the entire free world." *United States v. Caputo*, 201 F. Supp. 3d 65, 70 (D.D.C. 2016) (quoting *White House Vigil for ERA Comm. v. Clark*, 746 F.2d 1518, 1528 (D.C. Cir. 1984)). To that end, the statute comprehensively deters and punishes individuals who seek unauthorized access to the White House grounds and the Vice President's residence—fixed locations where the President and Vice President live and work, 18 U.S.C. 1752(c)(1)(A); and also any other "building or grounds" where they (or other protectees) happen to be "temporarily visiting," 18 U.S.C. 1752(c)(1)(B). Reading Sections 1752(c)(1)(A) and 1752(c)(1)(B) together protects the President and Vice President in their official homes and wherever else they go. Interpreting the statute as Doolin suggests would create a gap in Section 1752's coverage by removing areas, such as the U.S. Capitol, from protection. It could expose the leaders of the Executive Branch even as they perform their official duties. That gap is both illogical and contrary to the statutory history of Section 1752, where, "at every turn," Congress has "*broadened* the scope of the statute and the potential for liability." *Griffin,* 2021 WL 2778557, at *5 (D.D.C. July 2, 2021).

10

All the relevant metrics – plain language, statutory structure, and congressional purpose – foreclose Doolin's crabbed reading of Section 1752(c)(1)(B). This Court should reject it. Doolin's cited cases, involving either an arrest or conviction under Section 1752, do not discuss the "temporarily visiting" language. Mot. at 29–30 (citing *United States v. Bursey*, 416 F.3d 301 (4th Cir. 2005); *United States v. Junot,* 1990 WL 66533 (9th Cir. May 18, 1990) (unpublished); *Blair v. City of Evansville, Ind.,* 361 F. Supp.2d 846 (S.D. Ind. 2005)).

## CONCLUSION

For the foregoing reasons, the government respectfully requests that Doolin's motion be denied.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By: /s/ *Matthew Moeder*
MATTHEW MOEDER
Assistant United States Attorney, Detailee
Missouri Bar No. 64036
400 East 9th Street
Room 5510
Kannsas City, Missouri 64106
Matthew.Moeder@usdoj.gov
(816) 426-4103

BENET J. KEARNEY
Assistant United States Attorney, Detailee
New York Bar No. 4774048
1 Saint Andrew's Plaza
New York, New York 10007
Benet.Kearney@usdoj.gov
(212) 637- 2260

11

## **CERTIFICATE OF SERVICE**

      I hereby certify that on July 15, 2022, I caused a copy of the foregoing motion to be served on attorney of record via email and the Court's electronic filing system.

                                              */s/ Matthew Moeder*
                                              Matthew Moeder
                                              Assistant United States Attorney