**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| v. | : | **Case No. 21 Cr. 447 (CJN)** |
| | : | |
| **JOSHUA CHRISTOPHER DOOLIN,** | : | |
| | : | |
| Defendant. | : | |

**MOTION IN LIMINE REGARDING**
**AUTHENTICATION OF CERTAIN VIDEO EVIDENCE**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, hereby submits the following motion *in limine* regarding the authentication of certain video evidence at trial.

**BACKGROUND**

The riot at, and attack on, the United States Capitol Building was an event of unparalleled size and scope. Much of the event was recorded on video: on surveillance footage captured by the U.S. Capitol Police ("USCP") closed circuit video ("CCV") cameras; by Metropolitan Police Department ("MPD") body-worn cameras ("BWC"); by cameras and cellphones carried by journalists and by rioters. The government's case at trial will rely in part on footage captured by MPD officers' BWC and USCP CCV footage to prove the defendant's specific conduct and the greater context in which it took place.  Should the defense not stipulate to the authenticity of this footage, the government will call an appropriate witness at trial.  But the government may also introduce footage from videos taken by other rioters or by journalists; for this set of video evidence, the government seeks a pretrial ruling on authenticity.

1

Under Federal Rule of Evidence 901(a), "[t]o satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Rule 901(b) provides a non-exhaustive list of examples of evidence that satisfies this requirement. As relevant here, those examples include:

> (3) *Comparison by an Expert Witness or the Trier of Fact*. A comparison with an authenticated specimen by an expert witness or the trier of fact.
> (4) *Distinctive Characteristics and the Like*. The appearance, contents, substance, internal patterns, or other distinctive characteristics of the item, taken together with all the circumstances.

Fed. R. Evid. 901(b)(3), (4).

As a general matter, establishing an item's authenticity is not "a particularly high hurdle." *United States v. Ortiz*, 966 F.2d 707, 716 (1st Cir. 1992); *see also United States v. Vidacak*, 553 F.3d 344, 349 (4th Cir. 2009) ("The burden to authenticate under Rule 901 is not high"); *Link v. Mercedes-Benz of N. Am., Inc.*, 788 F.2d 918, 927 (3d Cir. 1986) ("The burden of proof for authentication is slight."); *United States v. Hassanshahi*, 195 F. Supp. 3d 35, 48 (D.D.C. 2016) ("The threshold for the Court's determination of authenticity is not high, . . . and the proponent's burden of proof for authentication is slight[.]" (citation and quotation marks omitted)). Rule 901 "requires only a prima facie showing of genuineness and leaves it to the [finder of fact] to decide the true authenticity and probative value of the evidence." *United States v. Harvey*, 117 F.3d 1044, 1049 (7th Cir. 1997) (citing cases); *see also, e.g.*, *United States v. Belfast*, 611 F.3d 783, 819 (11th Cir. 2010) ("[A]uthentication itself is 'merely . . . the process of presenting sufficient evidence to make out a prima facie case that the proffered evidence is what it purports to be.'") (quoting *United States v. Caldwell*, 776 F.2d 989, 1002 (11th Cir. 1985)); *Vidacek*, 553 F.3d at 349 ("only a *prima facie* showing is required"). Stated differently, "[t]he standard the district court must apply in

evaluating a document's authenticity is whether there is enough support in the record to warrant a reasonable person in determining that the evidence is what it purports to be." *United States v. Blanchard*, 867 F.3d 1, 6 (1st Cir. 2017) (quoting *United States v. Paulino*, 13 F.3d 20, 23 (1st Cir. 1994)). Once that showing is made, "[t]he factual determination of whether evidence is that which the proponent claims is ultimately reserved for the [finder of fact]." *Vidacek*, 553 F.3d at 349; *see also, e.g.*, *Belfast*, 611 F.3d at 819 ("Once that *prima facie* case is established, the evidence is admitted and the ultimate question of authenticity is decided by the jury.").

