UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | |
| v. : | Case No. 21-CR-447-CJN |
| : | |
| JOSHUA CHRISTOPHER DOOLIN, : | |
| : | |
| Defendant. : | |

**GOVERNMENT'S OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS
COUNT EIGHTEEN OF THE SUPERSEDING INDICTMENT**

**INTRODUCTION**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this opposition to defendant Joshua Christopher Doolin's Motion to Dismiss Count Eighteen of the Superseding Indictment (ECF No. 129) ("Mot."). Several courts in this district – including this one, *United States v. Fischer*, 21-cr-234 (CJN), 2022 WL 782413 (D.D.C. Mar. 15, 2022) -- have recently written opinions rejecting the challenges defendant raises here. *See United States v. Mostofsky*, 21-cr-138 (JEB), 2021 WL 6049891 (D.D.C. Dec. 21, 2021); *United States v. Nordean,* 21-cr-175 (TJK), 2021 WL 6134595 (D.D.C. Dec. 28, 2021); *United States v. McHugh,* 21-cr-453 (JDB), 2022 WL 296304, (D.D.C. Feb. 1, 2022);; *United States v. Sargent*, 21-cr-258 (TFH), 2022 WL 1124817 (D.D.C. Apr. 14, 2022); *United States v. Bingert*, 21-cr-91 (RCL), 2022 WL 1659163 (D.D.C. May 25, 2022). The defendant presents no reason for this Court to deviate from its prior analysis. The Court should therefore deny the motion in its entirety.

**FACTUAL BACKGROUND**

Doolin's role in the January 6, 2021, attack on the U.S. Capitol is described in the statement of facts supporting the criminal complaint (ECF No. 1), the government's opposition to Doolin's

1

Motion to Modify Conditions of Release (ECF No. 36), and in the government's motions in limine to preclude certain defense arguments and evidence (ECF No. 125) and to authenticate certain video (ECF No. 126-1). In summary, after exchanging text messages with his father about whether to bring his AR-15 with him, the defendant decided to travel to Washington, D.C. with a group of close friends and relatives (several of whom are his co-defendants) in order to attend then-President Trump's "Stop the Steal" really.  On the morning of January 6, 2021, while at the rally, Doolin sent a text message to an associate stating "I wouldn't mind dying with my family storming the capital [sic] on my birthday!"  After watching Trump's speech, Doolin and others then proceeded to the Capitol.  There, his co-defendants violently engaged with the police officers on the west side of the Capitol building and Doolin unlawfully acquired a United States Capitol Police ("USCP") riot shield, a law enforcement crowd-control spray gun, and flex cuffs, which he carried with him around the Capitol grounds.  Later in the afternoon, Doolin relocated to the Lower West Terrace of the Capitol building, where he – using the riot shield – along with other rioters for several minutes forcefully and collectively pushed against the line of police officers located inside a passageway leading to the interior of the building, in an attempt to break through the line or push the officers back into the building.

## PROCEDURAL HISTORY

On July 1, 2021, the grand jury returned an indictment charging Doolin with Entering and Remaining in a Restricted Building or Grounds, in violation of 18 U.S.C. § 1752(a)(1) and Disorderly and Disruptive Conduct in a Restricted Building or Grounds, in violation of 18 U.S.C. § 1752(a)(2). ECF No. 8. On July 13, 2022, the grand jury returned a superseding indictment charging Doolin with Theft in a Federal Enclave, in violation of 18 U.S.C. § 661 (Count Sixteen); Theft of Government Property, in violation of 18 U.S.C. § 641 (Count Seventeen); Civil Disorder,

in violation of 18 U.S.C. § 231(a)(3) (Count Eighteen); Entering and Remaining in a Restricted Building or Grounds, in violation of 18 U.S.C. § 1752(a)(1) (Count Twenty Two); and Disorderly and Disruptive Conduct in a Restricted Building or Grounds, in violation of 18 U.S.C. § 1752(a)(2) (Count Twenty Four). (ECF No. 116). On June 6, 2022, Doolin filed a motion to dismiss the 18 U.S.C. §1752 counts (now Counts Twenty Two and Twenty Four of the Superseding Indictment). Doolin filed the instant motion on July 24, 2022, seeking dismissal of Count Eighteen of the Superseding Indictment.

