UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | |
| v. : | Case No. 21-CR-447-CJN |
| : | |
| JOSHUA CHRISTOPHER DOOLIN, : | |
| : | |
| Defendant. : | |

GOVERNMENT'S RESPONSE TO
DEFENDANT'S MOTION TO CONTINUE TRIAL DATE

The United States of America respectfully submits this response to defendant Joshua Christopher Doolin's motion to continue the trial date in this matter (ECF No. 137) ("Mot.").

Doolin, who in February 2022 first demanded a trial separate and earlier than his properly joined co-defendants, has now moved – a month prior to the commencement of his September 12, 2022 trial – to continue that trial until 2023. Doolin argues that ongoing publicity from the House Select Committee hearings, the November mid-term Congressional elections, and the anticipated report of the House Select Committee will render it difficult, if not impossible to select an unbiased jury, and that the House Select Committee's proceedings and report may produce information material to the defense in his case. Although Doolin's concerns are purely speculative, the Government does not oppose a continuance of the trial so that Doolin can join his co-defendants' March 6, 2023 trial date. In the alternative, however, the Court should deny Doolin's motion.

FACTUAL BACKGROUND

Doolin's role in the January 6, 2021, attack on the U.S. Capitol is described in the statement of facts supporting the criminal complaint (ECF No. 1), the government's opposition to Doolin's Motion to Modify Conditions of Release (ECF No. 36), and in the government's motions in limine to preclude certain defense arguments and evidence (ECF No. 125) and to authenticate certain

1

video (ECF No. 126-1).  In summary, after exchanging text messages with his father about whether to bring his AR-15 with him, the defendant decided to travel to Washington, D.C. with a group of close friends and relatives – including co-defendants Jonathan Pollock, Joseph Hutchinson, Michael Perkins, and Olivia Pollock  -- in order to attend then-President Trump's "Stop the Steal" really.   On the morning of January 6, 2021, while at the rally, Doolin sent a text message to an associate stating "I wouldn't mind dying with my family storming the capital [sic] on my birthday!"  After watching Trump's speech, Doolin and others, including his co-defendants, then proceeded to the Capitol.  There, Doolin's co-defendants violently engaged with the police officers on the west side of the Capitol building and Doolin unlawfully acquired a United States Capitol Police ("USCP") riot shield, a law enforcement crowd-control spray gun, and flex cuffs, which he carried with him around the Capitol grounds.  Later in the afternoon, Doolin relocated to the Lower West Terrace of the Capitol building, where he – using the riot shield – along with other rioters for several minutes forcefully and collectively pushed against the line of police officers located inside a passageway leading to the interior of the building, in an attempt to break through the line or push the officers back into the building.

## PROCEDURAL HISTORY

On July 1, 2021, the grand jury returned an indictment charging Doolin and his four co-defendants with various offenses arising out of the breach of the U.S. Capitol on January 6, 2021. As relevant to Doolin, the indictment charged him with Entering and Remaining in a Restricted Building or Grounds, in violation of 18 U.S.C. § 1752(a)(1) and Disorderly and Disruptive Conduct in a Restricted Building or Grounds, in violation of 18 U.S.C. § 1752(a)(2). (ECF No. 8).

On February 10, 2022, Doolin filed a motion arguing that he had been improperly joined in the indictment under Federal Rule of Criminal Procedure 8(b), seeking to sever his case for trial

pursuant to Federal Rule of Criminal Procedure 14(b), and arguing that his speedy trial rights under 18 U.S.C. § 3161 would be violated were he to be required to wait until his co-defendants were ready to go to trial. (ECF No. 81, 82).   The Government opposed Doolin's motion. (ECF No. 85).

On April 5, 2022, this Court found that Doolin had been properly joined in the indictment and that he did not suffer prejudice by the possibility of a multi-defendant trial   *See* Transcript of April 5, 2022 Status Conference ("Apr. 5 Tr.") at 9 ( "[D]o you agree that joinder [here] was appropriate under Rule 8, but that really the question is whether severance is appropriate either because of prejudice from a multi-defendant trial or because of your client's interest in going much [faster] than the other defendants are interested in going?");[1] *id*. at 10 ("I do think it is pretty clear this case was properly filed jointly"); *id.* at 11 ("I don't think Mr. Doolin has made a strong argument that he's entitled to severance because of the joint nature of his case. It seems to me that were it not for the timing questions here, he would not be entitled to severance.").   In light of the fact that discovery was still being produced, the Court continued the question of whether and when to set a separate, earlier trial date for Doolin until the next conference.

