UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | |
| v. : | CASE NO. 21-cr-447 (CJN) |
| : | |
| JOSHUA CHRISTOPHER DOOLIN, : | |
| MICHAEL STEVEN PERKINS : | |
| : | |
| Defendants. : | |

**UNITED STATES' OPPOSITION TO DEFENDANT'S MOTION TO EXCLUDE
CHEMICAL SPRAY CANNISTER AND TO DISMISS COUNT 16**

On January 6, 2021, the defendant, Joshua Christopher Doolin, stole a chemical spray cannister during the civil disorder around the Capitol that day. For his actions, he was charged with violating 18 U.S.C. § 661, which prohibits theft in a federal enclave.

As the government prepared a witness—Sgt. William Bogner—for trial, it learned that the cannister Doolin stole belonged to the Metropolitan Police Department ("MPD") and, in fact, might still be in its possession. Sgt. Bogner noticed this because a photo showed that the cannister's base had three lines on it (see below), which the government assumed were scratches. In fact, Sgt. Bogner explained, the lines were numbers, indicating that the cannister was number "111" in the MPD's inventory. Sgt. Bogner said that he would search to see if, in fact, the MPD had regained custody of the cannister.

1



*Figure 1*

Around 1:37 PM on February 27, Sgt. Bogner shared photos confirming that the MPD had the same cannister. The government shared these photos with defense counsel at 3:20 PM the same day, less than two hours later. The prosecution subsequently included the cannister on a revised exhibit list, which it shared with the defense on March 6. The next day—March 7—the government inspected the actual cannister for the first time, during a recess in the trial and shortly thereafter offered the defense an opportunity to inspect it. Defense counsel objected that the prosecution's disclosure was untimely, leading ultimately to the present dispute. At the end of the trial day, the government again provided defense counsel with the chance to inspect the cannister.

I.  **The Government's Disclosure Was Timely**

At each step of the investigative process, the government promptly disclosed what it learned to defense counsel. The government shared Sgt. Bogner's photos with the defense less than two hours after receiving them and offered the defense the chance to inspect the cannister, during trial, the same afternoon that the government's attorneys had an opportunity to view it.

2

It's hard to imagine how the government could have moved faster to alert the defense to the evidence as it unfolded.

The defense's complaint appears to be, not that the prosecution moved too slow, but that it moved at all in continuing its investigation so close to trial. The government frequently investigates crimes up to and into trial, disclosing evidence to defense counsel along the way. *See* Federal Rule of Criminal Procedure 16(c) (discussing the parties' continuing duty to disclose evidence). Courts recognize this fact, and simply require the government to disclose exculpatory evidence with enough time for the defendant to receive a fair trial. *See United States v. Kelly*, 14 F.3d 1169, 1176 (7th Cir. 1994) (in evaluating the timeliness of disclosures, "the only question here is whether the government's disclosure, which was made before the government rested its case-in-chief, came so late as to prevent the defendant from receiving a fair trial."). So it is here, and suppressing introduction of the cannister evidence, or even more seriously, dismissing the charge, would discourage the government, here and elsewhere, from zealously investigating its cases.

## II.     The Appropriate Remedy Is To Give Defense Time To Inspect The Cannister

Even if evidence about the cannister was untimely disclosed—and again, the government shared its evidence withing hours of learning it—the appropriate remedy would not be, as the defense suggests, to suppress the evidence or dismiss the claim. ECF No. 215 at 1. Federal Rule of Criminal Procedure 16 grants this court considerable discretion to craft an equitable remedy, including ordering "discovery or inspection," "a continuance," "prohibit[ion] . . . from introducing the undisclosed evidence," or "any other order that is just under the circumstances." Often, where no prejudice is shown, there is no need for further sanction than the ability to inspect the evidence. Where a party needs more time to account for the newly disclosed

evidence, a continuance is the favored remedy. *See, e.g.*, *United States v. Collins*, 415 F.3d 304, 311 (4th Cir. 2005) (continuance is preferable to motion to dismiss as remedy for late disclosure). In *Arizona v. Youngblood*, 488 U.S. 51 (1988), the Supreme Court held that in cases where the exculpatory value of the evidence is unknown, "unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law." *Id*. at 58. "[T]he applicability of the bad-faith requirement in *Youngblood* depend[s] not on the centrality of the contested evidence to the prosecution's case or the defendant's defense, but on the distinction between 'material exculpatory' evidence and 'potentially useful' evidence." *Illinois v. Fisher,* 540 U.S. 544, 549 (2004). "The mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish 'materiality' in the constitutional sense." *United States v. Agurs,* 427 U.S. 97, 109-110 (1976). "The presence or absence of bad faith by the police for purposes of the Due Process Clause must necessarily turn on the police's knowledge of the exculpatory value of the evidence at the time it was lost or destroyed." *Youngblood,* 488 U.S. at 56 n.*. To establish "bad faith" under *Youngblood,* the defendant must adduce evidence upon which the Court can find that the police have intentionally destroyed or withheld the evidence "for the purpose of depriving the [defendant] of the use of that evidence during his criminal trial." *Jean v. Collins,* 221 F.3d 656, 663 (4th Cir. 2000).

In this case, the canister itself has been recovered and it is available for the defense to review. The government inspected the cannister in a few minutes during trial. Defense counsel has now inspected it twice. Although the government is willing to make the canister available for inspection again, it is unclear what counsel hopes to gain through a third viewing. The

government has already reshuffled its witnesses in order to allow the defense time to inspect the cannister and file the instant motion. As such, we believe that no continuance of the trial is necessary.

