# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| v. | : | No. 1:21-cr-00447-CJN-03 |
| | : | |
| JOSHUA CHRISTOPHER DOOLIN, | : | |
| et al. | : | |

## DEFENDANT'S MEMORANDUM IN AID OF SENTENCING

COMES NOW ATTORNEY, Allen H. Orenberg, to respectfully submit this Memorandum in Aid of Sentencing on behalf of Defendant Joshua Christopher Doolin. There can be no dispute that the Court has a duty to deliver a sentence that is not greater than necessary to comply with sentencing purposes. *See* 18 U.S.C. §3553(a).

When fashioning an appropriate sentence, Mr. Doolin requests the Court to impose a sentence which properly reflects a (final) determination of the Advisory Sentencing Guidelines, as well as the other 18 U.S.C. §3553(a)(1-7) factors, including the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.

Furthermore, the Court should take into consideration a variance downward of at least nine levels from the final U.S.S.G. base offense level. This request is based on two reasons: (1) The extraordinary detrimental impact of the COVID-19 pandemic on incarcerated individuals at the D.C. Department of Corrections and the Federal Bureau of Prisons, and (2) His aberrant behavior and youthful age on January 6,

-1-

2021, his prior record of good works, and his efforts to mitigate the effects of the offense. *See* U.S.S.G. § 5K2.20.

Respectfully, Mr. Doolin asks the Court to impose a sentence of, essentially, a probationary term, including a period of 6 months of home detention with work release privileges, and 150 hours of community service.

## I.   <u>Case Background</u>

Mr. Doolin was arrested on June 30, 2021, and charged with federal crimes arising from the January 6, 2021, U.S. Capitol Breach. On July 1, 2021, a Indictment [8] issued charging Mr. Doolin with violations of: Count 16, Entering and Remaining in a Restricted Building or Grounds, in violation of 18 U.S.C. § 1752 (a)(1), and Count 17, Disorderly and Disruptive Conduct in a Restricted Building or Grounds, in violation of 18 U.S.C. § 1752 (a)(2).

On July 8, 2021, he was presented in this Court and released by U.S. Magistrate Judge G. Michael Harvey into the High Intensity Supervision Program, ("HISP") which included "Stand Alone Monitoring." (GPS ankle bracelet) *See Order Setting Conditions of Release.* [22] He has remained on the GPS ankle bracelet since July 8, 2021, doing so without incurring any violations.

On July 13, 2022, a Superseding Indictment [116] issued which added as to Mr. Doolin three additional charges: Theft in a Federal Enclave, in violation of 18 U.S.C. § 641, Theft of Government Property, in violation of 18 U.S.C. § 641, and Civil Disorder, in violation of 18 U.S.C. § 231(a)(3).

-2-

On March 15, 2023, following a bench trial, the Court rendered a verdict of guilty as to Counts 17, 18, 22 & 24, and a verdict of not guilty on Count 16,[1] as charged in the Superseding Indictment [116]:

Count 17 – Theft of Government Property, in violation of 18 U.S.C. § 641.

Count 18 – Civil Disorder, in violation of 18 U.S.C. § 231(a)(3).

Count 22 – Entering and Remaining in a Restricted Building or Grounds, in violation of 18 U.S.C. § 1752 (a)(1).

Count 24 – Disorderly and Disruptive Conduct in a Restricted Building or Grounds, in violation of 18 U.S.C. § 1752 (a)(2), & 18 U.S.C. § 1752 (b)(2),

A sentencing hearing is scheduled for August 16, 2023, at 2:00 p.m.

The U.S. Probation Office is recommending of 24 months imprisonment, followed by 36 months supervised release, a fine of $4,000.00, Restitution of $2,256.65 and a Special Assessment of $175.00. *See Sentencing Recommendation*, by the U.S. Probation Office. [248]

Mr. Doolin and counsel have received and reviewed the (draft & final) Presentence Investigation Report. ("PSR") [247] On July 31, 2023, counsel filed the Obligation & Response to Presentence Report Form (draft version) with a comprehensive letter to USPO Robert Walters. [243] The following sections, II, III & IV are encompass the unresolved objections, or suggestions for changes, to the PSR.

---

[1]    Count 16 of the Superseding Indictment charged Theft in a Federal Enclave, in violation of 18 U.S.C. § 641.

## II.    Objections to Offense Conduct The Pre-Sentence Investigation Report

Overall, Mr. Doolin objects to the PSR as it appears to equate the facts submitted for either pre-trial and/or evidence admitted at trial as to both Mr. Doolin and co-defendant Michael Perkins. For example, in paragraph no. 12 it states: "Additional information incorporated herein was taken directly from the Memorandum in Support of Pretrial Detention [re: Michael Perkins] ECF Doc. 10." Also, Mr. Doolin objects to the inclusion of paragraphs nos. 20 – 25, as it relates to "Defendant Michael Stevens Participation in the U.S. Capitol Riot and Defendant Perkin's Assaultive conduct on the West Plaza." In fact, paragraphs nos. 17 – 19, are under the section heading " Defendant Joshua Christopher Doolin's Participation in the U.S. Capitol Riot." The "Perkins" paragraphs (20 – 25) should be stricken from the PSR as they describe conduct pertaining to Mr. Perkins and these paragraphs are superfluous as to Mr. Doolin.

