**United States District Court**
**For The District of Columbia**

| | |
|---|---|
| **United States of America,** | |
| **v.** | **Case No. 21-cr-447-03 (CJN)** |
| **Joshua Doolin,** | |
| **Defendant.** | |

**Supplemental Motion for a Sentence Reduction**

Joshua Doolin, through counsel, respectfully moves this Court for an indicative ruling under Federal Rule of Criminal Procedure 37 on whether it would reduce his term of imprisonment from 18 months to 12 months and 1 day (likely modifying his projected release date from November 12, 2024, to June 13, 2024), due to the retroactively applicable amendment to the U.S. Sentencing Guidelines impacting so-called "zero-point offenders." *See* Amend. 821 (Part B), U.S.S.C. (eff. Nov. 1, 2023). The government has indicated that it opposes this motion. Given that Mr. Doolin seeks a modification to June 13, 2024, which would likely impact his placement into a halfway house at an earlier date (perhaps immediately), he respectfully requests that the Court rule on this matter on an expedited basis.

**Relevant Background**

This Court is already familiar with the factual background of this case so it will only be briefly recounted here. On January 6, Mr. Doolin was among the many people who went to the U.S. Capitol. He first walked through the restricted perimeter surrounding the Capitol grounds—which, by that time, had already been disassembled and demolished by others, *see* Sent'g Hr'g Tr., ECF No. 278 at 5—until he arrived at the Capitol's West Plaza. *See* PSR ¶ 18-

1

19.  While there, he witnessed and filmed others engaging with police officers to break through

the police line.  *Id.*  Once the police line fell, Mr. Doolin proceeded to the Upper West Terrace of

the Capitol building, where he found a U.S. Capitol Police riot shield.  PSR ¶¶ 19, 26.  Afterward,

he walked down the steps to the Lower West Terrace, where he joined a larger group of people

near the entrance to a passageway known as "the tunnel."  *See* PSR ¶ 26.  The tunnel connected

the Lower West Terrace to the interior of the Capitol building and had a group of police officers

stationed within to prevent entrance into the Capitol.  At the time, the large group of individuals

was already engaging with the officers in an attempt to get inside.  Mr. Doolin joined in that effort

by pushing the other participants from behind with the plastic riot shield.  *See* PSR ¶ 26; *see also*

Gov't Tr. Ex. 205, 1:56-5:05.  At all times, he was several rows back from the police officers and

never touched them, *see id*:



*Government Exhibit 205, 1:56 (4:16:56 p.m.)*

The police were ultimately successful in preventing their attempts and expelling the individuals

from the tunnel.  As this Court recognized, Mr. Doolin's conduct was distinct from others

because "he never assaulted an officer" and "[h]e didn't enter the Capitol or employ a

dangerous weapon." ECF No. 278 at 83.

On June 30, 2021, Mr. Doolin was arrested for his conduct relating to January 6, 2021. *See* ECF No. 7; *see also* Complaint, ECF No. 1. On July 1, 2021, a grand jury charged Mr. Doolin, along with four others, in a 19-count indictment, *see* ECF No. 8, and then superseded a couple weeks later, charging him and the four others with 27 counts, *see* ECF No. 116. While all four of his co-defendants were charged with violent offenses such as "assaulting . . . an officer" and "engaging in an act of physical violence within the United States Capitol Grounds," Mr. Doolin was not. *See* Superseding Indictment, ECF No. 116. Instead, of the 27 counts set out in the superseding indictment, only five non-violent charges applied to Mr. Doolin: (1) theft in a federal enclave, in violation of 18 U.S.C. 661 (Count 16); (2) theft of government property, in violation of 18 U.S.C. § 641 (Count 17); (3) civil disorder, in violation of 18 U.S.C. § 231(a)(3) (Count 18); (4) entering and remaining in a restricted building or grounds, in violation of 18 U.S.C. 1752(a)(1) (Count 22); and (5) disorderly or disruptive conduct in a restricted building or grounds, in violation of 18 U.S.C. § 1752(a)(2) (Count 24). *See* Superseding Indictment, ECF No. 116.

On July 8, 2021, Mr. Doolin made his initial appearance before Magistrate Judge Harvey. The government did not seek detention and Mr. Doolin was released into the High Intensity Supervision Program, *see* Min. Entry (July 8, 2021), which he complied with perfectly for over two years.

On March 15, 2023, following a bench trial, this Court acquitted Mr. Doolin of theft in a federal enclave (Count 16), but found him guilty of the remaining four charges, including theft of government property (Count 17), civil disorder (Count 18), entering and remaining in a restricted building or grounds (Count 22), and disorderly and disruptive conduct in a restricted building or

grounds (Count 24).  *See* ECF No. 263.

