**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | |
| **v.** | **Case No. 21 Cr. 447 (CJN)** |
| **JOSHUA CHRISTOPHER DOOLIN,** | |
| **Defendant.** | |

**GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION**
**FOR SENTENCE REDUCTION**

The United States, by and through its attorney, the United States Attorney for the District of Colombia, respectfully submits this response to the defendant's motion for an indicative ruling that this court would grant a six-month sentence reduction based on the newly enacted U.S.S.G. § 4C1.1. ECF Nos. 298-1, 306. For the following reasons, the defendant's sentence should not be modified.

## I.    FACTUAL BACKGROUND

On January 6, 2021, the defendant, Joshua Doolin, was an active and enthusiastic participant in the riot at the United States Capitol. That morning, while at then-President Trump's "Stop the Steal" rally on the National Mall, he texted a friend that he "wouldn't mind dying with [his] family storming the capital [sic] on [his] birthday!" then joined the mob that did storm the Capitol. GX 719. Doolin passed toppled barricades and heard the sounds of munitions being deployed as he and his friends made their way to the West Plaza of the Capitol. GX 71.24. There, he watched and filmed as his friends assaulted the line of police officers positioned between them and the Capitol building. He was also sprayed with crowd-control spray. When the line broke, Doolin surged up a set of steps onto the inaugural stage, cheering that he and his fellow rioters

were "taking our Capitol back, baby!" and that he "could not be more proud of [his] country right now."  GX 714.3, GX 714.32.

Doolin then climbed to the Upper West Terrace of the Capitol building, where he stole a riot shield belonging to the United States Capitol Police ("USCP"), and remained there for over an hour, observing and celebrating the chaos below.  At one point, as he turned his camera to film the police officers positioned behind him, Doolin remarked that "there's about a handful of cops left in our way."  GX 714.22  Doolin then descended to the Lower West Terrace.  There, he joined a mass of rioters pushing against a police line in a narrow corridor leading from the inaugural stage to the interior of the Capitol building – the "Tunnel."  Using the stolen riot shield to push forward and lend his weight and strength to the rioters' collective force, he attempted to break through the line to gain entrance to the building.

On July 13, 2022, a federal grand jury returned a superseding indictment charging Doolin with five counts:  Theft in a Federal Enclave, in violation of 18 U.S.C. § 661 (Count Sixteen), Theft of Government Property, in violation of 18 U.S.C. § 641 (Count Seventeen), Interfering with Law Enforcement During Civil Disorder, in violation of 18 U.S.C. § 231(a)(3) (Count Eighteen), Entering and Remaining in a Restricted Building or Grounds, in violation of 18 U.S.C. § 1752(a)(1) (Twenty-Two), and Disorderly and Disruptive Conduct in a Restricted Building or Grounds, in violation of 18 U.S.C. § 1752(a)(2) (Twenty-Four).  On March 15, 2023, following a bench trial, Doolin was convicted of Counts Seventeen, Eighteen, Twenty-Two, and Twenty-Four.

On August 16, 2023, after submissions and arguments by both parties, this Court sentenced Doolin.  The Court calculated his total offense level as 15, including a two-level enhancement for obstruction of justice pursuant to U.S.S.G. § 3C1.1, and criminal history category as I, resulting in

a guidelines range of 18-24 months' imprisonment.  Sent. Tr. at 52-53, 78.  This Court imposed a

total term of 18 months of incarceration, followed by 36 months of supervised release.  *Id.* at 85.

On August 21, 2023, Doolin filed a notice of appeal.  ECF No. 265.

On March 5, 2024, Doolin's trial counsel filed a *pro se* Motion for Sentence Reduction on

Doolin's behalf.  ECF No. 298.  On March 25, 2024, the Federal Public Defender's Office

supplemented the motion, seeking an indicative ruling regarding whether the Court would reduce

his term of imprisonment by almost six months—to twelve months and one day—due to the

retroactive application of U.S.S.G. § 4C1.1.  ECF No. 306.