To make out a prima facie showing of authenticity, "circumstantial evidence of authenticity can be sufficient." *United States v. Bruner*, 657 F.2d 1278, 1284 (D.C. Cir. 1981). *See, e.g.*, *United States v. Broomfield*, 591 F. App'x 847, 851 (11th Cir. 2014) (unpublished) ("Authentication may be established 'solely through the use of circumstantial evidence.'" (quoting *United States v. Smith*, 918 F.2d 1501, 1510 (11th Cir. 1990)). And, importantly, the party seeking to admit evidence need not "rule out all possibilities inconsistent with authenticity, or to prove beyond any doubt that the evidence is what it purports to be." *United States v. Holmquist*, 36 F.3d 154, 168 (1st Cir. 1994). Rather, "the government must only 'demonstrate that, as a matter of reasonable probability, possibilities of misidentification and adulteration have been eliminated.'" *United States v. Celis*, 608 F.3d 818, 842 (D.C. Cir. 2010) (quoting *United States v. Stewart*, 104 F.3d 1377, 1383 (D.C. Cir. 1997)); *see, e.g.*, *United States v. Bowens*, 938 F.3d 790, 794-95 (6th Cir. 2019) (explaining that "[a]nyone could have used the defendants' Facebook accounts, just as the pictures could have depicted the men smoking tobacco cigars, and 'getting high' could have been a reference to skydiving," but that there was sufficient circumstantial evidence "for the jury to infer that the accounts belonged to the defendants, and that the defendants were the authors of the posts about using marijuana"); *Broomfield*, 591 F. App'x at 852 (finding sufficient evidence of

authenticity even though "there was no testimony establishing that the recording equipment was reliable or that the video was not altered or staged").

In deciding preliminary questions about the admissibility of these videos, "[t]he court is not bound by evidence rules, except those on privilege." Fed. R. Evid. 104(a). In other words, the government may rely upon otherwise inadmissible evidence in establishing the authenticity of the video evidence described in this motion. *See, e.g.*, *United States v. White*, 116 F.3d 903, 914 (D.C. Cir. 1997). Of course, even with a pretrial ruling that evidence is authentic, and thus admissible, the government must introduce sufficient evidence at trial from which a reasonable fact-finder could reach the same conclusion regarding authenticity. *See, e.g.*, *United States v. Gammal*, 831 F. App'x 539, 542 n.6 (2d Cir. 2020) (unpublished) ("Insofar as the District Court relied on non-public information to make its preliminary determination, it did not err because it did not do so in lieu of the presentation of sufficient authenticating public evidence later at trial."); *United States v. Puttick*, 288 Fed. App'x 242, 246 (6th Cir. 2008) (unpublished) ("It is permissible for the judge to make a preliminary determination as to authentication, admit the evidence conditionally under Rule 104(b), and then allow the jurors to be the final arbiters of whether it was actually authenticated."); *United States v. Branch*, 970 F.2d 1368, 1371 (4th Cir. 1992) ("Thus, even though the district court may have ruled during an in camera proceeding that the proponent had presented sufficient evidence to support a finding that a tape recording was authentic, evidence that would support this same ruling must be presented again, to the jury, before the tape recording may be admitted.").

## ANALYSIS

At trial, the government anticipates offering video clips from BWC footage and USCP cameras, as well as from other sources. Some of these other sources include reporters who were

present in the Capitol on January 6, 2021, the defendant's fellow rioters, or other members of the

crowd. Many of the videos were obtained through open-source means and are publicly available.

For any such videos, the government will establish authenticity by asking the jury to compare it

with other, authenticated exhibits, in particular, to BWC footage or USCP camera footage. Fed. R.

Evid. 901(3). This footage will confirm that such videos are what they purport to be: recordings

of the same events, captured from a slightly different perspective, and in some cases depicting

events and sounds that were not captured by the BWC or USCP camera. In addition, the distinctive

features of the exterior of the Capitol building and of the other individuals depicted in the footage

will help authenticate the videos. *Id*. at 901(4).

For example, the government intends to offer into evidence a video taken by an individual

who was present in the crowd on the Lower West Terrace ("LWT") of the Capitol building while

the defendant was present near the entrance to a passageway leading from the LWT to the interior

of the Capitol building -- the "Tunnel" (the "FORMERWAGIE Video").[1] The government also

intends to introduce USCP video from the vantage point of inside the Tunnel, which depicts rioters

forcing their way into the Tunnel in an attempt to break through the line of police officers stationed

there and enter the Capitol building, including the defendant, who is using a riot shield to push

against the rioters in front of him further into the Tunnel. Still images of the USCP video are

below:

---

[1] This footage was posted to YouTube by a user with the handle "@FORMERWAGIE." The
full video is approximately 3 hours, 47 minutes, and 51 seconds long and depicts areas in
Washington, D.C. other than the LWT. The government intends to offer only the portions of the
video relevant to the offenses with which the defendant is charged at trial.