### ARGUMENT

Doolin's motion lacks merit and must fail.

**I. Legal Standard**

Federal Rule of Criminal Procedure 7(c)(1) states, in relevant part, that "[t]he indictment … must be a plain, concise, and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c)(1). An "indictment's main purpose is to inform the defendant of the nature of the accusation against him." *United States v. Ballestas*, 795 F. 3d 138, 148–49 (D.C. Cir. 2015) (citation omitted). Because dismissal of an indictment "directly encroaches upon the fundamental role of the grand jury," however, "dismissal is granted only in unusual circumstances." *Id.* at 148 (internal quotation marks omitted). "An indictment must be viewed as a whole and the allegations must be accepted as true in determining if an offense has been properly alleged." *United States v. Bowdoin*, 770 F. Supp. 2d 142, 146 (D.D.C. 2011). The operative question is whether the allegations, if proven, would be sufficient to permit a jury to find that the crimes charged were committed. *Id.*

**II. Doolin's Motion Fails**

Improperly isolating various statutory terms, Doolin argues that Section 231(a)(3), the civil disorder statute, is either unconstitutionally vague or overbroad. This Court, *Fischer*, 2022 WL

3

782413, at *1–4 (D.D.C. Mar. 15, 2022), and several other judges in this District, have recently rejected nearly identical challenges to Section 231. *See Mostofsky*, 2021 WL 6049891, at *8–*9 (rejecting overbreadth challenges); *Nordean,* 2021 WL 6134595, at *16–*17 (rejecting vagueness and overbreadth challenges); *McHugh,* 2022 WL 296304, at *13-*17 (D.D.C. February 1, 2022) (rejecting vagueness and overbreadth challenges);; *Bingert*, 2022 WL 1659163, at *12-*13 (D.D.C. May 25, 2022) (rejecting vagueness challenges).[1] This Court's analysis in *Fischer* applies squarely to Doolin's motion.   The Court should therefore deny the instant motion.

Section 231(a)(3) (the civil disorder statute) criminalizes any "act" (or attempted act) to "obstruct, impede, or interfere" with a law enforcement officer "lawfully engaged in the lawful performance of his official duties incident to and during the commission of a civil disorder." 18 U.S.C. § 231(a)(3). For the statute to apply, the civil disorder must "in any way or degree obstruct[], delay[], or adversely affect[] commerce or the movement of any article or commodity in commerce or the conduct or performance of any federally protected function." *Id.* The statute defines civil disorder as "any public disturbance involving acts of violence by assemblages of three or more persons, which causes an immediate danger of or results in damage or injury to the property or person of any other individual." 18 U.S.C. § 232(1).

Doolin cannot meet the high bar required to invalidate Section 231(a)(3) as vague or overbroad. The statute sufficiently provides notice of the conduct it prohibits. Nor are there a substantial number of unconstitutional applications compared with the statute's plainly legitimate

---

[1] A number of courts outside this circuit have also recently rejected similar challenges to Section 231. *See United States v. Phomma*, No. 20-465, 2021 WL 4199961, at *5 (D. Or. Sept. 15, 2021); *United States v. Rupert*, No. 20-cr-104 (NEB/TNL), 2021 WL 1341632, at *16–*20 (D. Minn. Jan. 6, 2021) (Report & Recommendation), *adopted*, 2021 WL 942101 (D. Minn. Mar. 12, 2021); *United States v. Pugh*, No. 1:20-cr-73-TFM, slip op. (S.D. Ala. May 13, 2021); *United States v. Wood*, No. 20-cr-56 MN, 2021 WL 3048448 (D. Del. July 20, 2021); and *United States v. Howard*, No. 21-cr-28-pp, 2021 WL 3856290 (E.D. Wis. Aug. 30, 2021).

conduct restrictions. Vagueness and overbreadth are not judged according to whether a litigant might identify a hypothetical edge case where application of a law might be questionable, yet Doolin erroneously urges the Court to do so.