On May 5, 2022, the parties reconvened and, in light of the divergence of preferences between Doolin and his three co-defendants[2] about the timing of a trial, the Court granted Doolin's motion to sever and set his trial for September 12, 2022.   *See* Transcript of May 5, 2022 Status Conference ("May 5 Tr.") at 18-19; Minute Entry, May 5, 2022 ("Motion to Sever Defendant as to JOSHUA CHRISTOPHER DOOLIN (3); Granted for reasons set forth on the record.").   The Court scheduled the trial for Hutchinson, Perkins, and Olivia Pollock for January 30, 2023.   At a

---

[1] Defense counsel agreed that Doolin has been properly joined pursuant to Rule 8.   April 5 Tr. at 9.

[2] Jonathan Pollock has not yet been arrested in connection with this case and was not a party to the scheduling discussions.

3

subsequent conference, the three-defendant trial was adjourned until March 6, 2023, due to counsel's scheduling conflicts.

On July 13, 2022, the grand jury returned a superseding indictment bringing additional charges against Doolin and his co-defendants. (ECF No. 116). As relevant to Doolin, the superseding indictment charged him with Theft in a Federal Enclave, in violation of 18 U.S.C. § 661; Theft of Government Property, in violation of 18 U.S.C. § 641; Civil Disorder, in violation of 18 U.S.C. § 231(a)(3); Entering and Remaining in a Restricted Building or Grounds, in violation of 18 U.S.C. § 1752(a)(1); and Disorderly and Disruptive Conduct in a Restricted Building or Grounds, in violation of 18 U.S.C. § 1752(a)(2). (ECF No. 116).

On August 12, 2022, Doolin filed the instant motion, seeking to continue his trial until sometime in 2023, but declining to join the already scheduled March 6, 2023 trial. Mot. at ¶ 4.

## ARGUMENT

**I.     Any Prejudice Suffered by Doolin as a Result of His Joinder in the Superseding Indictment Has Been Mooted by His Request to Continue His Trial Until 2023.**

In considering Doolin's motion to sever, the Court focused on Doolin's repeated and strenuous assertions that he wanted his trial to commence as soon as possible, in contrast to Doolin's co-defendants, who wished to have additional time to review discovery and prepare their defense. On multiple occasions, Doolin expressed his objections to any additional periods of delay in advance of trial. *See* Transcript of February 2, 2022 Status Conference ("Feb. 2 Tr.") at 17 ("Mr. Doolin is not waiving the Speedy Trial Act at this time. He's asking for a trial date at the earliest opportunity."); Apr. 5 Tr. at 9 ("My client's position remains the same. He wants to go to trial as soon as possible. He does not want to wait another 60 days, let alone another 6 months."); May 5 Tr. at 9 ("Mr. Doolin remains adamant that he would like to go to trial as soon as possible.") The Court took Doolin's expressed concerns seriously and granted Doolin's motion to sever solely

4

to accommodate those concerns.   As the Court noted on May 5, 2022, "[W]hile I understand that there are economies and efficiencies that would accompany a four-defendant rather than a three-defendant plus a one-defendant trial, I think in this circumstance those efficiencies are outweighed by the defendants' . . . diverging interests in both their personal situations and their interests in going forward." May 5 Tr. at 18-19; s*ee also* Apr. 5 Tr. at 11 ("It seems to me that were it not for the timing questions here, he would not be entitled to severance."); *id.* at 17 ("To be very clear, my view remains that it would be entirely appropriate to try this case as a four-defendant case, were it not for the divergence of views among defendants about how quickly or not they would like this case to go."); *id.* at 18 ("I don't think there's a 'substantive reason' requiring severance in the sense of prejudice and the evidence and the like. But I do think there is a pretty considerable divergence of views among the defendants about their interests and rights around speedy trial questions.").

Now, Doolin seeks to have his trial continued until "the early part of 2023." Mot. at ¶ 1. It is obvious that he no longer believes that he would be prejudiced by such a delay.   This Court has already cleared two weeks of its calendar in early 2023 for Doolin's co-defendants' trial, which is scheduled for March 6, 2023.   As the Government has previously argued and this Court has recognized, there are numerous efficiencies realized by the trying of four defendants together in one trial, rather than in two separate trials.  *See* ECF No. 85 (Govt. Opp. to Doolin's Mot. to Sever) at 6 (the Government's evidence regarding the four co-defendants is overlapping); May 5 Tr. at 15-16 (same); *id.* at 16 (efficiencies of judicial and prosecutorial resources in one trial, in front of one jury); *id.* at 18 (recognizing "economies and efficiencies" of one four-defendant trial instead of two trials).   Now that an early-2023 trial no longer prejudices Doolin (and, in his current estimation, would benefit him), Doolin should be re-joined with his co-defendants in order to