The defense also raises the specter of missing forensic evidence, noting that the government's inability to produce the canister in a more expeditious fashion prevented fingerprint or DNA analysis. Setting aside the fact that both parties are burdened with this detriment and that forensic evidence could very well have proven to be *inculpatory* in nature, it is clear that the government was not aware that it was in possession of this evidence until recently. In the chaos of January 6, it appears that the encounter with the defendant and the recovery of this item was not documented. Thus, there is no bad faith in the government's failure to produce the canister for the defense's inspection or analysis. For this reason, there is no due process violation and dismissal is an inappropriate remedy. The proper analysis in this case, therefore, is a Rule 16 analysis of what sanction, if any, is "just under the circumstances." The Defense's Remaining Arguments Are Unavailing

### III.     The Defense's Remaining Arguments Are Unavailing.

*First*, the defense argues that the government "violated its Rule 16(a) duty to disclose the spray gun for pretrial inspection by failing to make it available upon a July 19, 2021, request by defense counsel." ECF No. 215 at 1. As described above, the prosecution made the cannister available for inspection on Tuesday, March 7, 2023, during a recess, and just a few minutes after inspecting the evidence for the first time itself. To the extent that the defense complains that the cannister was not made available back in 2021, it is for the reasons described above, namely that the government learned of the MPD's possession of it barely a week ago.

5

*Second*, the defense argues that "the spray gun is inadmissible because the government prematurely released the spray gun into active Metropolitan Police Department ('MPD') use. As such, the government can no longer prove that the spray gun is the same device allegedly acquired by Mr. Doolin." ECF No. 215 at 1. Factually, this is wrong: the government has not yet released the cannister to the MPD, and in fact, made efforts to get it from the Department after learning of the cannister's existence. More broadly, to the extent the defense is claiming that cannister is inauthentic, this is an argument make once the cannister is introduced, not before. As the prosecution will show, the cannister has a number—"111"—written on it in a distinctive style which can be seen in photos from January 6, 2021. This marking, the prosecution will show, is sufficient to authenticate the cannister. Regardless, the authenticity argument is one to raise once the evidence is introduced, not before. At that time, defects in the chain of custody and the government's failure to preserve any potential forensic evidence will be proper subjects for examination and will properly go to the weight of the evidence rather than its admissibility.

*Finally*, the defense argues that "The government will not be able to introduce proof sufficient to support a finding that the painted numbering was not added (intentionally or unintentionally) to a gas canister among the many the MPD uses . . . . Therefore, in addition to Rule 16 counseling towards exclusion, Federal Rule of Evidence 104 counsels towards an order of exclusion." ECF No. 215 at 6. The defense's argument appears to be circular. Rule 104 reads in relevant part that "When the relevance of evidence depends on whether a fact exists, proof must be introduced sufficient to support a finding that the fact does exist." Fed. R. Evid. 104(b). The defense seems to be arguing that the cannister is only relevant if it is authentic (fair enough), but for that reason, the cannister should not be admitted to evaluate its authenticity. If

such an argument seems confusing, it is, and if anything, it cuts against the defendant's claim. Where the cannister's authenticity is in dispute, the court, as trier of fact, should have the opportunity to examine it, and determine if it is, indeed, the cannister that Doolin took.

## IV. Conclusion

The government has continued its investigation up to and through trial, and has disclosed relevant facts to the defense within minutes or hours of learning them. It would be difficult if not impossible to act faster. As such, the government's disclosures about the cannister were timely, and ruling otherwise would discourage the government in this case and others from zealously pursuing its investigations through trial as required by Rule 16. Nevertheless, the government is willing to rearrange its witnesses, as the court sees fit and as the defense desires, to give the latter sufficient time to inspect the physical cannister. There is no need for further sanction because any benefit that the defense has lost is more than outweighed by its ability to use the fact of the government's poor documentation of its acquisition of this evidence and its inability to realize it had this item until last week. The defense can also argue, due to the government's negligence, that the missing forensic evidence may have been exculpatory, an uncertainty that would not have been otherwise possible if it had been given access to this item with sufficient time to conduct its own testing.

To the extent that the Court believes that a sanction is necessary in this case, it should be minimal. A trial is a search for truth, and in this case, the full context of the offense should be presented to the court or it would pervert the truth-seeking process. The defendant stands accused of stealing this cannister and the finder of fact should be given the opportunity to inspect this evidence and learn about its provenance, however messy that is.

|  |  |
|---|---|
|  | Respectfully submitted, |
| DATED: March 8, 2023 | MATTHEW M. GRAVES<br>United States Attorney<br>D.C. Bar No. 481052 |
| By: | /s/ Benet J. Kearney<br>NY Bar No. 4774048<br>Benet J. Kearney<br>Assistant United States Attorney<br>1 Saint Andrew's Plaza<br>New York, New York 10007<br>(212) 637 2260<br>Benet.Kearney@usdoj.gov |
|  | Matthew Moeder<br>MO Bar No. 64036<br>Assistant United States Attorney<br>400 East 9th Street, Room 5510<br>Kansas City, Missouri 64106<br>(816) 426-4103<br>Matthew.Moeder@usdoj.gov |
|  | Brendan Ballou<br>DC Bar No. 241592<br>Special Counsel, detailed to the<br>United States Attorney's Office<br>601 D Street NW<br>Washington, DC 20001<br>(202) 431-8493<br>brendan.ballou-kelley@usa.doj.gov |