Furthermore, Mr. Doolin objects to the inclusion of Mr. Perkin's conduct in Mr. Doolin's PSR. Mr. Perkins and Mr. Doolin are not charged in any of the same counts of the Superseding Indictment, except that each defendant was convicted of violating 18 U.S.C. § 231(a)(3) – but as to different Counts. Understandably, the conduct supporting each defendant's conviction for Civil Disorder is starkly different. The conduct of which Mr. Perkins was convicted occurred on the lower west terrace "between at or around 1:56 p.m. and at or around 2:12 p.m." *See* Count 1 of the Superseding Indictment. The conduct of which Mr. Doolin was convicted of violating

18 U.S.C. § 231(a)(3) occurred later in the afternoon in front of the "tunnel" "between at or around 4:18 p.m. and 4:46 p.m." *See* Count 18 of the Superseding Indictment. As such, please delete paragraphs 20 – 25 from Mr. Doolin's PSR, which pertain solely to Mr. Perkins's conduct and relates to counts on which Mr. Doolin was not charged or convicted.

Paragraph No. 13:     Mr. Doolin objects to the inclusion of the statement " On January 6, 2021, Michael Perkins, with Jonathon Pollock, Joseph Hutchinson, Joshua Doolin and Olivia Pollock – engaged in a coordinated effort t attack law enforcement officers at the U.S. Capitol. Joshua Doolin, his codefendants, and others who engaged in the attacks were part of a larger group . . ."  Mr. Doolin did not "participate in a coordinate effort to attack law enforcement officers."

Paragraph No. 16:     The second-to-last sentence is incorrect. By the time Mr. Doolin arrived at the Capitol grounds, any physical barriers were already removed. The bike racks and snow fencing can be seen in the distance, but they were not "largely intact" at the area when Mr. Doolin entered the Capitol grounds. *See* Transcript ("Tr.") 3/7/23, 82-83 (testimony of Captain Sean Patton regarding a breach of the perimeter starting at 12:55 p.m. Mr. Doolin and co-defendants did not reach the perimeter until 1:56 p.m.

Paragraph No. 18:     The entire first sentence should be stricken. The statement he ". . . was made aware on other ways that entry onto restricted grounds was prohibited" is a argument made by the government, and not clearly supported by the evidence introduced at trial.

-5-

Paragraph No. 28:      Mr. Doolin objects to the inclusion of this paragraph and it should be stricken in it's entirety.  There was direct evidence introduced at trial that Mr. Doolin "took the shield as a trophy" and that he transported the shield to Florida. At best, these allegations are circumstantial and speculative. This description of events in this paragraph is submitted by the government as their interpretation of the evidence introduced at trial. The Court is (as the fact-finder at trial) is in the best position to assess the credibility of Mr. Doolin and make any factual determinations.

Paragraph No. 30:      Mr. Doolin objects to the inclusion of this paragraph and it should be stricken in it's entirety. Mr. Doolin testified at trial that he attempted to enter the tunnel in order to render aid to someone whom he heard had been injured. (At the time Mr. Doolin was a Para-Medic) Even though he may have participated in the "pushing" around the exterior of the tunnel, he nevertheless was there in an effort to render aid to an injured person. This description of events in this paragraph is submitted by the government as their interpretation of the evidence introduced at trial. The Court is (as the fact-finder at trial) is in the best position to assess the credibility of Mr. Doolin and make any factual determinations.

Paragraph No. 31:      Mr. Doolin objects to the inclusion of this paragraph and it should be stricken in it's entirety. This description of events in this paragraph is submitted by the government as their interpretation of the evidence introduced at trial. The Court is (as the fact-finder at trial) is in the best position to assess the credibility of Mr. Doolin and make any factual determinations.

Paragraph No. 32:     Mr. Doolin objects to the inclusion of this paragraph and it should be stricken in it's entirety. This description of events in this paragraph is submitted by the government as their interpretation of the evidence introduced at trial. The Court is (as the fact-finder at trial) is in the best position to assess the credibility of Mr. Doolin and make any factual determinations.

Paragraph No. 33:     Mr. Doolin objects to the inclusion of this paragraph and it should be stricken in it's entirety. This description of events in this paragraph is submitted by the government as their interpretation of the evidence introduced at trial. The Court is (as the fact-finder at trial) is in the best position to assess the credibility of Mr. Doolin and make any factual determinations.