On August 16, 2023, Mr. Doolin appeared for sentencing.  At the time, the U.S. Sentencing Guidelines recommended 18 to 24 months' imprisonment, as he had zero criminal history points and a total offense level of 15.  *See* Statement of Reasons, ECF No. 257; PSR ¶¶ 57-62; Sent'g Tr., ECF No. 278 at 49-50.  The Court opined that a mid-range sentence might be appropriate given the seriousness of Mr. Doolin's conduct but reasoned "two things warrant a low-end of the guidelines sentence here."  ECF No. 278 at 85.  First, "evidence of obstructive conduct," for which Mr. Doolin received a two-level enhancement, "was not overwhelming as [in] . . . other cases."[1]  *Id.* at 85.  And second, Mr. Doolin had a "particularly strong argument about the current circumstances that he and his family are in," *id.* at 85, including a new wife and one-year-old son at home.  The Court ultimately imposed a sentence of "18 months, the low end of the guidelines on Count 18, and concurrent terms of 12 months on Counts 17, 22 and 24," the statutory maximums on these counts.  *See id.*

On August 21, 2023, Mr. Doolin appealed his conviction and sentence, *see* ECF No. 265, which presently remains pending with the D.C. Circuit.  *See* No. 23-3133.

---

[1] The Court found that Mr. Doolin obstructed justice, in part, because he previously told FBI agents that he did not think the photographs he took on January 6 remained on his phone, *see* GX 501 at 26:20- 26:43 (Q: "The photographs that you took, are they still on your phone or on your social media?" A: "Um, I don't think so."), when, in fact, they were on his phone and had been moved to a "Keepsafe" application.  At sentencing, Mr. Doolin explained that the FBI interview took place roughly 2.5 years after January 6, immediately after he had been on a 48-hour shift at the fire department, and he simply did not recall the photos.  *See* ECF No. 278 at 36-37.  He further explained that Keepsafe was not a hidden application; rather, it was on the front of his phone and he had given the FBI all of his passwords so they had ready access to the application if they wanted to open it.  *Id.*  In the end, the Court concluded that "Mr. Doolin did engage in certain actions that constituted obstruction, in particular, his conduct as to the Keepsafe materials and at least certain of his testimony in court here and testimony that I think, at a minimum, was untruthful in part."  *Id.* at 83-84.

On October 3, 2023, Mr. Doolin self-surrendered and began his prison sentence. He is projected to complete his prison sentence on November 12, 2024.[2]

## Argument

### A. Procedural posture.

As an initial point of clarification, this Court may entertain this motion while Mr. Doolin's case is on appeal in the D.C. Circuit. The filing of a notice of appeal generally divests a district court of jurisdiction and therefore a district court cannot grant a motion without a remand. *See, e.g., Griggs v. Provident Consumer Disc. Co.*, 459 U.S. 56, 58 (1982); Fed. R. App. P. 4(b)(3). But Federal Rule of Criminal Procedure 37 allows a district court to consider a motion and either "(1) defer considering the motion; (2) deny the motion; or (3) state either that it would grant the motion if the court of appeals remands for that purpose or that the motion raises a substantial issue." Fed. R. Crim. P. 37(a); *see also United States v. Trabelsi*, No. 06-cr-89 (RDM), 2021 WL 430911, at *12 (D.D.C. Feb. 5, 2021), *aff'd*, 28 F.4th 1291 (D.C. Cir. 2022) ("Rule 37 of the Federal Rules of Criminal Procedure provides a mechanism for a district court that lacks jurisdiction over a pending motion for relief because of a pending appeal nevertheless to indicate how it would rule on the motion if it were to have jurisdiction."). Mr. Doolin therefore requests that this Court issue an "indicative ruling" that it would grant the motion so that he may request that the D.C. Circuit issue a limited remand of the case under Federal Rule of Appellate Procedure 12.1(b).

---

[2] *See* Bureau of Prisons, *Inmate locator*, available at https://www.bop.gov/inmateloc/ (reporting an individual's projected release date).

### B.  Applicable Legal Standard

Effective November 1, 2023, the United States Sentencing Commission created a new guideline provision relating to criminal history at U.S.S.G. § 4C1.1, Adjustment for Certain Zero-Point Offenders.  Section 4C1.1 provides for a two-level decrease from the offense level for defendants who did not receive any criminal history points so long as they meet the following criteria:

1. the defendant did not receive any criminal history points from Chapter Four, Part A;
2. the defendant did not receive an adjustment under §3A1.4 (Terrorism);
3. the defendant did not use violence or credible threats of violence in connection with the offense;
4. the offense did not result in death or serious bodily injury;
5. the instant offense of conviction is not a sex offense;
6. the defendant did not personally cause substantial financial hardship;
7. the defendant did not possess, receive, purchase, transport, transfer, sell, or otherwise dispose of a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense;
8. the instant offense of conviction is not covered by §2H1.1 (Offenses Involving Individual Rights);
9. the defendant did not receive an adjustment under §3A1.1 (Hate Crime Motivation or Vulnerable Victim) or §3A1.5 (Serious Human Rights Offense); and
10. the defendant did not receive an adjustment under §3B1.1 (Aggravating Role) and was not engaged in a continuing criminal enterprise, as defined in 21 U.S.C. § 848;