## II.      RETROACTIVE APPLICATION OF U.S.S.G. § 4C1.1

U.S.S.G. § 4C1.1 provides for a two-level reduction in offense level for offenders with no

criminal history points who are not subject to any of ten exclusionary criteria. One of those criteria

requires that "the defendant did not use violence or credible threats of violence in connection with

the offense." U.S.S.G. § 4C1.1(a)(3).

Section 4C1.1 may be applied retroactively to previously sentenced inmates, pursuant to

U.S.S.G. § 1B1.10. Such a reduction may occur as provided in 18 U.S.C. § 3582(c)(2), which

provides:

> [I]n the case of a defendant who has been sentenced to a term of imprisonment
> based on a sentencing range that has subsequently been lowered by the Sentencing
> Commission pursuant to 28 U.S.C. 994(o), upon motion of the defendant or the
> Director of the Bureau of Prisons, or on its own motion, the court may reduce the
> term of imprisonment, after considering the factors set forth in section 3553(a) to
> the extent that they are applicable, if such a reduction is consistent with applicable
> policy statements issued by the Sentencing Commission.

Accordingly, a reduction pursuant to U.S.S.G. § 1B1.10 is not mandatory. Instead, a "court

*may* reduce the term of imprisonment, after considering the factors set forth in section 3553(a)."

18 U.S.C. § 3582(c)(2) (emphasis added).  Additionally, any proceeding under Section 3582(c)(2)

is not a full resentencing, so a court is not permitted to reconsider other sentencing determinations left unaltered by the Section 4C1.1 amendment. *Dillon v. United States*, 560 U.S. 817, 825-826 (2010); U.S.S.G. § 1B1.10(a)(3).

A court considering a motion for a sentence reduction due to § 4C1.1 must follow a two-step process. *Id.* at 826. First, the court must determine whether the defendant is eligible for a sentence reduction. A defendant is only eligible for a § 4C1.1 reduction if:  (1) the defendant has no criminal history points; (2) the defendant is not subject to any of the exclusionary criteria set forth in U.S.S.G. § 4C1.1(a); (3) the amended guidelines range is lower than the range applied at the original sentencing hearing; and (4) the defendant did not previously receive a sentence at or below the bottom of the now-amended range other than for providing substantial assistance. *See* U.S.S.G. §§ 1B1.10, 4C1.1; *Dillon v. United States*, 560 U.S. at 827.

Even if step 1 is satisfied, a sentencing reduction is not required. Instead,  § 1B1.10 directs that before reducing a defendant's sentence, the court must "consider the factors set forth in 18 U.S.C. § 3553(a) in determining … whether a reduction in the defendant's term of imprisonment is warranted" as well as "the extent of such a reduction."  U.S.S.G. § 1B1.10 app. note 1(B)(i), (ii); *see also id.* Background ("The authorization of such a discretionary reduction . . . does not entitle a defendant to a reduced term of imprisonment as a matter of right.").

In particular, the court must consider public safety considerations, and may consider information regarding the post-sentencing conduct or situation of the defendant, whether positive or negative. *See*, *e.g.*, *United States v. Darden*, 910 F.3d 1064, 1068 (8th Cir. 2018). Section 1B1.10 application note 1(B)(ii) directs that "[t]he court shall consider the nature and seriousness of the danger to any person or the community that may be posed by a reduction in the defendant's term of imprisonment." Application note 1(B)(iii) further directs that "[t]he court may consider

post-sentencing conduct of the defendant that occurred after the imposition of the original term of imprisonment." That means the court may, but is not required, to consider the defendant's post-sentencing rehabilitation, if any. *See United States v. Rodriguez-Rosado*, 909 F.3d 472, 481 (1st Cir. 2018); *United States v. Banderas*, 858 F.3d 1147, 1150 (8th Cir. 2017). Such conduct would include social media posts and other statements relating to the Capitol riot on January 6, 2021.