*Figure 1*



*Figure 2*



*Figure 3*



*Figure 4*



*Figure 5*



*Figure 6*



*Figure 7*

Figures 1-5 depict the crowd of rioters forcibly pushing their way into the Tunnel in an effort to breach the line of police officers there (just below the camera's view). In particular, Figures 2, 3, and 5 depict the defendant holding a USCP riot shield and using it to push forward into the Tunnel. (The defendant is circled in red.) Figures 6 and 7 depict the rioters, including the defendant, being driven backwards out of the Tunnel by the line of police officers inside.

The FORMERWAGIE Video, which was filmed by an individual in the crowd on the LWT, outside of the Tunnel, captures precisely the same moments as the USCP video, but taken from the vantage point just outside the building. This video depicts the many rioters, including the defendant, entering the Tunnel and pushing forward, while other rioters throw and swing objects. Still images from the Exterior Video are below:



*Figure 8*



*Figure 9*



*Figure 10*



*Figure 11*

Figures 8-11 depict rioters on the LWT, including the defendant (who is circled in red in Figure 8) pushing into the Tunnel before being driven back out of the Tunnel.  In addition to

11

being generally consistent with the USCP video in terms of the area and individuals depicted, the FORMERWAGIE Video depicts several distinctive events that are also depicted in the USCP video.  For example, Figure 9 depicts rioters wielding a crutch, a blue pole, and a wood-colored pole, as in Figure 1.  Figure 10 depicts a white banner or flag being thrown into the Tunnel, as in Figure 4.  Figure 10 depicts a rioter raising a blue pole at the entrance to the Tunnel, while another rioter holds a wood-colored pole horizontally, as in Figure 6.

The FORMERWAGIE Video also captures subsequent events on the LWT, and appears to have been filmed continuously at least for several minutes after the events described above. Several minutes after the defendant attempted to force his way into the Tunnel, the crowd on the LWT began chanting "I can't breathe."  Approximately one minute later, a rioter wearing a dark colored baseball cap, blue hooded sweatshirt, and a dark colored jacket emerges from the crown and attacks an MPD officer at the entrance to the Tunnel.  A still image from the FORMERWAGIE Video is below:



*Figure 12*

BWC footage from MPD officers who were present in the Tunnel also authenticates the

FORMERWAGE Video.  This BWC captures the crowd on the LWT chanting "I can't breathe,"

approximately one minute before another rioter – wearing a hooded sweatshirt, dark colored

jacket, and a dark colored baseball cap -- springs forward and grabs one of the officers in the

Tunnel, knocking that officer to the ground.  A still image from the BWC footage is below:



*Figure 13*

In addition, many of the individuals present on the LWT at this time – for example, a rioter wearing a stars and stripes suit – are distinctive in appearance and depicted in both the FORMERWAGIE Video and the BWC footage.

Should the government elect to offer other video clips taken by other persons present in the crowd, the government will file a supplement prior to trial detailing the clips to be used and the factors supporting authenticity of those clips.

## CONCLUSION

For the reasons stated herein, the government respectfully requests that this Court rule *in limine* that the government's video evidence from non-UCSP or -MPD sources satisfies the authenticity requirement of Fed. R. Evid. 901.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney

By:    */s/ Benet J. Kearney*
BENET J. KEARNEY
Assistant United States Attorney
New York Bar No. 4774048
1 Saint Andrew's Plaza
New York, New York 10007
Benet.Kearney@usdoj.gov
(212) 637-2260

*/s/ Matthew Moeder*
MATTHEW MOEDER
Assistant United States Attorney
Missouri Bar No. 64036
400 East 9th Street, Room 5510
Kansas City, Missouri 64106
Matthew.Moeder@usdoj.gov
(816) 426-4103