### A.     Vagueness and overbreadth doctrines

An outgrowth of the Due Process Clause of the Fifth and Fourteenth Amendments, the "void for vagueness" doctrine prevents the enforcement of a criminal statute that is "so vague that it fails to give ordinary people fair notice of the conduct it punishes" or is "so standardless that it invites arbitrary enforcement." *Johnson v. United States*, 576 U.S. 591, 595 (2015). To ensure fair notice, "generally, a legislature need do nothing more than enact and publish the law, and afford the citizenry a reasonable opportunity to familiarize itself with its terms and to comply."  *United States v. Bronstein*, 849 F.3d 1101, 1107 (D.C. Cir. 2017) (citation omitted).

A statute is not unconstitutionally vague simply because its applicability is unclear at the margins, *United States v. Williams*, 553 U.S. 285, 306 (2008), or because reasonable jurists might disagree on where to draw the line between lawful and unlawful conduct in particular circumstances, *Skilling v. United States*, 561 U.S. 358, 403 (2010). A provision is impermissibly vague only if it requires proof of an "incriminating fact" that is so indeterminate as to invite arbitrary and "wholly subjective" application. *Williams*, 553 U.S. at 306; *see Smith v. Goguen*, 415 U.S. 566, 578 (1974). A statutory provision is "not rendered unconstitutionally vague because it 'do[es] not mean the same thing to all people, all the time, everywhere.'" *Bronstein*, 849 F.3d at 1107 (quoting *Roth v. United States*, 354 U.S. 476, 491 (1957)). A statute is instead vague where it fails to specify any "standard of conduct . . . at all." *Coates v. Cincinnati*, 402 U.S. 611, 614 (1971). A law is not vague because it "call[s] for the application of a qualitative standard . . . to real-world conduct; 'the law is full of instances where a man's fate depends on his estimating rightly . . . some matter of degree.'" *Johnson*, 576 U.S. at 603–04 (quoting *Nash v. United States*,

5

229 U.S. 373, 377 (1913)).

There is a strong presumption that a statute is not vague. *See United States v. Nat'l Dairy Products Corp.*, 372 U.S. 29, 32 (1963). Other judges in this District have recognized that high bar. *See United States v. Gonzalez*, No. 20-cr-40 (BAH), 2020 WL 6342948, at *7 (D.D.C. Oct. 29, 2020); *see also United States v. Harmon*, No. 19-cr-395 (BAH), 2021 WL 1518344, at *4 (D.D.C. Apr. 16, 2021) (finding that the defendant did not meet the "stringent standard" to prevail on a Rule 12 vagueness motion).

Facial overbreadth challenges—in which a defendant asserts that a statute, constitutionally applied to him, is nevertheless invalid because it would be unconstitutional in a "substantial number" of *other* cases, *Washington State Grange v. Washington State Republican Party*, 552 U.S. 442, 449 n.6 (2008)—are even more exceptional. Overbreadth can invalidate a criminal law only if "'a substantial number' of its applications are unconstitutional, 'judged in relation to the statute's plainly legitimate sweep,'" and no limiting construction is available. *Id.* (quoting *New York v. Ferber*, 458 U.S. 747, 769–771 (1982)); *see also City of Houston v. Hill*, 482 U.S. 451, 458 (1987). The Supreme Court has "vigorously enforced the requirement that a statute's overbreadth be *substantial*, not only in an absolute sense, but also relative to the statute's plainly legitimate sweep." *Williams*, 553 U.S. at 292.