5

recognize these efficiencies.  *See Zafiro v. United States*, 506 U.S. 534, 540 (1993) ("Rules 8(b) and 14 are designed 'to promote economy and efficiency and to avoid a multiplicity of trials, [so long as] these objectives can be achieved without substantial prejudice to the right of the defendants to a fair trial.'" (quoting *Bruton v. United States*, 391 U.S. 123, 131, n. 6 (1968), alterations in *Zafiro*).

Indeed, the March 6, 2023 trial date accommodates all of Doolin's newly raised concerns (discussed further below): The Select Committee's hearings may be concluded by then and its report issued and the November 2022 elections will have already been conducted.  The intervening 5-plus months will provide additional time for information he deems "important to the defense of [his] case," Mot. at ¶ 2, to come to light.  Doolin's only objection to the March 6, 2023 trial date is that he will be tried with his co-defendants.  *See* Mot. at ¶ 4 (Doolin "wants to have his trial separate and apart [from] the other co-defendants").  However, he has identified no additional prejudice that would result from this joinder.  This Court has already considered the arguments raised in Doolin's motion to sever, ECF No. 82, and should not permit Doolin to relitigate them.  Rather, the Court should adjourn Doolin's trial to March 6, 2023 and re-join him with his co-defendants whose trial is scheduled for that date.

## II.   Doolin's Speculative Concerns About Jury Bias Are Properly Addressed Through *Voir Dire*.

Doolin posits that the ongoing hearings of the Select Committee, its anticipated report, and the November 2022 elections will generate such prejudicial pretrial publicity that will be impossible to select an impartial jury.  This argument is theoretical at best and any potential bias on the part of jurors can be adequately addressed through *voir dire*.

First, the facts of Doolin's case have, to the Government's knowledge, garnered no mention in the Select Committee's hearings.  The content of the hearings has focused principally on the

acts of those around the former President and Vice President, and, to some extent, on the actions of organized groups, such as the Proud Boys.  One of the Government's anticipated witnesses -- United States Secret Service Special Agent and Assistant to the Special Agent in Charge, Paul Wade -- was interviewed by Select Committee personnel by video conference on January 7, 2022. The interview was unsworn, and Counsel for U.S. Secret Service do not believe that it was recorded.  The Government expects that Special Agent Wade's testimony will establish that the Vice President -- a person protected by the Secret Service -- was present at the Capitol on January 6, 2021, and, thus, that the Capitol building and grounds were a restricted area for purposes of 18 U.S.C. § 1752.  To the Government's knowledge, Special Agent Wade had no contact or interaction with Doolin.  Special Agent Wade has provided this testimony in other Capitol Riot trials with minimal cross-examination and no impeachment.

*Voir dire*, similar to that conducted in the several January 6 trials already held in this district, will address any potential impact from the Select Committee's hearings.  See ECF No. 119 (Govt. Opp. to Def. Mot. to Change Venue) at 22-25 (describing *voir dire* process in other January 6 trials). The Supreme Court has observed that *voir dire* is "well suited to th[e] task" of probing a crime's "widespread community impact." *Skilling v. United States*, 561 U.S. 358, 384 (2010). Similarly, the D.C. Circuit has said that "*voir dire* has long been recognized as an effective method of routing out [publicity-based] bias, especially when conducted in a careful and thoroughgoing manner." *In re Nat'l Broadcasting Co.*, 653 F.2d 609, 617 (D.C. Cir. 1981); *see Jones v. Gasch*, 404 F.2d 1231, 1238 (D.C. Cir. 1967) (quotation omitted) (stating that "the proper occasion" for determining whether an impartial jury can be selected "is upon the *voir dire* examination"). That court has held that a defendant is not entitled to a continuance even if the defendant himself is the subject of extensive pretrial publicity, because "if an impartial jury

actually cannot be selected, that fact should become evident at the *voir dire*." *United States v. Haldeman*, 559 F.2d 31, 63 (D.C. Cir. 1976) (affirming district court's denial of request to continue).