Paragraph No. 39:     Mr. Doolin objects to the conclusory statements that he and co-defendant Michael Perkins acted (in a coordinated effort to attack law enforcement officers the U.S. Capitol . . . and thereafter appear to have engaged in attacks on law enforcement. The evidence introduced at trial did nor show him attacking law enforcement officers nor did he coordinate with Mr. Perkins any such activities.

Theses statements (in para. no. 39) should be stricken.

## III.     Objections to Guideline Calculations in the Pre-Sentence Investigation Report

Paragraph Nos. 42 & 67:     Mr. Doolin did not attempt to willfully  obstruct or impede the administration of justice, pursuant to USSG 3C1.1. Mr. Doolin was exercising his constitutional right to explain to the Court his actions on January 6,

2021. The Court (as the fact-finder at trial) is in the best position to assess the credibility of Mr. Doolin and make this determination.

First, as noted above, Mr. Doolin did not willfully attempt to obstruct or impede the administration of justice, pursuant to USSG §3C1.1. He only wanted to exercise his constitutional right to explain to the Court his actions on January 6, 2021. Thus, he should not receive a 2-level upward adjustment for Obstruction or Impeding the Administration of Justice, pursuant to USSG §3C1.1.

While the United States Supreme Court has recognized that a trial court is within its discretion to enhance a defendant's sentence under USSG § 3C1.1 when a defendant testifies and is nevertheless convicted, the Court was careful to note that such an enhancement is only appropriate when there is false testimony given with a "willful intent to provide false testimony." *United States v. Dunnigan*, 507 U.S. 87, 94–95, 113 S. Ct. 1111, 122 L. Ed. 2d 445 (1993). As the Court recognized, "not every accused who testifies at trial and is convicted will incur an enhanced sentence under § 3C1.1 for committing perjury." *Id.* at 95. As the Court explained, "an accused may give inaccurate testimony due to confusion, mistake, or faulty memory." *Id.* The comments to the Guideline itself also recognize this. *See* USSG § 3C1.1, cmt. 2 ("In applying this provision in respect to alleged false testimony or statements by the defendant, the court should be cognizant that inaccurate testimony or statements some times may result from confusion, mistake, or faulty memory and, thus, not all inaccurate testimony or statements necessarily reflect a willful attempt to obstruct jus-tice.").

The United States Court of Appeals for the D.C. Circuit has previous applied an enhanced standard for evaluating the application of the enhancement, one which requires clear and convincing evidence of a perjury on the part of the defendant. *United States v. Montague*, 40 F.3d 1251, 1256 (D.C. Cir. 1994). The court further mandated "cases that cause a district court pause require separate and clear findings and careful attention to the evaluating standard in supporting the determination." *Id.*; *see also Dunnigan*, 507 U.S. at 97 ("the trial court must make findings to support all the elements of a perjury violation in the specific case."). Although this holding has not been expressly overruled, the court in a subsequent opinion, noted in a footnote that effective November 1, 1997, the Sentencing Commission deleted language from the commentary to § 3C1.1 so that the Application Note "no longer suggests the use of a heightened standard of proof." *United States v. Dozier*, 162 F.3d 120, 124 n.1 (D.C. Cir. 1998) (quoting U.S.S.G. App. C, amend. 566 (Nov. 1997)).

The Court should find Mr. Doolin did not attempt to obstruct or impede the administration of justice when he testified during the trial. He did not have the intent to, or willfully, mislead the Court (fact-finder) as he testified. He merely presented his recollection and explanation as to his involvement with police officers. Accordingly, a two-level enhancement for obstruction is not appropriate since he did not falsely testify at trial.

Consequently, the base offense level for Group 1 should be 13. In its ("objections") letter to USPO Robert Walters dated July 31, 2023, the Government believes there should be 3 groups: The U.S. Capitol Police (the agency);

the U.S. Capital Police (the officers); and Congress. We agree with the Probation

Officer that there are only two groups: The U.S. Capital Police and Congress and

Counts 17 & 18 should be grouped pursuant to USSG 3D1.2(b).

However, we disagree with the Probation Officer's calculations for these two

groups. Mr. Doolin did not commit Counts 22 & 24 with the **intent** to commit a felony

(Count 18), and the Cross Reference in USSG §2B2.3(c)(1) to USSG §2A2.4 should not

be applied. Therefore, the offense level for Group 2 would be the following:

> Base Offense Level: 4, pursuant to USSG §2B2.3(a). 4
> Specific Offense Characteristics: During this instant offense, Mr. Doolin
> illegally entered the restricted grounds of the U.S. Capitol. If the trespass
> occurred at any restricted building or grounds, increase the offense level by 2,
> pursuant to USSG §2B2.3(b)(1)(A)(vii).
>
> Victim-Related Adjustments: None. 0
> Adjustment for Role in the Offense: None. 0
> Adjustment for Obstruction of Justice: None. 0
> Adjusted Offense Level: 6
>
> Multiple Count Adjustment

| Group | Adjusted Offense Level | Units |
|---|---|---|
| Group 1 | 13 | 1 Unit |
| Group 2 | 6 | ½ Unit |

> Total Number of Units: 1½
> Greater of the Adjusted Offense Levels Above: 13
> Increase in the Offense Level (USSG §3D1.4): +1
> Combined Adjusted Offense Level: 14
> Adjustment for Acceptance of Responsibility: 0
> Chapter Four Enhancements: None. 0
> Total Offense Level: 14

Based on an offense level of 14 and a criminal history category  I, the advisory

sentencing guidelines range is 15-21 months.