U.S.S.G. § 4C1.1(a); *see also* United States Sentencing Commission, *Amendments to the Sentencing Guidelines* (Apr. 27, 2023), at 87-88 (Part B, Subpart 1).[3]

On August 31, 2023, implementing the directive of 28 U.S.C. § 994(u), the Sentencing Commission determined that the new § 4C1.1 would apply retroactively to defendants serving

---

[3] Available at https://www.ussc.gov/sites/default/files/pdf/amendment-process/reader-friendly-amendments/202305_RF.pdf.

terms of imprisonment.  *See* United States Sentencing Commission, *Amendments to the Sentencing Guidelines* (August 31, 2023).[4]

When a defendant's sentence was based on a guideline range that was retroactively lowered by the commission, like here, courts are authorized to reduce the defendant's sentence under 18 U.S.C. § 3582(c)(2).  That section provides:

> [I]n the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission pursuant to 28 U.S.C. § 994(o), upon motion of the defendant or the Director of the Bureau of Prisons, or on its own motion, the court may reduce the term of imprisonment, after considering the factors set forth in section 3553(a) to the extent that they are applicable, if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(2).

In turn, U.S.S.G. § 1B1.10—the applicable policy statement—provides that:

> In a case in which a defendant is serving a term of imprisonment, and the guideline range applicable to that defendant has subsequently been lowered as a result of an amendment to the Guidelines Manual listed in subsection (d) below, the court may reduce the defendant's term of imprisonment as provided by 18 U.S.C. § 3582(c)(2).

U.S.S.G. § 1B1.10.  Section 1B1.10 further provides that, except under certain circumstances, a court may not reduce a person's sentence "to a term that is less than the minimum of the amended guideline range," and "[i]n no event may the reduced term of imprisonment be less than the term of imprisonment the defendant has already served."  U.S.S.G. § 1B1.10(b)(2).

Courts evaluate motions under § 3582(c)(2) in two steps.  *See United States v. Bauer*, No. 21-cr-3862 (TNM), 2024 WL 324234, at *2 (D.D.C. Jan. 29, 2024).  "First, the Court

---

[4] Available at https://www.ussc.gov/sites/default/files/pdf/amendment-process/reader-friendly-amendments/202308_RF-retro.pdf.

determines whether the defendant is eligible for a reduced sentence and, if so, calculates the amended Guidelines range." *Id.* (citing *Dillon v. United States*, 560 U.S. 817, 826-27 (2010)). "Second, the Court must 'consider any applicable § 3553(a) factors and determine whether, in its discretion, the reduction authorized by reference to the policies relevant at step one is warranted in whole or in part under the particular circumstances of the case.'" *Id.* (quoting *Dillon*, 560 U.S. at 827).

### C. Mr. Doolin is eligible for a sentence reduction.

Mr. Doolin is eligible for a sentence reduction pursuant to 18 U.S.C. § 3582(c)(2) and U.S.S.G. § 1B1.10(b)(2) because his sentence was based on a guideline range that was subsequently lowered by the Sentencing Commission under a retroactive provision of Amendment 821. *See* U.S.S.G. § 1B1.10(d) (listing Amendment 821, part B, subpart 1). Applying the new § 4C1.1, Mr. Doolin's total offense level is decreased by two levels because he did not receive any criminal history points and otherwise meets the criteria listed in the guideline. *See* U.S.S.G. § 4C1.1. Thus, his offense level drops from 15 to 13, lowering his recommended Guidelines range from 18-24 months to 12-18 months:

|  | **Original Sentence** | **Application of Amendment 821 (Part B)** |
|---|---|---|
| Total offense level: | 15 | 13 |
| Criminal history points: | 0 | 0 |
| Criminal history category: | I | I |
| Guideline range: | 18-24 months | 12-18 months |
| Sentence: | 18 months | 12 months and 1 day (proposed) |
| Projected release date: | November 12, 2024 | June 13, 2024 (proposed) |

The government has indicated that it will oppose Mr. Doolin's eligibility for a sentence reduction because he was convicted of civil disorder, in violation of 18 U.S.C. § 231(a)(3). Based on this representation, undersigned counsel presumes the government believes Mr. Doolin

cannot meet the criteria that "the defendant did not use violence or credible threats of violence in connection with the offense." U.S.S.G. § 4C1.1(a)(3). The government is mistaken.