If the court decides in its discretion to grant a reduction in sentence, it generally may not reduce the term of imprisonment to a term that is less than the minimum of the new guideline range. U.S.S.G. § 1B1.10(b)(2)(A). Thus, the court may not reduce the sentence below the range provided by the amended guideline, and "in no event may the reduced term of imprisonment be less than the term of imprisonment the defendant has already served." U.S.S.G. § 1B1.10(b)(2)(C).

## III.    NO SENTENCING REDUCTION IS WARRANTED

### A.  Doolin is not eligible for a reduction under § 4C1.1.

Doolin is not eligible for a sentencing reduction under § 4C1.1 because he "use[d] violence or credible threats of violence in connection with the offense." U.S.S.G. §  4C1.1(a)(3).  While the Guidelines Manual does not define "violence or credible threats of violence," courts in this district have looked to dictionary definitions for guidance and concluded that violence includes "'[t]he use of physical force, typically 'accompanied by fury, vehemence, or outrage,' and 'unlawfully exercised with the intent to harm'" or the "exertion of any physical force so as to injure or abuse," and that a "'credible threat of violence' is a believable expression of an intention to use physical force to inflict harm."  *United States v. Bauer*, 21 Cr. 386 (TNM), 2024 WL 324234, at *2-3 (D.D.C. Jan. 29, 2024).  *See also United States v. Williams*, 21 Cr. 618 (ABJ), ECF No. 165 at 3-4 (Mar. 22, 2024); *United States v. Kelly,* 21 Cr. 708 (RCL), 2024 WL 756642, at *7 (D.D.C. Feb. 23, 2024) ("A 'credible' threat of violence is one that 'offer[s] reasonable grounds for being

believed or trusted.'"); *United States v. Hernandez*, 21 Cr. 445 (CKK), ECF No. 65 at 5 (D.D.C. Jan. 31, 2024).

Over the course of approximately six minutes, Doolin used the riot shield to forcefully push into the Tunnel and, along with the mob that had gathered there, "attempted to overtake the rows of police protecting this entrance to the Capitol with the crowd around him," Sent. Tr. at 79. While Doolin was not in direct physical contact with police officers, each row of rioters supported and reinforced the others, collectively using their force to push against officers and attempt to break the police line. Doolin himself advanced significantly into the Tunnel and it is clear from the trial evidence that he was using the shield to apply force.[1] *See* GX 205. Further, Doolin's objective—"to go inside" a closed government building protected by police officers who were attempting to expel rioters, GX 501 at 58:28-58:36—clearly required the use of violence. *See United States v. Kelly*, 21 Cr. 708 (RCL), 2024 WL 756642, at *7 (D.D.C. Feb. 23, 2024) (denying reduction pursuant to § 4C1.1 when defendant "used . . . force in an attempt to overcome the officer's resistance to granting him access to the inner recesses of the Capitol," noting that the defendant "did not passively react to the officer; [but] was intent on getting past him and affirmatively used physical means to achieve that goal").

Doolin argues that he should be eligible for a reduction pursuant to § 4C1.1 because he was convicted of obstructing, impeding, or interfering with law enforcement, in violation of 18 U.S.C. § 231(a)(3), but was not charged with or convicted of assault of engaging in an act of physical violence. ECF No. 306 at 12. But this is not the inquiry. Defendants whose counts of conviction do not require proof of assault have been found to be ineligible for a sentence reduction

---

[1] The evidence also demonstrated that Doolin eagerly advanced to the entrance to the Tunnel, GX 415, and that, while several other rioters attempted to leave the Tunnel around this time, Doolin did the opposite, GX 416 at 00:10-00:40; GX 205 at 03:10-03:45.

under § 4C1.1(a)(3).  *See, e.g., Bauer*, 21 Cr. 386 (TNM), 2024 WL 324234 (denying reduction for a defendant convicted of violations of 18 U.S.C. §§ 1512, 1752(a)(1), 1752(a)(2); 40 U.S.C. §§ 5104(e)(2)(D), (G)); *Kelly*, 21 Cr. 708 (RCL), 2024 WL 756642 (denying reduction for a defendant convicted of violations of 18 U.S.C. §§ 1512, 1752(a)(1), 1752(a)(2); 40 U.S.C. §§ 5104(e)(2)(A), (C), (D), (G)); *United States v. Andrulonis,* 23 Cr. 085 (BAH), Sent. Tr. at 12 (denying reduction for a defendant convicted of violating 18 U.S.C. § 1752(a)(1) and noting that "the fact that this defendant is not personally charged with assaulting or attacking officers is . . . not sufficient to make him eligible for the zero criminal history score offense-level reduction.").