"[T]he mere fact that one can conceive of some impermissible applications of a statute is not sufficient to render it susceptible to an overbreadth challenge." *Members of the City Council v. Taxpayers for Vincent*, 466 U.S. 789, 800 (1984). Rather, a defendant must show a "realistic danger that the statute itself will significantly compromise recognized First Amendment protections of parties not before the Court . . . ." *Id.* at 801. "Rarely, if ever, will an overbreadth challenge succeed against a law or regulation that is not specifically addressed to speech or to

6

conduct necessarily associated with speech (such as picketing or demonstrating)." *Virginia v. Hicks*, 539 U.S. 113, 124 (2003).

Invalidating a statute for overbreadth is "strong medicine" to be applied "sparingly and only as a last resort." *Broadrick v. Oklahoma*, 413 U.S. 601, 613 (1973). If the statute is "readily susceptible" to a narrowing construction that would make it constitutional, it must be upheld. *Virginia v. American Booksellers Ass'n*, 484 U.S. 383, 397 (1988); *accord Broadrick*, 413 U.S. at 613; *United States v. Rundo*, 990 F.3d 709, 714 (9th Cir. 2021) ("we construe [the riot statute, 18 U.S.C. §§ 2101–2102] as constitutional if we can reasonably do so").

B.   **Section 231 is not void for vagueness**

Federal legislation enjoys a presumption of constitutionality that may only be overturned "upon a plain showing that Congress has exceeded its constitutional bounds." *United States v. Morrison,* 529 U.S. 598, 607 (2000). Doolin cannot overcome this presumption.

Section 231(a)(3) is not constitutionally vague. *See Fischer*, 2022 WL 782413, at 2-3; *McHugh,* 2022 WL 296304, at *14; Nordean,* 2021 WL 6134595, at *17. It provides sufficient notice of the conduct it prohibits. The terms Doolin attacks, such as "any act to obstruct, impede, or interfere" and "civil disorder," Mot. at 10-11, do not carry the potential for misunderstanding or make the statute "so standardless that it invites arbitrary enforcement." *Johnson v. United States*, 576 U.S. 591, 595 (2015); *see also Fischer*, 2022 WL 782413, at *2 ("'these terms are not dependent on the subjective reaction of others,' but are rather subject to 'specific fact-based ways to determine whether a defendant's conduct interferes with or impedes others, or if a law enforcement officer is performing his official duties incident to and during a civil disorder.'") (quoting *Nordean*, 2021 WL 6134596*,* at *16). Indeed, Doolin's motion "misunderstand[s]" vagueness: "There is a crucial difference between reasonable people differing over the meaning of a word and reasonable people differing over its application to a given situation—the latter is

7

perfectly normal, while the former is indicative of constitutional difficulty." *McHugh,* 2022 WL 296304, at *16; *see also Fischer,* 2022 WL 782413, at * 3.

Section 231(a)(3) does not prohibit mere presence at a civil disorder, but rather, "an act committed during the course of such disorder." *United States v. Mechanic*, 454 F.2d 849, 853 (8th Cir. 1971). And not just any act: it prohibits only concrete "act[s]" that are performed with the specific purpose to "obstruct, impede, or interfere" with firefighters or law enforcement carrying out their official duties during a civil disorder. It punishes intentional conduct, not "mere inadvertent conduct." *United States v. Featherston,* 461 F.2d 1119, 1122 (5th Cir. 1972).

Contrary to defendant's arguments, the statute's terms are thus quite different from statutory terms that courts have found to be vague, such as statutes that turn on subjective judgments of whether a defendant's conduct was "annoying" or "indecent," or those that depend on the victim's state of mind, as in the cases defendant cites. *See Nordean,* 2021 WL 6134595, at *16*; *see also Williams*, 553 U.S. at 306; Mot. at 12-13 (citing *Coates*, 402 U.S. at 614, *United States v. Kozminski,* 487 U.S. 931, 949–50 (1988)).[2] "An ordinary person would have an intuitive understanding of what is proscribed by a ban on obstructing, impeding, or interfering with law enforcement." *McHugh,* 2022 WL 296304, at *16. In addition, Section 231(a)(3) is not unique; many state and federal statutes likewise criminalize "obstructing" the government's efforts to