Other than his speculation, Doolin has not identified any particular fact or reason to conclude that *voir dire* will be inadequate to protect his right to an impartial jury. Nor is there any support for his contention that a delay of the trial would resolve any of the speculative issues that his motion raises. Even if there were reason to believe that some jurors might harbor secret biases undisclosed in under-oath *voir dire*, there is no reason to suspect those biases would disappear by early 2023. On whatever date the trial is conducted, the proper way to ensure the empanelment of an unbiased jury it through thorough *voir dire*. *See United States v. Jensen*, 21 Cr. 6 (TJK), ECF No. 75 at 2 (D.D.C. Aug. 2, 2022) ("as for the potential prejudice to Defendant flowing from the [Select Committee] hearings, if such prejudice in fact exists—a dubious proposition given Defendant's non-specific assertions on this point—and means that an impartial jury actually cannot be selected, that fact should become evident at the voir dire.") (internal citations and quotation marks omitted).

Further, Doolin's citation to the November 2022 election and the anticipated issuance of the Select Committee's report at the end of 2022 are misplaced. There is no support for defendant's speculative claim that the mid-term elections will "polarize and inflame the populace; in particular, the politically sensitive citizens of the District of Columbia," Mot. at ¶ 1; especially where the citizens of Washington D.C., who will make up the defendant's jury pool, have no voting Representative to Congress. It is further speculative any perceived sensitivities would bear on Doolin's criminal case. Moreover, the currently scheduled September trial date would avoid any speculative problems arising from a November event, nearly two months in the future. *See Jensen*, 21 Cr. 6 (TJK), ECF No. 75 at 2 (D.D.C. Aug. 2, 2022) (rejecting defendant's arguments regarding the potential effect of the mid-term elections on the jury pool "because the trial will be completed

8

well before the mid-term elections").

Similarly, Doolin claims that the "expected" report that he projects may be issued by the Select Committee at the end of the year will "fan the flames of personal opinions and biases." Mot. at ¶ 1. There is no reason to believe that any personal opinions about the Committee's work and conclusions would impact the jury panel's ability to evaluate Doolin's case fairly. But even if these dubious premises are accepted, a September 2022 trial — months before he expects the report to be issued — should in fact protect Doolin's rights rather than infringe on them. *Jensen*, 21 Cr. 6 (TJK), ECF No. 75 at 2 (D.D.C. Aug. 2, 2022) (rejecting defendant's arguments regarding the potential effect of the Select Committee's anticipated report on the jury pool "because the trial will be completed well before . . . the release of the Select Committee's report").

### III. Doolin Has Offered No Evidence That the Materials He Expects to be Released in the Future Will Have Any Bearing on His Case.

Doolin asserts that, as a result of the Select Committee's hearings and report or "the U.S. Secret Service (and other U.S. government) cell-phone text messages investigation, there may be disclosed *Brady* information and/or other information which may be important to the defense of this case," Mot. at ¶ 2. However, he offers no indication of how the outcomes of those investigations could be relevant to the defense of his own case. As discussed above, the Select Committee's hearings have focused principally on the acts of those around the former President and Vice President, and, to some extent, on the actions of organized groups, such as the Proud Boys. The Government has no indication that Doolin, or the group with which he traveled from Florida to Washington, D.C., is affiliated with any larger organizations that played a role in the Capitol Riot. Government does not intend to introduce any testimony from Special Agent Wade that is particular to Doolin; Special Agent Wade's testimony will concern the restricted perimeter around the Capitol building on January 6, 2021 and the presence and intended presence of Secret

9

Service protectees in the building on that date.

## **CONCLUSION**

For the foregoing reasons, the Government respectfully requests that the Court adjourn the defendant's trial until March 6, 2023, re-joining him with his co-defendants, or in the alternative, deny his request for a continuance.

        Respectfully submitted,

        MATTHEW M. GRAVES
        United States Attorney
        D.C. Bar No. 481052


By:    */s/ Benet J. Kearney*
        Benet J. Kearney
        New York Bar No. 4774048
        Assistant United States Attorney
        1 Saint Andrew's Plaza
        New York, New York 10007
        Benet.Kearney@usdoj.gov
        (212) 637 2260


        */s/ Matthew Moeder*
        Matthew Moeder
        Assistant United States Attorney
        Missouri Bar No. 64036
        400 East 9th Street
        Room 5510
        Kansas City, Missouri 64106
        Matthew.Moeder@usdoj.gov
        (816) 426-4103

## **CERTIFICATE OF SERVICE**

      I hereby certify that on August 14, 2022, I caused a copy of the foregoing motion to be served on attorney of record via email and the Court's electronic filing system.

                                         */s/ Benet Kearney*
                                         Benet Kearney
                                         Assistant United States Attorney