IV.     <u>Other Objections to the Pre-Sentence Investigation Report</u>

Paragraph No. 10:      Mr. Doolin is requesting that it be noted he has been continuously monitored by "Stand Alone Monitoring" (GPS Ankle bracelet) since July 8, 2021.

Paragraph No. 110:     Please add the following – "Mr. Doolin reports that all of the funds raised were used for travel expenses (to/from his home in Florida) in connection with his trial in March, 2023. This money was not raised for legal fees or to potentially pay a fine or restitution. As such, these funds should not be considered to determine whether Mr. Doolin can pay a fine or restitution." *See also* PSR ¶ 114.

In its ('objections") letter to USPO Robert Walters dated July 31, 2023, the Government suggests that in addition to seeking from Mr. Doolin $2,000.00 as restitution, the government also intends to seek an additional $265.65 – which is the value of a USCP riot shield. *See also*, PSR ¶ 41. Mr. Doolin objects to the government seeking restitution for the riot shield as he denies stealing the riot shield.

In its ('objections") letter to USPO Robert Walters dated July 31, 2023, the Government asks the U.S. Probation Office to "list a possible departure upward under U.S.S.G. § 5K2.7, suggesting that the defendant's conduct resulted in a significant disruption of a government al function. Mr. Doolin objects to this request and he agrees with PSR inasmuch as it does not list this possible upward departure. Furthermore, the as noted in the PSR ¶ 150, "the Probation Office has not identified any factors that would warrant a variance from the applicable guideline range based on the factors outlined in 18 USC § 3553(a)"

## V.     Legal Standard – The Post-Booker Sentencing Framework And The Guidelines Are Not Mandatory

The Court has broad discretion to consider nearly every aspect of a particular case, and a particular defendant, in fashioning an appropriate sentence. In early 2005, the United States Supreme Court declared that the Guidelines are advisory, rather than mandatory. *United States v. Booker* 543 U.S.220, 125 S.Ct. 738, 160 L. Ed 2d 621 (2005). Although the Court must consider the Guidelines in imposing a reasonable sentence, the Guidelines are now merely "advisory," constituting just one factor to be considered on equal footing with the other sentencing factors found in 18 U.S.C. §3553 (a). *See id.* at 757,764 – 67, 790.

The *Booker* Court also re-emphasized that the primary sentencing mandate of §3553 (a) is that courts must impose the least amount of imprisonment and sentence necessary to achieve the statutory purposes of punishment-justice, deterrence, incapacitation, and rehabilitation; the court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in (18 U.S.C. §3553(a)(2). 18 U.S.C. §3553(a).[2] This represents a cap above which the Court is

---

[2]     18 U.S.C. §3553 (a) states, in pertinent part, "The court shall impose a sentence sufficient, but not greater than necessary, to comply with purposes set forth in paragraph (2) of this subsection.  The court, in determining the particular sentence to be imposed, shall consider – (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed – (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner."Furthermore, paragraph (3) of this subsection directs the Court to consider "the kinds of sentences available."

*statutorily prohibited* from sentencing - even when a far greater sentence is recommended by the advisory sentencing guidelines. *See, United States v. Denarli*, 892 F.2d 2698, 276-77 (3rd Cir. 1989)(Becker, J., concurring in part, dissenting in part). In *Kimbrough v. United States*, 552 U.S. 85, 128 S.Ct. 558 (2007), and *Gall v. United States*, 552 U.S. 38 (2007), the Supreme Court held that the sentencing guidelines are simply an advisory tool to be considered alongside other statutory considerations set forth in 18 U.S.C. §3553 (a). In two more recent summary reversals, the Court further made clear that the Guidelines cannot be used as a substitute for a sentencing court's independent determination of a just sentence based upon consideration of the statutory sentencing factors. *Nelson v. United States*, 129 S. Ct. 890 (2009), 2009 WL 160585 (Jan. 26, 2009); *Spears v. United States*, 129 S. Ct. 840 (2009). Rather, the court must weigh each of the factors and impose a sentence that constitutes the least amount of imprisonment necessary pursuant to Section 3553(a). Moreover, as the Supreme Court reiterated, in imposing sentence, "the punishment should fit the offender and not merely the crime." *Pepper v. United States*, 131 S.Ct. 1229, 1240 (Mar. 2, 2011).