The Sentencing Guidelines Manual itself does not define the term "use violence or credible threats of violence" within § 4C1.1 or its commentary. And when no definitions are provided, courts look to dictionary definitions to determine meaning. *See Kaufman v. Nielsen*, 896 F.3d 475, 485-87 (D.C. Cir. 2018). Courts in this district have issued several opinions discussing dictionary definitions of violence when considering § 4C1.1 and found that violence is "'[t]he use of physical force, typically 'accompanied by fury, vehemence, or outrage,' and 'unlawfully exercised with the intent to harm'" or the "exertion of any physical force so as to injure or abuse." *Bauer*, 2024 WL 324234, at *2 (*quoting* Violence, Black's Law Dictionary (11th ed. 2019), and Violence, Webster's Third New International Dictionary (1993)); *see also United States v. Yang*, No. 23-cr-100 (JDB), 2024 WL 519962, at *4 (D.D.C. Feb. 9, 2024) (similar); *United States v. Kelly*, No. 21-cr-708 (RCL), 2024 WL 756642, at *7 (D.D.C. Feb. 23, 2024) (similar); *United States v. Hernandez*, No. 21-cr-445 (CKK), ECF No. 65 at 5 (D.D.C. Jan. 31, 2024) (similar).

Judge Bate's decision in *Yang* is instructive. There, Mr. Yang, a January 6 defendant who was also convicted of civil disorder in violation of § 231(a)(3), "stood near the front of the crowd close to the police line" in the Rotunda. *Yang*, 2024 WL 519962, at *1. While Mr. Yang's "body language was generally nonconfrontational," he made "physical contact with officers twice." *Id.* First, "[w]hen a scuffle broke out nearby . . . Yang briefly grabbed an officer's wrist." *Id.* Second, "[w]hen an officer approached from the side and pushed [another rioter] firmly with a

baton, Yang . . . briefly grabbed the baton as [the other rioter] fell backward." *Id.*[5]  The government included the following still photographs in its sentencing memorandum, ECF No. 34 at 11:



Image 8: Still from Government Exhibit 2 at 3:07:26 p.m., Showing Yang Grabbing Hold of the Wrist of a Police Officer Attempting to Push Rioters from the Rotunda.



Image 9: Still from Government Exhibit 2 at 3:07:26 p.m., Showing Yang Grabbing Hold of the Wrist of a Police Officer Attempting to Push Rioters from the Rotunda.

---

[5] According to the government's sentencing memorandum, "When police officers formed a line to expel the rioters from the Rotunda, Yang refused to move back or to leave, and instead, obstructed the officers. Yang pushed back and physically grabbed the arm of one officer, and when another officer pushed Yang towards the exit, Yang confronted the officer and waved his hand in his face instead of leaving. He remained near the advancing police line, and when an officer used his baton to push another rioter back, Yang physically grabbed hold of that officer's baton and interfered with the officer's attempt to clear the Rotunda. Yang finally exited the U.S. Capitol building at approximately 3:15 p.m., having been inside for roughly 30 minutes." *Yang*, No. 23-cr-100, ECF No. 34 at 2.

The government further represented that Mr. Yang "push[ed] back against the officers" and "remained at the front of the mob clashing with the officers," *id.* at 12:



Image 10: Still from Government Exhibit 1 Showing Yang Pushing Officers Working to Expel Rioters from the Rotunda at Approximately 3:08:56 p.m.

Judge Bates concluded that Mr. Yang's actions did not constitute "violence" within the meaning of § 4C1.1. *Id.* at *4. While Mr. Yang may have used physical force in that "he briefly made physical contact with two officers, the Court [found] that this contact was not made with an intent to harm." *Id.* "Nor was this contact accompanied by 'fury, vehemence, or outrage,' or the like." *Id.* As the Court explained, "[t]he throughline of the definitions of 'violence' is a degree of aggressiveness that [wa]s not present in th[at] case." *Id.* And, even though Mr. Yang was "near the front of the line opposing the line of officers," and twice made physical contact with officers, the Court concluded that "Yang did not act with the degree of aggression necessary to fairly characterize his actions as 'violence.'" *Id.*

The same reasoning applies with even more force here. The evidence at trial

demonstrated that Mr. Doolin did not punch, kick, grab, or throw any objects at law enforcement officers—as this Court recognized, Mr. Doolin "never assaulted an officer." *See* Sent'g Tr., ECF No. 278 at 83. While he was shouting and part of the group pushing against the police line in the tunnel, the group consisted of hundreds of individuals, and Mr. Doolin was several rows from the front of the pack. *See* Gov't Tr. Ex. 205, at 01:56-05:05 (4:16:56 p.m. to 4:20:05 p.m.). Many individuals boarding the metro at rush hour or attending a music concert have engaged in similar conduct; yet most would not describe their conduct as "violent." Like those individuals, Mr. Doolin's conduct did not involve the "degree of aggression necessary to fairly characterize his actions as violence." *Yang*, 2024 WL 519962, at *4. Nor did his conduct involve the intent to harm or injure anyone—rather, it shows he intended to enter the restricted area of the Capitol, in violation of 18 U.S.C. § 1752(a)(1).