The circumstances in the Tunnel on January 6, 2021, in which scores of rioters collectively pushed against a line of police officers standing between them and the interior of the Capitol building, were violent.  Each rioter who participated contributed to that violence and to the dangers posed to the officers positioned there.  Numerous courts that have assessed individual defendants' participation in that effort have held that those defendants "used violence or credible threats of violence" and were therefore not eligible for a § 4C1.1 reduction.  *See United States v. Giberson*, 21 Cr. 115 (CJN); *United States v. Kepley*, 23 Cr. 162 (BAH); *United States v. Arthur Reyher and Jessica Reyher*, 23 Cr. 138 (RBW).[2]  In *Giberson*, this Court held that the defendant's conduct in the Tunnel between approximately 3:08 p.m. and 3:18 p.m.—attempting to create a wall of riot shields against the line of officers and to pull a shield away from the officer and encouraging other rioters to enter the Tunnel and join the effort—was disqualifying pursuant to § 4C1.1(a)(3).  *See Giberson*, 23 Cr. 115 (CJN), ECF 26 (Govt. Sent. Mem.) at 5-10.  In *Kepley*, the defendant entered the Tunnel at approximately 4:17 p.m. and remained there until rioters were expelled at 4:21 p.m.

---

[2] The government does not yet have transcripts of the sentencing proceedings in *Giberson*, *Kepley*, or *Reyher*.  The undersigned has consulted with the Assistant United States Attorneys who handled those hearings.

The government did not allege that Kepley laid hands on or otherwise assaulted officers. *Kepley*, 23 Cr. 162 (BAH), ECF No. 50 (Govt. Sent. Mem.) at 7-8.  Judge Howell held that the defendant's participation in a "heave-ho" effort against police—the same effort that Doolin joined—involved a credible threat of violence against the officers in the Tunnel. *See United States v. Nolf*, 23 Cr. 162 (BAH), ECF 63 at 14 (Govt. Sent. Mem. describing Judge Howell's holding in *Kepley*). Arthur and Jessica Reyher entered the Tunnel three separate times, approaching the police line, chanting, rocking collectively with other rioters in an attempt to break the line, and encouraging other rioters to "push." *See Reyher*, 23 Cr. 138, ECF No. 140 (Govt. Sent. Mem.) at 7-21.  In that case, Judge Walton held that, in a context where the only way to get past police is through violence, any attempt to do so necessitates the use of violence and the defendants were not eligible for a reduction under § 4C1.1.  Doolin, like these defendants, actively contributed to the violence against the officers in the Tunnel.  As the Court noted at sentencing, Doolin's actions "had the potential to result in harm to those officers." Sent. Tr. at 79-80.  He is therefore disqualified from receiving a sentencing reduction.

Doolin's reliance on *United States v. Yang* is unavailing. *See* ECF 306 at 9-12.  In finding § 4C1.1 applicable to Yang, Judge Bates highlighted that Yang was "generally nonconfrontational" and "kept his hands raised in the air above his shoulders" during his interaction with officers, and noted that his "physical contact with officers was brief and reactive." *United States v. Yang*, 23 Cr. 100 (JDB), 2024 WL 519962, at *1, 4 (D.D.C. Feb. 9, 2024).  In contrast, Doolin, using a large riot shield, engaged in a sustained, coordinated effort to push against and break through a police line.  This conduct was not only "serious and intentional," Sent. Tr. at 80, it was aggressive, confrontational, and prolonged.