---

[2] Doolin also cites *McCoy v. City of Columbia*, 929 F. Supp. 2d 541 (D.S.C. 2013) (Mot. at 15); he states that *McCoy* invalidated the law at issue as overbroad, but *McCoy* in fact found it unconstitutionally vague. *Id.* at 554. In any event, *McCoy* is distinguishable. *See McHugh,* 2022 WL 296304, at *16. *McCoy* invalidated an ordinance making it unlawful "for any person to interfere with or molest a police officer in the lawful discharge of his duties." 929 F. Supp. 2d at 546. As Judge Bates observed, unlike Section 231(a)(3), "the ordinance at issue in *McCoy* did not include a scienter requirement, and its use of only two operative verbs ('interfere and molest') prevented interpreters from . . . giving those words 'more precise content by the neighboring words with which it is associated." *McHugh,* 2022 WL 296304, at 16 n.24 (citing *McCoy*, 929 F. Supp. 2d at 553) ((quoting *United States v. Stevens*, 559 U.S. 460, 474 (2010)).

enforce the law and maintain public order, and they have been upheld. *See, e.g.,* 26 U.S.C. § 7212(a) (prohibiting obstructing or impeding the administration of the tax laws); 18 U.S.C. § 2237 (making it unlawful to "oppose, prevent, impede, intimidate or interfere with" a maritime investigation); *United States v. Brice,* 926 F.2d 925, 930–31 (9th Cir. 1991) (rejecting overbreadth and vagueness challenges to 41 C.F.R. § 101-20.305, regulation prohibiting impeding or disrupting government duties); *see also* Cal. Penal Code § 148 (prohibiting resisting, delaying, or obstructing any peace officer or emergency medical technician); *State v. Illig-Renn,* 341 Or. 228 (2006) (rejecting constitutional attacks leveled against O.R.S. 162.247(1)(b), which prohibits interference with a police officer); *State v. Steen,* 164 Wash. App. 789, 808 (2011) (rejecting as-applied constitutional challenge to RCW 9A.76.020(1), which criminalizes obstructing police officers).

Doolin also claims that the phrase "incident to and during the commission of a civil disorder" is vague because he cannot tell whether the statute requires an individual to have participated in the civil disorder or if it is sufficient that he be in the general vicinity of the event. Mot. at 11. This argument, too, is meritless. "The crime set forth by the statute is not mere presence at a civil disorder . . . but an act committed during the course of such a disorder, so 'civil disorder' simply describes the environment in which the act must be committed in order to be subject to prosecution under § 231(a) (3)." *Mechanic*, 454 F.2d at 852; *see also Howard*, 2021 WL 3856290, at *14 ("[T]he statute does not require the government to prove that the defendant created the civil disorder, or that he was participating in the civil disorder."). Contrary to Doolin's argument that any "tumultuous public gathering" could qualify (Mot. at 11), "it is not just any public disturbance which is the subject of the section, but only public disturbances which (1) involve acts of violence (2) by assemblages of three or more persons, and which (3) cause immediate danger of or result in injury to (4) the property or person of any other individual." *Mechanic*, 454 F.2d at 853; *see* 18

U.S.C. § 232(1); *cf. United States v. Huff*, 630 F. App'x 471, 489 (6th Cir. 2015) (unpublished) (rejecting vagueness challenge to "civil disorder" term in 18 U.S.C. § 231(a)(2) and citing definition in 18 U.S.C. § 231(1)). *See McHugh,* 2022 WL 296304, at *15, *15 n.22.