### VI. Nature and Circumstances of the Offense and History and Characteristics of Mr. Doolin

The Court must consider the specific history and character of the defendant and the specific circumstances and seriousness of the offense and impose no more of a sentence than is necessary to promote respect for the law, provide just punishment and treatment, afford adequate deterrence, protect the public, allow restitution to

victims, and avoid unwarranted inconsistency among similarly situated defendants. 18 U.S.C. § 3553(a). The Court is no longer limited in the factors it may consider, and may consider any factors it believes relevant to tailoring an individualized and appropriate sentence.[3]

Mr. Doolin exercised his constitutional right to task the prosecution to prove, beyond a reasonable doubt, the allegations lodged against him in the Superseding Indictment.[116]

On March 15, 2023, following a bench trial, the Court rendered a verdict of guilty as to counts 17, 18, 22 & 24, and a verdict of not guilty on Count 16, as charged in the Superseding Indictment [116]:

Count 17 – Theft of Government Property, in violation of 18 U.S.C. § 641.

Count 18 – Civil Disorder, in violation of 18 U.S.C. § 231(a)(3).

Count 22 – Entering and Remaining in a Restricted Building or Grounds,, in violation of 18 U.S.C. § 1752 (a)(1).

Count 24 – Entering and Remaining in a Restricted Building or Grounds, in violation of 18 U.S.C. § 1752 (a)(2), & 18 U.S.C. § 1752 (b)(2).

The personal characteristics, including personal and family data, physical

---

[3]

Under 18 U.S.C. §3661, "*no limitation* shall be placed on the information concerning the background, character, and conduct of [the defendant] which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence" (emphasis added). This statutory language certainly overrides the (now-advisory) policy statements in Part H of the sentencing guidelines, which list as "not ordinarily relevant" to sentencing a variety of factors such as the defendant's age, educational and vocational skills, mental and emotional conditions, drug or alcohol dependence, and lack of guidance as a youth.

condition, mental and emotional health, substance abuse, education, employment and financial history of Mr. Doolin also encourage the sentencing proposal herein. These factors are discussed more fully in the PSR. ¶¶ 84-114.

Mr. Doolin has no criminal history except for six minor traffic citations occurring over a 4 year period. PSR, ¶¶ 76-83.

Mr. Doolin was born on January 6, 1998, and natural his parents are currently separated.  He has good relationships with both. He has six (older) siblings and he enjoys good relationships with each of them. He had a good childhood, as he was raised in a loving and financially stable home. PSR, ¶¶ 84-88.

On May 27, 2021 He married to Morgan Doolin and they have a young son (Maverick) together. They all live together in Polk City, Florida. PSR, ¶¶ 89-90.

Mr. Doolin is in good health and no history of health problems, including mental health or substance abuse. He was not ordered to undergo drug testing in this case. PSR, ¶¶ 95-99.

Mr. Doolin was home schooled, earning his high school degree in 2015. The he attended Ridge Technical Gollege and Hillsborough Community College. Mr. Doolin has a Florida real estate license and he is a certified firefighter and emergency medical technician. (EMT) PSR, ¶¶ 100-101

Prior to his arrest in this case, he was employed for the Polk County, FL, County Fire Department as an EMT/Firefighter. He was terminated due to his arrest in the instance case and he presently works as a delivery driver for a bread company. PSR, ¶¶ 102-104.

According to the PSR, he has the ability to pay restitution and a fine in this matter. PSR, ¶¶ 114. However, if the Court imposes a period of incarceration, then he will not be able to pay a fine as he will not be gainfully employed. According to Mr. Doolin, the $4,052.00 raised by way of the on-line website (www.givesendgo.com) was used exclusively for travel & accommodation expenses incurred while he was attending the trial of this case in March, 2023. *See* PSR ¶ 110. Under this scenario, Mr. Doolin asks the Court to waive any fine in his case.

Submitted separately to the Court (and to government counsel) is a short video containing statements made by:

1.      Morgan Doolin (Wife)

2.      Jan Doolin (Mother)

3.      Aldon Haskaj (Current Employer)

4.      Will Chappel (Friend and Former Co-Worker)

5.      Joshua Doolin

(A copy of this video has been provided to the government)

Attached is a letter from Mrs. Sarah Doolin – Joshua's Sister-In-Law. She provides a unique perspective as she has known her Brother-in-Law for almost 20 years. He ". . . has always been kind, honest, friendly and possess a tender heart towards little ones and those more vulnerable . . . he is heavily involved with his church . . . He is the best dad . . . is an amazing uncle as well . . . his family needs him, their worlds revolve around him."

-16-

## VII.   Respect for the Law and Deterrence

Mr. Doolin exercised his Constitutional right to a trial. He appeared in a timely manner for all court proceedings, including the trial. His personal history and characteristics as described throughout this memorandum, as well as noted in "support" video and letter from Mrs. Sarah Doolin,  it is improbable that he will participate in dishonest, reprehensible or criminal activities in the future. There are numerous reasons to be optimistic that Mr. Doolin will not engage in further criminal behavior, including the support of his large family & friends, he is now 25 years old and determined to be a productive and responsible member of society, the promise that others have seen in him, as well as his own expected statements to this Court at the sentencing hearing about the hope he has for his future. A prison sentence would have no greater effect toward the goals of sentencing than a period of probation as proposed herein.