The government's own charging decisions belie the contention that Mr. Doolin's conduct was violent or assaultive. Unlike *all* his codefendants who were charged with "assaulting . . . an officer" and "engaging in an act of physical violence within the United States Capitol Grounds," Mr. Doolin was not. *See* Superseding Indictment, ECF No. 116.

The government has indicated to counsel that it believes Mr. Doolin is ineligible for a sentence reduction because he was convicted of civil disorder, in violation of 18 U.S.C. § 231(a)(3), as if that conviction necessarily means he engaged in violence. It does not. *See, e.g.*, *United States v. Mostofsky*, 579 F. Supp. 3d 9, 24 (D.D.C. 2021) (finding that § 231(a)(3) reaches beyond "only violent conduct"); *United States v. McHugh*, 583 F. Supp. 3d 1, 29 (D.D.C. 2022) (similar); *Yang*, 2024 WL 519962, at *2 (granting Amendment 821 sentence reduction where "Yang pleaded guilty to the civil disorder count," in violation of § 231(a)(3)). In fact, the

government should know that a § 231(a)(3) conviction does not require violent conduct because it has expressly argued to other courts that the offense "does not require a particular defendant to engage in acts of violence" and "it is possible for nonviolent acts to also fall within the statute's prohibition."  *See* Gov't Opp'n to Mot. to Dismiss in *Mostofsky*, No. 21-cr-138 (JEB), ECF No. 57 at 48-49.  It would be wholly inconsistent if the government now claims that a § 231(a)(3) conviction is disqualifying under the violence factor in U.S.S.G. § 4C1.1(a)(3).

While "civil disorder" is defined as a "public disturbance involving acts of violence by groups of three or more people, which (a) causes an immediate danger of injury to another individual, (b) causes an immediate danger of damage to another individual's property, (c) results in injury to another individual, or (d) results in damage to another individual's property," Bench Verdict, ECF No. 263, at 16, the government was correct that the elements of the offense do not require the particular defendant to engage in violence.  *See id.*  To convict Mr. Doolin of civil disorder, for instance, the Court only found that Mr. Doolin "committed an act or attempted to commit an act with the intended purpose of obstructing, impeding or interfering with one or more law enforcement officers" who was engaged in his lawful duties "incident to and during a civil disorder."  Bench Verdict, ECF No. 263, at 16.  In other words, this Court's verdict turned on the finding that Mr. Doolin obstructed or impeded an officer *during* a civil disorder—not that Mr. Doolin *caused* the violent conduct during a civil disorder.  This is a material difference under U.S.S.G. § 4C1.1.

Courts in this district to have addressed the issue have uniformly found that 4C1.1(a)(3)'s violence factor requires the defendant to have *personally* used violence or made credible threats of violence to be disqualified; it is simply not enough that Mr. Doolin was part of a crowd where

*others* engaged in violence. *See, e.g.*, *Yang*, 2024 WL 519962, at *4 (rejecting the government's violence-by-presence theory of § 4C1.1(a)(3) and "join[ing] the view of at least six other judges in this District," including Kollar-Kotelly, McFadden, Friedrich, Mehta, Howell, and Boasberg). Hence, even though Mr. Doolin was convicted of civil disorder, he did not "use violence" himself and is thus eligible for a sentence reduction under Amendment 821. *See id.*

### D. Reducing Mr. Doolin's sentence is consistent with the § 3553(a) sentencing factors and U.S.S.G. § 1B1.10.

In determining whether to reduce an eligible defendant's sentence, the Court must consider "the factors set forth in section 3553(a) to the extent that they are applicable," 18 U.S.C. § 3582(c)(2), including the applicable Guidelines range; the nature and circumstances of the offense and the history and characteristics of the defendant; the need for the sentence imposed; and the need to avoid unwarranted sentence disparities, *see* 18 U.S.C. § 3553(a). The applicable Guidelines policy statement further provides that the Court must consider "the nature and seriousness of the danger to any person or the community that may be posed by a [sentence] reduction," and may consider the defendant's "post-sentencing conduct." U.S.S.G. § 1B1.10 cmt.n.1(B)(ii), (iii).

At Mr. Doolin's sentencing, this Court considered all the § 3553(a) factors and concluded that an 18-month sentence—the "low-end" of Mr. Doolin's then-applicable guidelines range—was appropriate based on the record. That record, as the Court recognized, showed that

Mr. Doolin was a family man, with a new wife and baby:



The Court further recognized that Mr. Doolin was "25 years old," a "hard worker," and had no criminal history.  Sent'g Hr'g Tr., ECF No. 278 at 80.  His family and employer submitted video statements on his behalf.  And his sister-in-law described him as a "kind, honest, friendly" individual who "possesses a tender heart toward others, particularly toward little ones and those more vulnerable."  ECF No. 253-1.  In the Court's view, "Mr. Doolin pose[d] a low risk of recidivism," ECF No. 278 at 81, and his "history and characteristics weigh[ed] significantly in his favor," *id.* at 80; *see also id.* at 81 ("I think it very unlikely that Mr. Doolin will re-offend.").