**B.  Even if the Court determines that § 4C1.1 applies, it should not reduce Doolin's sentence.**

"The grant of authority to the district court to reduce a term of imprisonment is unambiguously discretionary," even when the guideline range is actually reduced. *United States v. Vautier*, 144 F.3d 756, 760 (11th Cir. 1998).  A district court has "substantial discretion" in deciding whether to reduce a sentence. *United States v. Young*, 555 F.3d 611, 614 (7th Cir. 2009). Accordingly, many courts have denied sentence reductions even in situations where guideline amendments lowered the sentencing ranges. *See, e.g.*, *United States v. Strand*, 21-cr-085 (CRC), ECF No. 150 at 7-8;  *United States v. Wilson*, 716 F.3d 50, 53 (2d Cir. 2013).

Here, the Section 3553(a) factors counsel against granting a sentence reduction.  The sentence the Court imposed reflects the nature and seriousness of Doolin's offenses, his refusal to accept responsibility for them, and his obstructive conduct before and during trial. As outlined above and in the government's sentencing memorandum, Doolin was an active and eager participant in the events of January 6, and expressed his excitement as the prospect of violence. He blatantly disregarded fencing, OC spray, munitions, and lines of police officers positioned between himself and the Capitol building, and expressed pride and elation at the rioters' success in overwhelming the police.  Doolin stole and carried with him a USCP riot shield, a piece of equipment that would have been particularly valuable to officers that day, then used that shield against the police in a violent attempt to enter the Capitol building.  All told, he remained in the restricted Capitol grounds for more than three hours.  Following January 6, 2021, he continued to "celebrat[e]" his conduct, Sent. Tr. at 8:  Once back home in Florida, he and his co-defendants autographed a USCP riot shield as a trophy of their criminal exploits.  As the Court noted at sentencing, Doolin's conduct was "quite serious;" it was "directly antagonistic to the goal of . . .

law enforcement officers to protect . . . the Capitol and had the potential to result in harm to those officers." *Id.* at 80.

Doolin also kept photographs and videos that he took on January 6, 2021, but stored them in an application on his phone that was separate from his photo album: Keepsafe. When interviewed, he lied to the FBI about whether those materials were still on his phone, and on the evening following his arrest, a user accessed Doolin's Keepsafe account and performed actions that suggested a attempt to delete materials from the account. At trial, Doolin provided testimony that this Court found to be "at a minimum, . . . untruthful in part," which "distinguishe[d] him, to some extent, from some other January 6th defendants." *Id.* at 84.

At sentencing, this Court fully considered the mitigating factors that Doolin presented, including his age, his employment history, his lack of criminal history, and his young family. *Id.* at 80. And it took those factors into account in fashioning its sentence. Doolin's subsequent conduct while incarcerated is commendable, but good behavior is expected and the Bureau of Prisons already has mechanisms to encourage and reward compliance with BOP regulations. *See* 18 U.S.C. § 3624(b). It is not a reason to reduce Doolin's sentence.

Doolin cites select cases of defendants who received shorter sentences than he did. ECF No. 306 at 16-21. While no previously (or subsequently) sentenced case contains the same balance of aggravating and mitigating factors, Doolin's scattershot recitation ignores the Court's efforts to appropriately situate him amongst other January 6 defendants. At Doolin's sentencing, both the government and Doolin offered comparator cases. The Court found that Doolin's conduct on January 6, 2021 was "more severe" than that of Mostofsky (21 Cr. 138 (JEB)), who received an eight-month sentence and Price (22 Cr. 106 (CJN), who received a sentence of 12 months and one day, but "less serious, at least in certain ways" that that of Miller (21 Cr. 119 (CJN), 38-month

sentence), Hamner (21 Cr. 689 (ABJ), 30-month sentence), or Baquero (21 Cr. 702 (JEB), 18-month sentence).  Sent. Tr. at 83-84.  In the Court's view, Doolin's failure to accept responsibility and Price's more significant criminal history could be considered roughly equivalent, *id.* at 59, but Doolin's "more serous" conduct on January 6 and his obstructive conduct warranted a sentence higher than Price's, *id.* at 84.  For the Court to now reduce Doolin's sentence would be in direct contravention of this analysis.