And even if a broad range of public gatherings could be deemed "civil disorders," Section 231(a)(3) criminalizes only particular conduct, not mere participation in such a disorder. The "civil disorder" language operates to narrow the situation where the statute may apply—unlike other statutes, which criminalize acts of obstruction, wherever they may take place. The requirement that the *actus reus* take place in the context of a civil disorder does not make Section 231 vague; to the contrary, it limits its application. *See Fischer*, 2022 WL 782413, at *3 (the statute "limits the application of 'civil disorder' to a small (obviously unlawful) subset of 'public gatherings.'") (quoting *McHugh*, 2022 WL 296304, at *16).

Doolin's argument that the statute is vague because it lacks an express scienter requirement or *mens rea* (Mot. at 12-14) is also incorrect. Doolin ignores the fact that Section 231(a)(3) requires *intent*, which narrows its scope. *See Williams*, 553 U.S. at 294 (focusing on scienter requirement in finding that a statute was not overbroad); *McHugh,* 2022 WL 296304, at *14-*15 (finding that Section 231(a)(3) includes an intent requirement). The requirement that a defendant who violates Section 231(a)(3) act with the intent to obstruct, interfere or impede is critical to the First Amendment analysis. *See United States v. Gilbert*, 813 F.2d 1523, 1529 (9th Cir. 1987) (intent requirement prevents application of statute to protected speech). The statute requires proof that the "act" was done "to obstruct, impede, or interfere" with a firefighter or police officer, *i.e.,* the defendant's purpose or intent in performing the "act" must be to obstruct, impede, or interfere. *See Mechanic*, 854 F.2d at 854 (construing Section 231(a)(3) to include an intent requirement). And even if the statute lacked an express scienter requirement, courts "generally interpret [] criminal

10

statutes to include broadly applicable scienter requirements, even where the statute by its terms does not contain them." *Elonis v. United States*, 135 S. Ct. 2001, 2009 (2015) (citation omitted); *see also United States v. Cassel*, 408 F.3d 622, 634 (9th Cir. 2005) ("[E]xcept in unusual circumstances, we construe a criminal statute to include a *mens rea* element even when none appears on the face of the statute.").

Doolin's vagueness claim also fails because his conduct clearly falls within the ambit of Section 231. The Court must consider vagueness "as applied to the particular facts at issue, for a [defendant] who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applies to the conduct of others." *Nordean,* 2021 WL6134595, at *17 (citing *Holder v. Humanitarian Law Project*, 561 U.S. 1, 18–19 (2010) (cleaned up)); *see generally Wood*, 2021 WL 3048448, at *9 ("Defendant does not have standing to bring a facial vagueness challenge" to § 231(a)(3) because he failed to "demonstrate that [the statute]is vague as applied to his conduct"). The January 6, 2021 attack on the United States Capitol was clearly a "civil disorder," not just some "tumultuous public gathering" to which the police were called. And there is no question that Doolin participated in the disorder. Tracking the statutory language, the superseding indictment alleges that he "commit[ted] an act to obstruct, impede, and interfere with a law enforcement officer." ECF No. 116. Doolin entered the restricted area around the Capitol and made his way to the Lower West Terrace of the building, where he joined in the collective effort to break through or push back the line of police officers stationed there, in an effort to enter the building. Doolin himself used a riot shield to press forward; he was not some bystander yelling at police to desist. No one could credibly claim to believe that he could lawfully enter the Capitol during the riot, and then physically block, push, and press against law enforcement who were attempting to protect and clear the mob from the Capitol. The statute is "sufficiently clear

that a normally intelligent person could ascertain its meaning and would be given fair notice of whether or not his conduct is forbidden." *Mechanic*, 454 F.2d at 854.

### C. Section 231(a)(3) is not unconstitutionally overbroad

Doolin's remaining claims are most appropriately cast as an overbreadth argument—he contends that Section 231 criminalizes too wide an array of activity, including protected speech. "[T]his exact argument has been heard and rejected by at least five different federal judges all within the last year." *McHugh,* 2022 WL 296304, at *17 (citing *Mostofsky*, 2021 WL 6049891, at *8–9; *Nordean*, 2021 WL 6134595, at *17; *Howard*, 2021 WL 3856290, at *11–12; *Phomma*, 2021 WL 4199961, at *4–5; *Wood*, 2021 WL 3048448, at *7–8, and adding, "This Court joins them."). *See also Fischer*, 2022 WL 782413, at *4 ("It should come as no surprise . . . that numerous federal judges all within the last year have rejected overbreadth challenges lodges against § 231(a)(3). This Court joins the ranks.") (internal citations and quotation marks omitted).