## VIII.  The Need to Avoid Unwarranted Sentencing Disparities, and Impose A Sentence That Reflects The Seriousness of the Offense

There is no dispute that Mr. Doolin's criminal convictions are serious and will likely have irreparable unintended consequences. Any prison term would nonetheless be an inappropriate sentence for Mr. Doolin. And, the Court should not impose a sentence which would result in an unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.

Counsel has surveyed other January 6th cases / sentences and notes one similar defendant who committed factually similar behavior. *See United States v. Aaron*

*Mostofsy*, 1:21-cr-138-JEB. Mr. Mostofsky participated in an initial wave of rioters that breached and entered into the Capitol Building. *See* 21-cr-138, Statements of Facts [94] at ¶ 9. Specifically, Mr. Mostofsky was part of a group that succeeded in entering the U.S. Capitol Building. *Id.* at ¶ 11. (Mr. Doolin did not enter the building) Later on, Mr. Mostofsky picked-up a U.S. Capitol Police bullet-proof vest and riot shield from the ground. *Id.*  Mr. Mostofsky posed for a photograph wearing the bullet-proof vest and holding the riot shield. *Id.* at 14. When Mr. Mostofsky exited the Capitol Building, U.S. Capitol Police stripped Mr. Mostofsky of the bullet-proof vest and riot shield. *Id.* at 15.

Here, Mr. Doolin's conduct is somewhat factually analogous to Mr. Mostofsky's conduct. Both defendants picked-up U.S. Capitol Police property from the ground and seemingly claimed it as their own. Indeed, these two defendants even share three out of the four same charges: 18 U.S.C. § 231(a)(3), 18 U.S.C. § 641, and 18 U.S.C. § 1752(a)(1). However, Mr. Doolin did not enter the Building – Mr. Mostofsky did so. Chief Judge Boasberg sentenced Mr. Mostofsky to 8 months' incarceration, 12 months' supervised release, 200 hours' community service, and $2000 restitution.  To avoid an unwarranted sentencing disparity among similar January 6th defendants with similar charges and conduct, the Court should fashion a sentence for Mr. Doolin which is less than that of Mr. Mostofsky, (who entered the U.S. Capitol Building) by ordering a probationary term, including a period of 6 months of home detention with work release privileges, and 150 hours of community service.

## IX.    <u>Sentencing in the COVID-19 Era</u>

Pursuant to the 18 U.S.C. §3553 (a) sentencing factors, the Court needs to consider the impact of the COVID-19 pandemic on incarcerated individuals and, on this basis, grant Mr. Doolin' request for a variant sentence – a deduction of at least three levels from the final USSG base offense level. During the past three years, COVID-19 has rampaged through the BOP facilities, causing extraordinary fear among the inmates and resulting in "lock-down" type conditions. And, with the imposition of a sentence in this case, he faces reporting to the BOP where most institutions continue to be operating under modified lock-down status because of the pandemic.

Because of COVID-19, the unusually harsher "prison" conditions, including lengthy "lock-downs," will unjustly, add to the appropriate sentence/punishment for Mr. Doolin in this case. The mental strain and stress from the fear of becoming infected, as well as possibly suffering severe health consequences, is a new risk while incarcerated and a deterrent to being locked-up again in the future. Not having the control to maintain proper social distancing and exercise proper hygiene to reduce the risks of contracting the virus were real factors for those persons incarcerated within the BOP.

Presently, it is counsel's understanding many of the BOP facilities remain on a "modified operations" status because of COVID-19. As such, if Mr. Doolin is remanded to the custody of the BOP he may well experience harsher confinement conditions because of the consequences of the pandemic.

Under the 3553(a)(2)(A) factor of imposing just punishment the court should consider the BOP "modified operations" status. Family and friends are prohibited or otherwise restricted from visiting. (And, frankly, it may not be medically or otherwise appropriate for Mr. Doolin's young son to visit him at a BOP facility) Programming, absent select UNICOR operations, is restricted and movement throughout certain detention facilities are also restricted or may be suspended. Mr. Doolin will be subjected to modified BOP operations, including the distinct possibility of being prohibited from seeing loved ones and unable to engage in rehabilitative or productive programming. CDC guidance, such as social distancing, is simply impossible to achieve in our federal prisons — particularly during pandemic related lock-downs. Incarcerated individuals share bathrooms, sinks, showers, and telephones. They eat together, and sleep in close proximity to each other. They lack the freedom to bathe regularly and, essentially  are unable to effectively disinfect their surroundings. Unsurprisingly, during the past 3 + years approximately 1/3 of all BOP tested positive for the COVID-19 virus and at least 315 inmates and 7 BOP staff have died.[4]

Accordingly, the Court should acknowledge the deleterious impact the pandemic has created on confinement conditions during the past 3+ years and fashion an appropriate variant sentence taking into account that COVID-19 remains viable and dangerous within the U.S. Prison System, as acknowledged by the ongoing restricted / modified operations within the BOP.