Since Mr. Doolin's sentencing, the only § 3553(a) factors that have materially changed are his applicable guideline range and post-sentencing conduct, both of which support a sentence reduction.  On October 3, 2023, Mr. Doolin self-surrendered into BOP custody.  *See* Ex. 1, BOP Records at 9.  Since then, he has been a model inmate.  He has taken education classes and worked toward achieving his GED.  *See id.* at 3.  He has worked as a prison orderly and paid off his financial obligations.  *Id.* at 4-6.  And, he has no disciplinary infractions.  *Id.* at 7; *see also cf. United States v. Greene*, 561 F. Supp. 3d 1, 16 (D.D.C. 2021) ("It is not unusual for inmates to

receive reprimands in the prison context.").  This model behavior is consistent with this Court's prior determination that it is "very unlikely that Mr. Doolin will re-offend."  ECF No. 278 at 81.

The only other § 3553(a) factor that has arguably changed is the information informing this Court's weighing of unwarranted sentencing disparities, given that at the time of Mr. Doolin's sentencing in August 2023, fewer January 6 defendants had been sentenced than today, so there are now more cases and sentences to consider under 18 U.S.C. § 3553(a)(6).  This factor, too, supports Mr. Doolin's request for a sentence reduction.  While no two January 6 cases are the same, counsel has endeavored to find defendants who, like Mr. Doolin, had little or no criminal history and were either charged or convicted of 18 U.S.C. § 231(a)(3) or more serious offenses—given that Mr. Doolin's § 231(a)(3) conviction drove his guideline calculation.  The sentences in the cases below reflect that Mr. Doolin's request for a sentence reduction to 12 months and 1 day (amounting to a reduction of roughly 6 months) is more than appropriate:

**1.**  Just recently, in *United States v. Jackson*, No. 22-cr-230, Judge Contreras sentenced Mr. Jackson to "**36 months of Probation with conditions**," *see* Min. Entry (Mar. 21, 2024) (emphasis added), even though his conduct was far more violent and assaultive than Mr. Doolin's.  According to the government's sentencing memorandum, Mr. Jackson was near the tunnel of the Capitol where he "hurled a large cone at the officers" and then, "using a stolen police shield, and with a running start, he rammed the frontline of officers, causing two of them to fall."  ECF No. 80 at 2; *see also id.* at 12-15 (showing images of the clash); *see also* Statement of Offense, ECF No. 61 at 4 (similar).  Mr. Jackson was charged with six counts, including assaulting an officer using a dangerous weapon in violation of 18 U.S.C. § 111(a)(1) and (b), civil disorder in violation of § 231(a)(3), among other violent offenses, *see* ECF No. 14, but he

ultimately pled guilty to a single count of assaulting a police officer in violation of § 111(a)(1), ECF No. 60.  Demonstrating that Mr. Jackson's violent and assaultive conduct was more egregious than Mr. Doolin's is the fact that the government recommended 41 months' imprisonment at sentencing, *see* ECF No. 80 at 1, unlike the 24 months recommended here. Even so, Mr. Jackson was sentenced to 36 months' *probation* with conditions, whereas Mr. Doolin was sentenced to 18 months' *incarceration*.

      **2.**  Similarly, after Mr. Doolin was sentenced, in *United States v. Young*, No. 21-cr-617, Judge Friedrich sentenced Mr. Young to **8 months' incarceration** after he pled guilty to seven counts: (1) assaulting, resisting, or impeding certain officers, in violation of 18 U.S.C. § 111(a)(1); (2) civil disorder, in violation of 18 U.S.C. § 231(a)(3); (3) entering and remaining in a restricting building or grounds, in violation of 18 U.S.C. § 1752(a)(1); (4) disorderly and disruptive conduct in a restricted building or grounds, in violation of 18 U.S.C. § 1752(a)(2); (5) engaging in physical violence in a restricting building or grounds, in violation of 18 U.S.C. § 1752(a)(2); (6) disorderly conduct in a Capitol Building or grounds, in violation of 40 U.S.C. § 5104(e)(2)(D); and (7) act of physical violence in the Capitol grounds or buildings, in violation of 40 U.S.C. § 5104(e)(2)(F). *See* Judgment, ECF No. 38.  Mr. Young's conduct was arguably worse than Mr. Doolin's. According to the government's sentencing memorandum, Mr. Young was one of several rioters who "lifted and pushed a metal bicycle rack barricade into a wall of officers" and later "attacked another line of officers in the same location."  ECF No. 35 at 2.  In addition to assaulting officers, Mr. Young tried to "sabotage law enforcement" by letting "the air out of the tire of a government vehicle."  *See id.*  Demonstrating that Mr. Young's conduct was worse than Mr. Doolin's is the fact that the government recommended 40 months' imprisonment at

sentencing, unlike the 24 months here. *See id.* Even so, Mr. Young received a sentence of 8 months' incarceration, whereas Mr. Doolin received a sentence of 18 months.