In addition, the 3553(a) factors counsel against a sentence reduction for the further reason that the January 6 riot was a violent attack that threatened the lives of legislators and their staff, interrupted the certification of the 2020 Electoral College vote count, did irrevocable harm to our nation's tradition of the peaceful transfer of power, caused more than $2.9 million in losses, and injured more than one hundred police officers, causing serious bodily injury in many cases.  Every rioter, whether or not they personally engaged in violence or personally threatened violence, contributed to this harm. *See, e.g., United States v. Rivera*, 21-cr-60 (CKK), ECF No. 62 at 13 ("Just as heavy rains cause a flood in a field, each individual raindrop itself contributes to that flood. Only when all of the floodwaters subside is order restored to the field. The same idea applies in these circumstances. Many rioters collectively disrupted congressional proceedings and each individual rioters contributed to that disruption. Because [defendant's] presence and conduct in part caused the continued interruption to Congressional proceedings, the court concludes that [the defendant] in fact impeded or disrupted the orderly conduct of Government business or official functions").  Indeed, as this Court noted at Doolin's sentencing, "an exceedingly light sentence might not sufficiently deter other would-be rioters."  Sent. Tr. at 82.

Finally, the government notes that the Sentencing Commission enacted § 4C1.1 based on recidivism data for offenders released in 2010.  *See* U.S. SENT'G COMM'N, RECIDIVISM OF

FEDERAL      OFFENDERS      RELEASED      IN      2010      (2021),      *available      at*

https://www.ussc.gov/research/research-reports/recidivism-federal-offenders-released-2010.

Given the unprecedented nature of the Capitol attack, there is no reason to believe this historical

data is predictive of recidivism for defendants who engaged in acts of political extremism on

January 6. This is particularly so given the degree to which individuals, including defendants who

have been sentenced, continue to propagate the same visceral sentiments which motivated the

attack. *See, e.g.*, *United States v. Little*, No. 21 Cr. 315 (RCL), ECF No. 73 at 4 ("The Court is

accustomed to defendants who refuse to accept that they did anything wrong. But in my thirty-

seven years on the bench, I cannot recall a time when such meritless justifications criminal activity

have gone mainstream.").

   Thus, due to the unique nature of the January 6 riot, the harms caused by the January 6 riot,

and the significant need to deter future mob violence, the government submits that even if the

Court finds that § 4C1.1 applies, the Court should nevertheless deny a sentence reduction. Such

treatment would recognize the unique nature of the criminal events of January 6, 2021, coupled

with the overwhelming need to ensure future deterrence, despite a person's limited criminal

history.[3]

## IV.   CONCLUSION

   Doolin's violent conduct on January 6, 2021, which placed police officers in physical peril,

his glee at the rioters' overrunning of police lines, his prolonged presence on the Capitol grounds,

his theft of police equipment that he then used against police, his attempts to hide evidence, and

---

[3] If the Court does decide in its discretion to grant the defendant's motion, the government requests that the Court delay release by 10 days in order to allow time for the Bureau of Prisons to process the release, as recommended by the Committee on Criminal Law of the Judicial Conference of the United States in its January 25, 2024 memorandum.

his false testimony at trial all fully support the 18-month sentence this Court originally imposed.

The Court should deny the defendant's motion to reduce that sentence.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

BY:  _____
Benet J. Kearney
Assistant United States Attorney
26 Federal Plaza
New York, NY 10278
benet.kearney@usdoj.gov
(212) 637-2260
Benet.Kearney@usdoj.gov

Brendan Ballou
Special Counsel
DC Bar No. 241592
950 Constitution Avenue NW
Washington, DC 20530
(202) 431-8493
Brendan.Ballou-Kelley@usdoj.gov