Section 231(a)(3) is not overbroad because "the statute's potentially unconstitutional applications are few compared to its legitimate ones." *Mostofsky,* 2021 WL 6049891, at *8. The statute's scope is primarily, if not exclusively, conduct or unprotected speech, such as threats. The plain text supports this reading. *See Nordean*, 2021 WL 6134595, at *17. An overbreadth challenge faces a steep uphill climb when the statute focuses mainly on conduct, as Section 231(a)(3) does. *See Hicks*, 539 U.S. at 119, 124 (noting the "substantial social costs created by the overbreadth doctrine when it blocks application of a law to . . . constitutionally unprotected conduct" and observing that laws "not specifically addressed to speech or to conduct necessarily associated with speech" are far less likely to be overbroad).

In *Mechanic*, the Eighth Circuit rejected a similar overbreadth challenge to § 231(a)(3). "The section applies only to a person who acts to impede, obstruct, or interfere with an official described in the statute." 454 F.2d at 852. The Eighth Circuit held that the "conduct involved here

12

[the massing of a mob that threw stones at an R.O.T.C. building on a college campus to protest the Viet Nam war, followed by rock and bottle-throwing at firemen who arrived to quell the disturbance] is not entitled to constitutional protection." *Id.* As the Court explained, "[t]he First Amendment has not been extended to protect rioting, inciting to riot, or other forms of physical violence." *Id.* (citation omitted).

Doolin argues that Section 231(a)(3) could prohibit conduct "undertaken merely to convey a message or symbolic content" (and protected by the First Amendment) because it applies to "any act to obstruct, impede, or interfere." Mot. at 10-11. Even if there could be "limited instances in which speaking constitutes the 'act' of interfering with a law-enforcement officer," *Mostofsky,* 2021 WL 6049891, at *8, those instances are just that: limited. *McHugh,* 2022 WL 296304, at *17. As *Mostofsky* found, Section 231's "plain text, however, indicates that it is 'targeted primarily if not exclusively at conduct rather than speech.'" *Id* (citing *Phomma*, 2021 WL 4199961, at *5); *see also Nordean,* 2021 WL 6134595, at *17 ("Section 231(a)(3) does not even mention speech, and it simply does not prohibit peaceful expression or association."); *Mechanic*, 454 F.2d at 852 (Section 231 "does not purport to reach speech of any kind. It reaches only acts to impede, obstruct, or interfere with police officers and firemen"), *see also Wood*, 2021 WL 3048448, at *7 ("This Court agrees with *Mechanic* that § 231(a)(3) applies to conduct, not speech."). As such, it is unlikely to present a "realistic danger" that it will "significantly compromise recognized First Amendment protections." *Mostofsky,* 2021 WL 6049891, at *17 (quoting *Vincent,* 466 at 800).

Doolin relatedly contends that Section 231 "casts far too wide a net" because it is not limited to "violent acts or acts that result in bodily injury or that otherwise put persons or property in imminent danger," and could therefore reach "acts with protected expressive content or those

13

that occur in a traditional public forum." *See* Mot. at 13.³ Like Mostofsky and Fischer, Doolin offers examples (in fact, identical examples) of potential unlawful applications of Section 231(a)(3), such as a bystander "who flips off officers to distract or to encourage resistance, or one who records police activity with a cell phone." Mot. at 15; *cf. Mostofsky,* 2021 WL 6049891 at *8; *United States v. Fischer,* 21-cr-234 (CJN), ECF No. 54 at 10.