---

[4]  https://www.bop.gov/about/statistics/statistics_inmate_covid19.jsp – last accessed on August 5, 2023)

### X.    A Variance is Appropriate as Mr. Doolin
Engaged in Aberrant Behavior on January 6, 2023

U.S.S.G. § 5K2.20(b) (Policy Statement) advises that,

> "The Court may depart downward under this policy statement only if the
> defendant committed a single criminal occurrence or single criminal
> transaction that (1) was committed without significant planning; was of
> limited duration; and (3) represents a marked deviation by the defendant
> from an otherwise law-abiding life."

Mr. Doolin turned 23 on January 6, 2021. As one of the younger participants in

the January 6th events, he had heretofore lived an exemplary life including being a

newly certified firefighter / EMT in Polk Count, FL. In January 2021, Mr. Doolin

decided to go to Washington D.C., to accompany several family members and friends –

and because it was his birthday. He had little interest in politics, but he did believe

that there were irregularities with the 2020 presidential election which garnered his

attention. He did not engage in "significant planning," rather he merely decided to

come to Washington D.C., to participate in the "Stop The Steal Rally" on the Ellipse. It

was only while he was at the rally on the Ellipse, that he decided to proceed to the

U.S. Capitol area that afternoon. His criminal conduct that afternoon was of limited

duration and, for the reasons more fully discussed herein and supported by the letter

and video submitted with this Memo, his conduct represents a marked deviation form

an otherwise law abiding life.

Also,  U.S.S.G. § 5K2.20(b), Application Note 3(C), allows this Court to consider

Mr. Doolins' record of prior good works which, again, is evidence by his employment as

a firefighter/ EMT and by the submitted letter (from his Mrs. Sarah Doolin) and

statement of Will Chappell, and by Mr. Doolin's wife, mother and employer. (video)

Furthermore, U.S.S.G. § 5K2.20(b), Application Note 3(E), allows this Court to consider efforts to mitigate the effects of the offense. The Court will recall evidence introduce at trial, including Mr. Doolin's testimony, demonstrated that he was assisting others in need (including a police officer) in and about the inaugural stage area.

Therefore, a downward variance is appropriate as Mr. Doolin (at age 23) engaged in aberrant behavior on January 6, 2023.

**XI.    The Kinds of Sentences Available
and the Defendant's Sentencing Proposal**

According to the PSR, Mr. Doolin faces a Sentencing Guidelines-recommended term of imprisonment in the range of 24-30 months. *See* PSR, § 119. (Total Offense Level 17, criminal history category 1) And, Mr. Doolin has herein challenged the PSR Guidelines range. Of course, the Supreme Court has ruled that the punishment guidelines set out by the Commission are entirely advisory, so that range of punishment is simply one factor to be considered.[10] Congressional enactment, as opposed to the administrative guidelines from the Sentencing Commission. Undersigned counsel is unaware of anything that might warrant a sentence greater than the most severe punishment advised by the advisory guidelines by the Sentencing Commission, it is respectfully submitted that a probationary term, including a period of 6 months of home detention with work release privileges, and 150 hours of community service, are the realistic outer limits of punishment that may

be "sufficient, but not greater than necessary," to impose on Mr. Doolin.

In choosing between those two extremes, this Court is required to consider other factors set out in 18 U.S.C. § 3553 (a). Of course, the Court need not march through a rote parroting of those factors, and counsel need not drag the Court through such a recitation. The purposes of sentencing include punishment, rehabilitation, general deterrence, specific deterrence and incapacitation.

Here, Mr. Doolin has already been punished in numerous ways, some of which will continue throughout the remainder of his life. He now has a federal felony conviction as a 25 year old, which will directly impact future opportunities, e.g., his ability to go to college, return to his former employment as a firefighter / EMT and, frankly, to get a good job, among other things. He had just started his career as a firefighter / EMT.  Because of this arrest he was terminated, and any future in that field is likely now impossible. His actions have placed him on the news in every living room, not only in his home city in Florida, but throughout the entire country, with many having lumped him together with right wing extremists /groups. The extensive information that is on the internet about him and January 6th will surely follow him for the rest of his life.

Furthermore, Mr. Doolin's release conditions (Set on 7/8/2021 by M.J. Harvey) included participation in the HISP and "Stand Alone Monitoring."  He has been wearing a GPS ankle bracelet for 2+ years and there have not been any violations of the Court's Release Order. [22] Mr. Doolin reports the continuous wearing of the GPS device has been uncomfortable and, at times, embarrassing when members of the

public see the GPS device. For example, when he is at the gym exercising, or while attending Church, or while he is at work delivering baked goods to various customers. The Court should consider his excellent track record while he has faithfully adhered to all of his conditions of release during the past 2+ years, including recognition for the occasional public embarrassment caused by the GPS ankle bracelet.