3.  After Mr. Doolin was sentenced, in *United States v. Wren*, No. 21-cr-599, Judge Walton sentenced Mr. Wren to **12 months and 1 day** after he was found guilty by a jury of three offenses: (1) civil disorder, in violation of 18 U.S.C. § 231(a)(3); assault on a federal officer, in violation of 18 U.S.C. 111(a)(1); and (3) entering and remaining in a restricted building or grounds, in violation of 18 U.S.C. § 1752(a)(1). *See* Verdict, ECF No. 117; Judgment, ECF No. 173. Mr. Wren's conduct was arguably worse than Mr. Doolin's, as he "assault[ed] a line of police officers attempting to clear the Upper West Terrace so that the electoral certification could continue." *See* Gov't Sent'g Mem., ECF No. 158 at 2. Indeed, the government requested 51 months' imprisonment at sentencing (versus 24 months here), demonstrating that the government viewed Mr. Wren as more culpable than Mr. Doolin. Even so, Mr. Wren received a sentence of 12 months and 1 day, whereas Mr. Doolin received a sentence of 18 months.

4.  After Mr. Doolin was sentenced, in *United States v. Crowley*, No. 23-cr-45, Judge McFadden sentenced Mr. Crowley to **8 months' incarceration, and 6 months of home confinement as a condition of supervised release.** *See* Judgment, ECF No. 141. Like Mr. Doolin, Crowley joined the group of rioters in the tunnel—except Mr. Crowley's conduct was arguably worse given that he persisted in the tunnel "[d]espite being pepper sprayed at least seven times" and "at one point push[ed] against the riot shield of MPD Officer Henry Foulds." *See* Gov't Sent'g Mem, ECF No. 130 at 2-3. Like Mr. Doolin, Mr. Crowley was found guilty after a bench trial of four offenses, including (1) civil disorder, in violation of 18 U.S.C. § 231(a)(3); (2) entering and remaining in a restricted building or grounds, in violation of 18

U.S.C. § 1752(a)(1); (3) disorderly or disruptive conduct in a restricted building or grounds, in violation of 18 U.S.C. § 1752(a)(2); and (4) impeding passage through the Capitol building, in violation of 40 U.S.C. § 5104(e)(2).[6]  *See* Bench Verdict, ECF No. 111.  And like Mr. Doolin, Mr. Crowley appears to have had a total offense category of 15 and criminal history category of I, resulting in an advisory guideline range 18 to 24 months' imprisonment.  *Compare id.* at 17, with Def.'s Sent'g Mem., ECF No. 131 at 1-2 (outlining PSR calculations).[7]  Although Mr. Doolin and Mr. Crowley engaged in similar conduct, Mr. Crawley received a sentence of 8 months incarceration and 6 months of home confinement as a condition of supervised release, whereas Mr. Doolin received a sentence of 18 months incarceration.

**5.** Although it occurred before Mr. Doolin's sentencing, in *United States v. Leffingwell*, No. 21-cr-05, Judge Jackson sentenced Mr. Leffingwell to **6 months' incarceration**. Mr. Leffingwell's conduct was unquestionably worse than Mr. Doolin's, as he "struck [multiple officers] in the head."  *See* Gov't Sen't Mem., ECF No. 31 at 3, 8.  Specifically, according to the government's sentencing memorandum, Mr. Leffingwell was a 52-year-old veteran who "first punched Officer D.A. in the head, and then as he continued to swing, he punched Officer W.H. in the head, before eventually punching Officer D.A. once more."  ECF No. 31 at 3, 8.  As a consequence, he was charged with civil disorder, two counts of assaulting an officer, and several other counts for violent offenses.  *See* Superseding Indictment, ECF No. 15.  Mr. Leffingwell

---

[6] The first three convictions overlap between Mr. Doolin and Crowley with the only difference in the fourth conviction—Mr. Crowley was convicted of obstructing and impeding passage through the Capitol Grounds, whereas Mr. Doolin was convicted of theft of government property (an MPD riot shield).

[7] Although the defense requested a two-point variance based on the retroactive application of Amendment 821—which had not yet taken effect—it is unclear from the public docket whether Judge McFadden granted that request.

ultimately pled guilty to a single count of assaulting an officer, in violation of 18 U.S.C. §

111(a)(1).  *See* Plea Agreement, ECF No. 25.  Despite Mr. Leffingwell's more assaultive conduct,

he received a sentence of 6 months' incarceration, whereas Mr. Doolin received a sentence of 18

months' incarceration.