Doolin's hypotheticals do not undermine the conclusion that "[m]any more potential applications would fall within the statute's plainly legitimate sweep." *Mostofsky,* 2021 WL 6049891 at *8 (citation omitted). As noted above, the statute prohibits both violent acts (which are not protected by the First Amendment), and non-violent conduct that is not expressive, such as "creating a barricade to prevent officers' movement." *See id.* Again, "the mere fact that one can conceive of some impermissible applications of a statute is not sufficient to render it susceptible to an overbreadth challenge." *Id.* (quoting *Vincent*, 466 U.S. at 800); *see also Howard*, 2021 WL 3856290, at *11 (rejecting overbreadth claim while noting that "because the statute does not require a violent act or an assaultive act, the government perhaps could charge someone who yelled at an officer during a civil disorder and could argue that the yelling was an 'act' that 'attempted to obstruct' an officer performing her lawful duties"). Courts have denied similar challenges to Section 231(a)(3) while recognizing that the statute is not limited to "violent" acts for the simple reason that the statute is not overbroad, as explained above, and so no limiting construction is required. *See, e.g., Mostofsky,* 2021 WL 6049891 at *9 (finding that "the Court need not adopt a limiting construction such that § 231(a)(3) reaches only violent conduct" to uphold the statute and collecting cases); *see also McHugh,* 2022 WL 296304, at *17 n.26, *Wood*, 2021 WL 3048448, at

---

³ Doolin's reference to "acts…that occur in a traditional public forum" is misguided. While there is a greater right to speak in a public forum, there is no right to engage in non-protected (indeed, criminal) conduct there.

14

\*7 (rejecting overbreadth challenge to § 231(a)(3) while recognizing that it is possible for nonviolent acts to also fall within the statute's prohibition.").[4]

Moreover, Doolin's hypotheticals, like Fischer's and Mostofsky's, may not even be criminal under the statute because they "would not necessarily rise to the level of 'obstruct[ing], imped[ing], or interfer[ing]' with a law-enforcement officer," as the statute requires. *Mostofsky,* 2021 WL 6049891, at \*8. Indeed, as noted above, Section 231 contains numerous guardrails ensuring that not all "acts" qualify: they must obstruct, interfere with, or impede; and they must occur during a civil disorder, which is defined, in part, as a public disturbance "involving acts of violence." *Mostofsky,* 2021WL 6049891, at \*8; *Wood,* 2021 WL 3048448, at \*7. Even if "some expressive conduct may fall within its remit," however, Section 231(a)(3) still would not "make unlawful a substantial amount of constitutionally protected conduct." *Mostofsky,* 2021 WL 6049891, at \*8 (citation omitted). Doolin has failed to show a "realistic danger that the statute itself will significantly compromise recognized First Amendment protections of parties not before the Court." *Vincent*, 466 U.S. at 801.   His overbreadth and vagueness challenges fail.

---

[4]    While *Mechanic* states that Section 231(a)(3) "applies only to violent physical acts," courts do not take this to mean that it imposed such a limitation on the statute; rather, "it appears that the Eighth Circuit was considering the specific 'acts' committed by the defendants in that case— throwing cherry bombs at police officers and firemen—when it referenced "violent acts." *Howard,* 2021 WL 3856290, at \*11; *Nordean,* 2021 WL 6134595 at \*17 n.14.

## CONCLUSION

For the foregoing reasons, the government respectfully requests that the Court deny defendant's motion to dismiss.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By: */s/ Benet J. Kearney*
Benet J. Kearney
New York Bar No. 4774048
Assistant United States Attorney
1 Saint Andrew's Plaza
New York, New York 10007
Benet.Kearney@usdoj.gov
(212) 637 2260

*/s/ Matthew Moeder*
Matthew Moeder
Assistant United States Attorney
Missouri Bar No. 64036
400 East 9th Street
Room 5510
Kansas City, Missouri 64106
Matthew.Moeder@usdoj.gov
(816) 426-4103