As to specific deterrence, Mr. Doolin's likelihood of recidivism is low. He has zero criminal history and is proclivity to commit future crimes just does not exist. A punishment of any prison time in this case (as recommended in the PSR and by the government) would have the exact opposite effect from what is in the interest of justice. The alternatives to incarceration make financial sense, conserve bed space for individuals from which society would need greater protection and would serve the ends of justice.

Undersigned counsel respectfully submits that a sentence below the guideline range is "sufficient, but not greater than necessary, to comply with" the purposes of punishment. Any term of active incarceration will impose a serious deprivation of his liberty and reflects the seriousness of the offense, promotes respect for the law and provides a just punishment – i.e., a punishment that "fits the crime"—and it also affords adequate deterrence to other similarly situated persons who may be tempted to take the same course of action as Mr. Doolin. And the sentence proposed herein will protect the public from further crimes of  Mr. Doolin.

## CONCLUSION

District Courts have been tasked with crafting sentences that best serve the interests of justice in each individual case. Considering the arguments set forth herein Mr. Doolin respectfully asks this Court to use its discretion to fashion a sentence which takes into account the unique circumstances of Mr. Doolin's conduct, personal history, his aberrant behavior and youthful age (23) on January 6, 2021, his prior record of good works, his efforts to mitigate the effects of the offense, to avoid any sentencing disparities, and the harsh on-going pandemic conditions expected withing the BOP. As discussed herein the Court should consider and assign a downward variance at least nine levels from the final USSG base offense.

Furthermore, Mr. Doolin has had ample time to reflect on his mistakes, and he is deeply regretful. He should not be considered a future risk to the community and he has been sufficiently deterred from committing future crimes. Mr. Doolin is fundamentally a good family person, and there is nothing to suggest that he will be anything other than that moving forward in his life.

At the sentencing hearing, Mr. Doolin may publicly express his remorse and that he recognizes that he will have to live for the rest of his life with the harsh consequences of these felony convictions, both personally and in his pursuit of gainful employment.

Mr. Doolin is ready and willing to comply with all terms of any sentence imposed. He understands and recognizes that even the slightest violation of a sentencing condition may result in another period of federal imprisonment.

The prolonged loss of his liberty, including the devastating and irreparable consequences to his family, is more than enough incentive for him to respect and comply with all aspects of any sentence imposed.[5]

As presented herein, the 18 U.S.C. §3553 (a) sentencing factors, (a sentence should be "sufficient but not greater than necessary") to comply with sentencing goals, the Plea Agreement, including the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct, as well as the concerns of the court and the community, will be satisfied by proposed sentence herein.

Respectfully, Mr. Doolin asks the Court to impose a variant sentence consisting of, essentially, a probationary term, including a period of 6 months of home detention with work release privileges, and 150 hours of community service. Such a sentence does nothing to undermine the deterrent effect of sentencing. Neither does such a sentence undermine the statutory need for the Court to underscore, for Mr. Doolin and for the community, the seriousness of the offense for which he is being sentenced. As proposed herein, the sentence appropriately provides just punishment and respect for the law, so that he may continue to be with his family, and continue to live a productive and law-biding life. To do otherwise would be manifestly unjust and a miscarriage of justice.

---

[5]

Furthermore, there is a remarkable cost savings to the taxpayers of the United States if the Court imposes a shorter, rather than a longer term of incarceration. As noted in the PSR, (¶146) the monthly cost of imprisonment is $3,688.00, $2,980.00 for community confinement, and $371.00 monthly for supervision.

Finally, if a period of incarceration is imposed, Mr. Doolin is asking the Court for the following recommendations:

1.      A judicial recommendation to the Federal Bureau of Prisons his designation to be within the Tampa, Florida, geographic area. Such a designation will allow his immediate family and children to visit with him without undue financial or logistical hardship, and

2.      A judicial recommendation to the Federal Bureau of Prisons Mr. Doolin participate in the following programs: Federal Prisons Industries Program and the Occupational Industries Program.

Respectfully submitted,

THE ORENBERG LAW FIRM, P.C.

_____
Allen H. Orenberg, Bar No. 395519
12505 Park Potomac Avenue, 6th Floor
Potomac, Maryland 20854
Telephone:   (301) 984-8005
Fax:            (301) 984-8008
Cell-Phone:  (301) 807-3847
aorenberg@orenberglaw.com
Counsel to Joshua Christopher Doolin

## CERTIFICATE OF SERVICE

I hereby certify that on August 13, 2023, I caused a copy of the foregoing Defendant's Memorandum in Aid of Sentencing, with Exhibits, to be served by CM/ECF to case registered parties, and by e-mail to USPO Robert Walters.

_____

Allen H. Orenberg