**6**. Although it was before Mr. Doolin's sentencing, in *United States v. Grayson Sherrill*,

No. 21-cr-282, Judge Chutkan sentenced Mr. Sherrill to **7 months' incarceration**, *see* ECF No.

129, even though his conduct was far more violent and assaultive than Mr. Doolin's.  According

to the government's sentencing memorandum, "Sherrill violently swung and struck [a

vulnerable] officer with a metal pole."  ECF No. 124 at 2, 6.  Mr. Sherrill was charged with eight

counts, including assaulting an officer using a dangerous weapon in violation of 18 U.S.C. §

111(a)(1) and (b), civil disorder in violation of § 231(a)(3), among other violent offenses, *see* ECF

No. 57, but he ultimately pled guilty to a single count of assaulting a police officer in violation of

§ 111(a)(1), ECF No. 105.  Demonstrating that Mr. Sherrill's violent and assaultive conduct was

far worse than Mr. Doolin's is the fact that the government recommended 41 months'

imprisonment at sentencing, *see* ECF No. 124 at 1, compared to 24 months here.  Even so, Mr.

Sherril was sentenced to 7 months, whereas Mr. Doolin was sentenced to 18 months.

**7.** Finally, only a few days before Mr. Doolin was sentenced, in *United States v. Steele*, No.

21-cr-28, Judge Mehta sentenced Ms. Steele to **12 months and 1 day of imprisonment and 6**

**months of home detention as a condition of supervised release,** after she was convicted in a

jury trial of seven counts, including (1) conspiracy to obstruct an official proceeding, in violation

of 18 U.S.C. § 1512(k); (2) obstruction of an official proceeding and aiding and abetting, in

violation of 18 U.S.C. §§ 1512(c)(2) and 2; (3) conspiracy to use force, intimidation, or threats to

prevent officers of the United States from discharging their duties, in violation of 18 U.S.C. § 372; (4) entering and remaining in a restricted building or grounds, in violation of 18 U.S.C.§ 1752(a)(1); (5) destruction of government property and aiding and abetting, in violation of 18 U.S.C. §§ 1361 and 2; (6) civil disorder and aiding and abetting, in violation of 18 U.S.C. §§ 231(a)(3) and 2; and (7) tampering with documents or other objects, in violation of 18 U.S.C. § 1512(c)(1).  There can be no question that her conduct was far worse than Mr. Doolin's.

According to the government's sentencing memorandum, Ms. Steele drove from her "residence to the D.C. area with two handguns" and "eventually equipped herself with an Oath Keepers shirt, tactical vest, and other gear," before she "joined the stack of Oath Keepers that breached the Capitol."  *See* ECF No. 1024 at 53.  She "confronted and pushed against police officers" and after returning to her residence "promptly burned all of [her] gear [she] wore inside the Capitol" to "destroy the trail of evidence of what [she] had participated in."  *Id.* at 53.  The government described her as "arguably the most culpable" of all her co-defendants.  *Id.* at 51.  And her conduct was indisputably more serious than Mr. Doolin's, as the government recommended a sentence within the range of 97 to 121 months' incarceration (versus 24 months like recommended here).  *See id.* at 1, 47.  In the end, Judge Mehta imposed an imprisonment sentence of 12 months and 1 day, plus 6 months home detention as a condition of supervised release.[8]

All told, the Court previously considered all the sentencing factors under § 3553(a) and determined that a low-end sentence under the then-applicable guidelines was appropriate.  Now

---

[8] The list of examples could go on, but the point would remain the same: Mr. Doolin's request for a sentence reduction to 12 months and 1 day is supported by the need to avoid unwarranted sentence disparities.

that the Commission has concluded that Mr. Doolin's sentencing range was greater than necessary, the Court should account for the Commission's judgment by revising Mr. Doolin's sentence proportionally downward to the low-end of his amended Guidelines range.  The only § 3553(a) factors that have materially changed support such a reduction.  Accordingly, Mr. Doolin respectfully requests that the Court convert the low-range sentence he received under the old guidelines (18 months with a range of 18-24 months) to a low-range sentence under the now-applicable guidelines (12 months and 1 day with a range of 12-18 months).

## Conclusion

For the above reasons, Mr. Doolin respectfully requests that this Court issue an indicative ruling that it would grant his motion for a sentence reduction and reduce his term of imprisonment to 12 months and 1 day should the D.C. Circuit issue a remand for that limited purpose.

Respectfully submitted,

A. J. KRAMER
FEDERAL PUBLIC DEFENDER

_____/s/_____
BENJAMIN FLICK
Research & Writing Attorney
Federal Public Defender's Office
625 Indiana Ave, NW, Suite 550
Washington, D.C. 20004